# Exhibit A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

***FOR COURT USE ONLY***
***(SOLO PARA USO DE LA CORTE)***

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
9/22/2025 1:58:11 PM

Clerk of the Superior Court
By A. Villasenor ,Deputy Clerk

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

Additional Parties Attachment Form is Attached

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

Joshua Christopher Parker

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California - San Diego
Central Division - 330 West Broadway, San Diego, CA 92101

CASE NUMBER:
*(Número del Caso):*
25CU049803C

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Joshua Christopher Parker, 1480 CR 225, Bluffton, Texas 78607 Phone: 858-775-0103

DATE: *(Fecha)* 9/23/2025 Clerk, by *(Secretario)* a Villasenor A. Villasenor , Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]
Superior Court of California County of San Diego

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*:

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

**SUM-200(A)**

| SHORT TITLE: PARKER VS UNISON AGREEMENT CORP | CASE NUMBER: 25CU049803C |
|---|---|

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff ☒ Defendant ☐ Cross-Complainant ☐ Cross-Defendant

Unison Agreement Corp.
Odin New Horizon Real Estate Fund LP
Odin New Horizon General Partner LLC



Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Joshua Christopher Parker
1480 CR 225
Bluffton, Texas 78607
858-775-0103
Fax Number:
Email: joshcparker@gmail.com

Joshua Christopher Parker, IN PRO PER

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
9/18/2025 9:51:12 AM

Clerk of the Superior Court
By G. Lopez ,Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO UNLIMITED CIVIL CASE**

Joshua Christopher Parker

Plaintiff(s),

vs.

Unison Agreement Corp.,
Odin New Horizon Real Estate Fund LP
Odin New Horizon General Partner LLC

Defendant(s).

Case No.: 25CU049803C

**COMPLAINT FOR DECLARATORY RELIEF, QUIET TITLE, AND DAMAGES**

Plaintiff, [Joshua Christopher Parker], alleges on information and belief, as follows:

## INTRODUCTION

This case arises from Plaintiff Joshua Christopher Parker who is the sole homeowner of 6081 Roselle Meadows Trail, San Diego, CA 92130 a single-family home (EXHIBIT B – legal description). "Unison Agreement Corp.", a Delaware corporation registered in California, obtained HOMEOWNERS signature during a face-to-face notary session in his home on 2/20/2019. Defendant Unison Agreement Corp created 4 contractual documents from the resulting process. UNSION then transferred ownership to "Odin New Horizon Real Estate Fund LP" a Delaware corporation not registered in California. "Odin New Horizon General Partner LLC" is the general partner of "Odin New Horizon Real Estate Fund LP" which is a Delaware corporation registered in California. Defendants are hereinafter referred to as ("UNISON"). Plaintiff ("HOMEOWNER")'s former Attorney Sasan Mirkarimi of Equity Legal, LLP obtained true and correct copies of all documents on October 6, 2023 (EXHIBIT A). The agreements allow UNISON an option to purchase a percentage ownership of HOMEOWNERS home based on future appreciation in exchange for an upfront fee. In November of 2024 Joshua Christopher Parker failed to sell his home to a married couple through three escrow attempts due to defendants and their attorneys. Plaintiff seeks declaratory relief, quiet title, compensatory and punitive damages. The contracts/documents between Plaintiff and Defendant are now terminated since defendants did not exercise their option. Plaintiff seeks the court to **enforce the contracts** to find for the plaintiff on all causes of action.

## PARTIES

Plaintiff, Joshua Christopher Parker], is now a resident of Bluffton, County of Llano, Texas.

Plaintiff, is informed and believes and on that basis, alleges that Defendant(s) Unison Agreement Corp., Odin New Horizon Real Estate Fund LP, Odin New Horizon General Partner LLC (hereinafter "UNISON") is in full ownership and control of filings on his homes title including a deed of trust. Filings on title are backed up by written contracts also created and executed by defendants. Defendants represent through their attorneys they can act on these contracts and filings.

**INDIVIDUALS**

Plaintiff - Joshua Christopher HOMEOWNER, unmarried, sole owner of 6081 Roselle Meadows Trail, San Diego, CA 92130 "HOMEOWNER"

Defendant - Laszlo Ladi, Corporate Counsel Unison Agreement Corp "UNISON ATTORNEY LASZLO". This is the head representative of these foreign owned entities.

Alexander Gershen of Scale LLP - outside attorney for Unison Agreement Corp and "Designee" per the contract "UNISON ATTORNEY GERSHEN"

Anavin Mounivong – Senior Relationship Management Associate - Unison agreement Corp "UNISON" – all emails to "Homepartners@Unison.com"

Emmett Dalton – Plaintiff Josh HOMEOWNER's Real Estate Agent - "SELLERS AGENT"

Darren Borst – Caldwell Banker Realty – Buyer's agent "BUYERS AGENT"

Shang-Yi and Victoria Chiang a married couple – "BUYERS"

James Stott – Senior Escrow Officer - Lawyers Title "ESCROW ONE"

Hennie/Christy Cimino Equity Title – "ESCROW TWO" Coldwell Banker BUYERS escrow company.

Roxanne Balone – Escrow officer – Corinthian Title Company, Inc. "ESCROW THREE"

**JURISTICTION AND VENUE**

1. Jurisdiction is proper because the subject property for a quite title action, is in San Diego county. (EXHIBIT B – Legal Description)
2. This Court has personal jurisdiction over the defendant(s) because they are California Corporations doing business in San Diego, entering into the contracts in San Diego regarding the subject property.
3. Venue is further proper in this Court because the location, where the incident described herein occurred, is within San Diego County.
4. Finally the contracts mandate San Diego per section 9.10

**FACTUAL ALLEGATIONS**

**BACKGROUND**

**From Section 3.3(b) i, Page 5 of 45 "Unison Homeowner Covenant Agreement" (EXHIBIT A)**

"Under the Unison HomeOwner option agreement, Owner is giving Investor the right, but not an obligation, to exercise its Option and purchase an undivided percentage interest in and to the property upon the sale of the property or the occurrence of any other Exercise Event". "owner" is HOMEOWNER and "Investor" is UNISION.

The agreements are similar in concept to an option to buy stock. A stock option is a contract purchased by paying a fee to a stock owner for the right to buy the stock at a future date at a certain price. The fee is not refundable and does not affect the stock price. The fee generates no interest in the stock. The fee is an expense not a deposit. When the option purchase date arrives the option buyer must "exercise their option" to buy the stock at the price agreed to. At this time, the purchaser either owns the stock at the agreed price by paying for the stock in full, or they have lost their right to purchase the stock and the agreement is terminated. Obviously, the contracts in the case is a variant on the concept. For example, it only pertains to a percentage interest in the home which is calculated based on the payment made into escrow.

In UNISON ATTORNEY LASZLO's response to Sasan Mirkarimi on October 6, 2023, he states the following "Unison is not a "servicer" under 12 USC § 2605(i)(2) or 12 C.F.R. § 1024.2, and the agreement referenced in the letter is neither a "mortgage loan" under 12 C.F.R. § 1024.31 nor a "federally related mortgage loan" under 26 U.S.C. § 2602." (EXHIBIT A page 1) The contracts clearly state the agreement is "not a loan".

Because UNISON is not a lender, they are not entitled to a payoff demand in exchange for release of title filings (including a deed of trust). On the sale of the property UNISON is not getting a return of principal like a lender. UNISON is exercising their option which would result in UNISON purchasing an ownership percentage. This percentage is then sold by UNISION just like any homeowner. The exercise of an option is a **taxable event** per the IRS because the cost basis is now determined, an option transaction is complete. UNISION is establishing a capital gain via a real property sale which they must declare as revenue. They must be issued a 1099-S since they are selling real property for a profit.

**SALE OF SUBJECT PROPERY**

HOMEOWNER pursued all options per the contracts with UNISON prior to being forced sell his home and move.

On 11/2/2024 Plaintiff entered into a contract with a married couple from Taiwan hereby referred to as BUYERS to purchase the home for all cash with a 10 day close (EXHIBIT C). The transaction was approved by UNISON. Under the contract this is called a "Permitted Sale". This now gave UNISON the right to notice and then **purchase** their option for a percent interest in the post contract appreciation of the home. Then they would then sell their ownership percentage to the buyer via a grant deed. If they did not notice and purchase their option, they would get no proceeds from the sale and their initial fee paid to plaintiff is not refunded. The contracts are then terminated in their entirety.

**FIRST CAUSE OF ACTION – UNISON approved sale of home and amount with no additional costs**

**By Plaintiff [HOMEOWNER] against Defendant [UNISON]**

UNISON approved the sale and entered into a "Permitted Sale" pursuant to section 3.2 of the contract "Unison Homeowner covenant agreement" - page 4 of 45 [EXHIBIT A page 19 of 95]. In a series of emails (EXHIBIT H), UNISON reviewed a competitive market analysis and other requests to determine the sale price was accurate. UNISON sent all facts, marketing history and analysis to their underwriting. They approved the sale & amount. In a summary document provided by UNISION to ESCROW ONE (EXHIBIT J) they state clearly that **no money** is due for "Remodeling Adjustment; Early Termination Adjustment; Deferred Maintenance adjustment, or AOV Floor Adjustment". This statement in writing by UNISON was in compliance with the contract named "Unison Homeowner covenant agreement" (Page 5 of 45) [EXHIBIT A page 20 of 95]. Section 3.3(a) states **"Unpaid Owner Obligations"** must be disclosed including **"asset administration fees".** UNISION never disclosed these amounts at any time. From UNISON's approval document (EXHIBIT J):

## Property Sale Calculator

| | |
|---|---|
| Value: Sale Price Used | $1,960,000.00 |
| Remodeling Adjustment | $0.00 |
| Early Termination Adjustment | $0.00 |
| Deferred Maintenance Adjustment | $0.00 |
| OAV Floor? | |
| OAV Floor Adjustment | $0.00 |
| Ending Agreed Value | $1,960,000.00 |

As a matter of fact, at no time did UNISON request **ANY** additional fees, Lawyers' Fees or Administrative fees per the contracts or otherwise by any means including verbal.

**Declarative relief sought** Plaintiff prays the court finds: "UNISION engaged and approved the sale of the subject property to BUYERS at the contracted price (EXHIBIT C). Per the contracts between UNISION and HOMEOWNER (EXHIBIT A) this is a "Permitted Sale". UNISON did not seek any additional costs or fees including "Remodeling adjustment", "Early Termination Adjustment", "Deferred Maintenance Adjustment", "AOV Floor Adjustment", "Unpaid Owner Obligations", "asset administration fees" or lawyers' fees."

**SECOND CAUSE OF ACTION – The sale of the home was an "Exercise Event" pursuant to the contracts between HOMEOWNER and UNISION**

**JUDICIAL REVIEW of CONTRACTS**

A permitted sale is an "Exercise Event". From the **Unison Homeowner option agreement**, Page 1, section (b) [EXHIBIT A page 8 of 95] "unless or until such time as owner elects, in Owner's sole discretion, to sell the property, or until the occurrence of another **Exercise Event**". Here the word "another" is used which the court can conclude refers to "sell the property" as an exercise event.

From Section 2. Page 1 of the same contract: "Investor will have the right in its Permitted Discretion to exercise this option only upon the following events ("Exercise Events")…(b) upon the Owner's arms' length sale of the Property;". Again the court can affirm from the contract that "sale of the property" is an "Exercise Event"

> **(b)** As consideration for granting the Option, and for Owner's obligations under the Unison HomeOwner Agreement (**"Unison HomeOwner Agreement"**), Owner shall receive: **(1)** the Unison Investment Payment; **(2)** the delayed right and express waiver of any and all rights of Investor to exercise the Option it has purchased in the Property, unless or until such time as Owner elects, in Owner's sole discretion, to sell the Property, or until the occurrence of another **Exercise Event,** as defined herein; and **(3)** Investor's performance of its obligations under, and such other rights and benefits as are provided to Owner under the Unison HomeOwner Agreement.

**<u>Declarative relief sought</u>** Plaintiff prays the court finds: "Plaintiff's sale of the home was an "Exercise Event" based on the contract's definitions and judicial review"

**THIRD CAUSE OF ACTION – UNISON did not notice their option to purchase their share of the home**

**By Plaintiff [HOMEOWNER] against Defendant [UNISON]**

**<u>Sale to be completed pursuant to Section 3.3(c)</u>**

HOMEOWNER has the contractual right to choose the manner of closing with UNISON pursuant to 3.3(c) (reproduced below). HOMEOWNER chose to complete the transaction under section 3.3(c) of the contract (reproduced below) as clearly emailed to UNISON. ATTORNEY GERSHEN stating "So I am presenting 3.3(c) as our path forward to escrow":

The Section 3.3(c) Page 5 of 45 "Unison Homeowner Covenant Agreement" [EXHIBIT A page 20 of 95] states:

> **(c)** In the event Owner does not terminate Investor's Option to purchase and settle the Unison HomeOwner Agreement pursuant to **Section 3.3(b)** above, then Investor may exercise its Option and consummate the purchase of its undivided percentage interest in and to the Property through Escrow simultaneously with closing of a Permitted Sale, as follows: Owner shall deed Investor its percentage interest in and to the Property through Escrow for the Permitted Sale; Investor and Owner, as co-owners of the Property, shall deed the Property to Third Party Buyer through Escrow for the Permitted Sale; and Escrow shall close the Permitted Sale, transfer title to Third Party Buyer, and liquidate Investor and Owner's respective percentage interests in and to the Property.

"Investor" is the defendant Unison Agreement Corp – "UNISON". "Owner" is the Plaintiff Joshua Christopher HOMEOWNER – "HOMEOWNER".

**Per section 3.3(c) above - defendant is required to take the following actions during a "permitted sale" in order to receive funds. (Quoted text is from section 3.3(c) above).**

1) Formally notice they are exercising their option. ("may exercise its Option") ( "following exercise of the **Option**")
2) Deposit their required payment into escrow ("Consummate the purchase of its undivided percentage interest")

3) Prepare deeds for Plaintiff to sell the percent share to Defendant ("Owner shall deed investor its percentage")("beneficiary's right as co-owner")

4) Prepare deeds for Plaintiff and Defendant to sell their respective shares to the buyer ("Investor and owner, as co-owners of the property, shall deed the property to Third Party Buyer through Escrow for the Permitted Sale; and Escrow shall close the Permitted Sale, transfer title to Third Party Buyer, and liquidate Investor and Owner's respective interests in and to the Property."

As clearly stated above in the contract section 3.3(c) there **<u>is no calculation by the parties</u>**. Escrow would prepare closing statements and do the calculations as required. "Escrow shall close the Permitted Sale. In this case both HOMEOWNER and UNISION are sellers. During the first sale from HOMEOWNER to UNISION the title would be cleared for both UNISION and Wells Fargo. Therefore, the sales to BUYERS would **<u>not have any deed of trust issues at all</u>**. A full reconveyance does not have a calculation in it therefore it cannot hold up the transaction. Both Wells Fargo and UNISION would issue this during the sale to UNISION from HOMEOWNER.

**Option must be exercised to participate in the sale and receive funds**

This is supported by the UNISON HOMEOWNER DEED OF TRUST AND SECURITY AGREEMENT page 2 section 2 , b (vi) [EXHIBIT A page 74 of 95] "performance of the obligations of trustor under the Unison Homeowner Covenant Agreement regarding beneficiary's right as a co-owner to sell the property following exercise of the **Option** and during **Ordinary Sale**.". The key phrase here is **"following exercise of the Option"**

> **(vi)** performance of the obligations of Trustor under the Unison HomeOwner Covenant Agreement regarding Beneficiary's right as a co-owner to sell the Property following exercise of the **Option** and during **Orderly Sale**.

**Defendants failed to notice their option during 3 escrow attempts in direct violation of the contract section 3.2(c) (i)**

Per the contract named "Unison Homeowner covenant agreement" (Page 4-5 of 45) [EXHIBIT A page 19-20 of 95] a "permitted sale" section 3.2 (C) (i) states clearly **"**Owner and Investor shall do or cause to be done, any and all acts and things as shall be reasonably necessary for Escrow to close the transactions contemplated in the Unison HomeOwner Agreement."

1) First attempt with "Lawyers Title". ESCROW ONE resigned, issuing a letter including the statement that they could not get title insurance. (EXHIBIT D)
    i. UNISON did not exercise their option.
    ii. UNISON ignored escrow instructions and did not wire the required payment (EXHIBIT E).
    iii. UNISON did not provide a W-9 in order for escrow to issue a 1099-S upon the sale of their share (EXHIBIT I)
    iv. UNISION ATTORNEY GERSHEN did not prepare the deeds as he stated he would.
2) UNSION could not provide an escrow company and title company that would do business with them.
3) The second attempt with buyer's escrow provided by Caldwell Banker (BUYERS agent) resulted in ESCROW TWO declining to participate at all in the transaction. There was a verbal explanation of the option contract and UNISON, but there could be other considerations or investigations which I am not aware of.
4) The third and most extensive attempt resulted in buyers cancelling the contract due to UNSION represented by UNISON ATTORNEY GERSHEN ignoring escrows direct request to exercise their option or decline.

**Facts Supporting the request**

Immediately UNISON was not moving forward or communicating in a timely manner, and we needed to close per the home sale contract (EXHIBIT C).

Prior to ESCROW TWO, UNISON designated Alexander Jacob Gershen of Scale LLP, attorney for Unison Agreement Corp as their primary contact (UNISON ATTORNEY GERSHEN). I did see UNISON ATTORNEY LASZLO communicated with escrow also, but the subject matter was hidden from me by UNISON ATTORNEY GERSHEN. So to be clear, defendant was represented at the highest level by their in-house attorney (UNISON ATTORNEY LASZLO) and their hired law firm (UNISON ATTORNEY GERSHEN).

Gmail — Josh Parker <joshcparker@gmail.com>

**Parker - Information re Payoff of Unison Agreement Corp.'s Lien**
1 message

**Alexander Gershen** <agershen@scalefirm.com> — Fri, Nov 22, 2024 at 10:02 AM
To: Josh Parker <joshcparker@gmail.com>
Cc: Jamie Wells <jamie.wells@scalefirm.com>, Alexander Gershen <agershen@scalefirm.com>, Corey Pedersen <cpedersen@scalefirm.com>

Mr. Parker,

As you know, our firm represents Unison Agreement Corp. and Odin New Horizon Real Estate Fund LP and we write in connection with the potential sale of real property located at 6081 Roselle Meadows Trl, San Diego, CA 92130 (the "Property").

**“3. Manner of option exercise.** Upon the occurrence of an Exercise Event, Investor (or Investor’s agent, service, **asset administrator**, or other designee) may exercise the Option by transmission of a written statement either substantially in the form of Exhibit B hereto, or which otherwise evidences investor’s intent to purchase its undivided percentage interest in and to the property and settle the Unison HomeOwner Agreement **(“Option exercise Notice”).** [The “Exhibit B hereto” is on page 15 of 95 EXHIBIT A].

[EXHIBIT A Page 9 of 95; "Unison Homeowner Option Agreement", Page 2 of 7. Section 3].

**3. Manner Of Option Exercise.**

Upon the occurrence of any Exercise Event, Investor (or Investor's agent, servicer, **Asset Administrator**, or other designee) may exercise the Option by transmission of a written statement either substantially in the form of **Exhibit B** hereto, or which otherwise evidences Investor's intent to purchase its undivided percentage interest in and to the Property and settle the Unison HomeOwner Agreement (**"Option Exercise Notice"**). Transmission of the Option Exercise Notice will constitute exercise of the Option when sent to any of the following **Persons**: **(a)** Owner, either at the address of the Property, or at the electronic mail address given for notices below; **(b)** any **Escrow Holder** engaged in processing a sale or transfer of the Property; **(c)** any real estate agent or broker engaged by Owner in processing a sale or transfer of the Property; **(d)** any heir(s), representative, or executor of the Last Surviving Owner (**"Owner's Estate"**); or **(e)** any other Person Owner has designated during the Term as authorized to receive notices under the Unison HomeOwner Agreement.

At no time did UNISION or any of its attorneys transmit a written statement in the form of Exhibit B (not my exhibit this is from the contracts) or otherwise notice their option to any party.

HOMEOWNER was initially upbeat stating "Let's move on!" and "we both bet on a winning horse". Finally, Plaintiff stated "Anyone on this email thread can assume that you have simply ignored our request for a reply which means you are declining your option on the home sale. Further you are not replying to escrow". HOMEOWNER continued, "A YES OR NO REPLY IS REQUIRED on both matters or we will assume that answer is NO to both. This is not a trick question because that is how the agreement works." Again, no reply.

**Escrow One**

On 11/18/2024 ESCROW ONE emailed wire instructions to UNISON so they could make the required payment to buy their option (percentage ownership in the subject property) (EXHIBIT E) . This was ignored by UNISON.

On 11/20/24 the sale is ready to close. All contingencies were removed, including full professional inspections, and the final walk through was done. BUYERS Cash in escrow. HOMEOWNER had of course vacated his residence including donating and taking 3 truckloads of belongings to the dump since he could only take one truck load with him to Texas. **The transaction was waiting for defendant's contractual hold out – the option**. UNISON has 3

filed documents on the homes title blocking the sale including a deed of trust. UNISON uses 4 attorneys, two of which were actively involved.

HOMEOWNER has a phone call with ESCROW ONE where the requirement to get a W-9 from UNISON so escrow can issue a 1099-S is discussed in detail. Further we discussed that the proposed company name used by UNISON has nothing to do with any contracts or title filings. I state the W-9 will tell us the real company name. Then ESCROW ONE states that UNISON is not going to submit a W-9 or take a 1099-S on the transaction. (EXHIBIT I) is the required IRS and California tax forms that ESCROW ONE sent to me. These are required by law and must be signed under the penalty of perjury by UNISON also. California law requires that withholding be performed **during** escrow (3.33% mandatory on the **entire sale** amount is the standard option). IRS would apply a Standard FIRPTA Withholding Rate The **buyer (transferee)** must withhold **15% of the gross sales price** (not the gain, but the total amount realized). This applies to foreign individuals, partnerships, trusts, and corporations. UNISON is majority foreign owned per their SEC filing. There may also be a **branch profits tax (up to 30%)** if profits are considered repatriated out of the U.S. With section 3.3(c) each transaction can be processed correctly with respect to all tax laws and not leave any liability for the buyer or the HOMEOWNER. HOMEOWNER never sees UNISION address the tax evasion issue. If they were falsely paid as a lender "returning principal", the tax burden would fall on the HOMEOWNER and even BUYERS. The tax burden for the IRS alone would be a multiple of six figures. UNISON was taking a majority of the cash proceeds, so covering the entire tax burden by HOMEOWNER was inconceivable, and probably financially impossible. UNISON also claimed no San Diego taxes.

The contracts state clearly that income taxes are not the HOMEOWNERS responsibility "(excluding income taxes)" Page 36 of 45 "Unison Homeowner covenant agreement" [EXHIBIT A Page 51 of 95]

The only issue remaining was UNISON's option contract (deed of trust). On 11/20/2024 "ESCROW ONE" escrow company quits stating "our family of title insurance underwriters decline to insure the property referenced in this transaction". All parties received this notice. (EXHIBIT D). Please note: ESCROW ONE was provided a "quitclaim deed" by UNISON in exchange for a payment in violation of 3.3(c) of the contracts. This is typically NOT covered by Title Insurance because a "quit claim deed" has no warranty. With a **Quitclaim Deed**: the grantor isn't making promises about ownership. So to be clear - at NO TIME did HOMEOWNER ever see or hear of a full reconveyance from UNISION being prepared or offered to be prepared, which is the standard document issued to clear title. In addition, The Quitclaim deed offered by UNISON ATTORNEY GERSHEN violates the contracts which clearly state Pursuant to the contract Section 4, Page 2-3 of 7 "Unison Homeowner Option Agreement", [EXHIBIT A page 10-11] "Upon acceptance of such amount from Owner, Investor shall effect a **full release and reconveyance** of the Option, the Unison HomeOwner Agreement, the Unison HomeOwner Security Instrument, and the other Transaction Documents". **UNISON did not create a path to a transaction that could get title insurance and conform to tax laws under any circumstances including a settlement.**

HOMEOWNER then demands that UNISON, ATTY UNISON LASZLO provide an escrow company and title insurance company that will do business with UNISON. They do not reply.

Gmail Josh Parker <joshcparker@gmail.com>

**Communication - Escrow and Title Resignation**
1 message

**Josh Parker** <joshcparker@gmail.com> Thu, Nov 21, 2024 at 2:13 PM
To: Home Partners <homepartners@unison.com>, Josh Parker <joshcparker@gmail.com>, Alexander Gershen <agershen@scalefirm.com>

Mr. Mounivong,

Escrow and title have resigned severely jeopardizing the sale.
Buyers funds are being returned. This is your companies fault.

(6081 Roselle Meadows Trail, San Diego, CA 92130)

***Are you planning on maintaining a communication black out?***

***Refusing to communicate?***

***Who will you communicate with if anyone?***

***Please name an escrow and title company that will do business with you.***

BUYERS AGENT contacts UNSION ATTORNEY GERSHEN and gets no escrow company that will work with UNISION either.

On Nov 22, 2024, at 10:09 AM, Emmett Dalton <emmettdalton10@gmail.com> wrote:

Josh

I have had no contact from Corinthian

James and Lawyers title are out Josh, lets move on (no further need to mention their names)

all we need is a CAR AEA form filled out identifying the new Escrow holder.

Right now I feel it is prudent for me to speak with Mr. Gershen , the reasons are twofold.

1. Escrow company referral?
2. Can they reach an agreement with Josh within a few hours NOT days? so we don't burden the Escrow and the officer with this.

**Escrow 2**

SELLERS AGENT, BUYERS AGENT, and HOMEOWNER attempt to get BUYERS escrow (Caldwell Banker) to perform the transaction, but on a verbal explanation of UNISION and their option, and title research, they decline. ESCROW TWO fails to move forward reference below as "Hennie'. "Hennie is not interested for some reason". This is BUYERS AGENT's escrow company from Caldwell Banker.

On Thu, Nov 21, 2024 at 11:54 AM Emmett Dalton <emmettdalton10@gmail.com> wrote:

> Josh
>
> See my last email that I forwarded to you, Hennie is not interested for some reason.
>
> Why don't we use the Escrow company you mentioned you had as a backup and just open up a NEW Escrow.
>
> Thoughts from you both?

**Escrow 3 - (The most comprehensive effort to close)**

UNISON ATTORNEY GERSHEN further emails HOMEOWNER "If you do not proceed with settling the option under these terms (3.39(b)), our clients will have no choice but to exercise its option pursuant to section 3.3(c)": This email was sent after the resignation of ESCROW ONE on 11/22024. This email was from ATTORNEY UNISION GERSHEN on 11/22/204 at 10:02AM:

To the extent the Property proceeds with a permitted sale, our clients would seek a settlement of their option pursuant to Section 3.3(b) of the Unison HomeOwner Covenant Agreement. If you do not proceed with settling the option under these terms, our clients will have no choice but to exercise its option pursuant to Section 3.3(c).

If you have any additional questions, please feel free to reach out.

Alexander Gershen

Partner

**Scale LLP** | www.scalefirm.com

C. 925.451.4494

Great! Except this never happens. The court can conclude that UNISON ATTORNEY GERSHEN knows UNISION is required to exercise the option stated clearly as "Exercise its option". Further, they have not done so after the scheduled closing which was understood by them to be 11/18/24 (EXHIBIT H), and was ready to close on 11/20/24.

UNISON ATTORNEY GERSHEN confirms that on the phone call with HOMEOWNER, I stated clearly that HOMEOWNER was "unwilling to proceed with section 3.3(b) of the covenant". (Email after next paragraph)

UNISON ATTORNEY GERSHEN emails to HOMEOWNER "we are awaiting your confirmation of any new escrow officer." Further "If an escrow officer is selected, our clients will consider exercising its option pursuant to Section 3.3(c)". This shows that UNISION,

represented by their attorney, did NOT exercise their option during the first escrow. It further shows that they understand the escrow is governed by section 3.3(c) of the contract. Also note the carful wording by UNISION ATTORNEY GERSHEN below… "will consider exercising its option". This statement can easily be interpreted as "it is a no at this time"

> Hi Alexander,
>
> It is now obvious that you are trying to avoid your stated cooperation in exercising your option.
>
> You are subverting escrow and making false payment demands.
>
> You are subverting the option process by not allowing it.
>
> Josh Parker
>
> On Fri, Nov 22, 2024 at 2:52 PM Alexander Gershen <agershen@scalefirm.com> wrote:
>
> > Mr. Parker,
> >
> > We made no such representation. As explained on the call, we are awaiting your confirmation of any new escrow officer. You also indicated on the call that you are unwilling to proceed with Section 3.3(b) of the Covenant. If an escrow officer is selected, our clients will consider exercising its option pursuant to Section 3.3(c).
> >
> > Alexander Gershen
> >
> > Partner
> >
> > **Scale LLP** | www.scalefirm.com
> >
> > C. 925.451.4494

On 11/22/2024 UNISON ATTORNEY GERSHEN emails HOMEOWNER: "To be very clear, our email is not a "commitment to exercise [Unison's] option."".

> On Fri, Nov 22, 2024 at 1:51 PM Alexander Gershen <agershen@scalefirm.com> wrote:
>
> > Mr. Parker,
> >
> > To be very clear, our email is not a "commitment to exercise [Unison's] option."

This was in response to HOMEOWNER emailing UNISON ATTORNEY GERSHEN "Thanks for your prompt response and I will attempt to find escrow based on your commitment to exercise your option".

***It was very important to UNISON ATTORNEY GERSHEN that no one thought they were exercising the option to purchase a percent interest.***

HOMEOWNER continued to attempt to pursue selling his home requiring a new escrow company. Again, everything was ready to close except UNISION represented by UNISON ATTORNEY GERSHEN was not taking action on the option.

**Deeds not prepared**

UNISON ATTORNEY GERSHEN and HOMEOWNER had one phone call where UNISON ATTORNEY GERSHEN called HOMEOWNER. UNISON ATTORNEY GERSHEN asked HOMEOWNER and was reassured by HOMEOWNER that he would sign the deeds. This would allow the home to be sold as joint owners as required by the contract section 3.3(c). On 11/26/2024 UNISON ATTORNEY GERSHEN to ESCROW THREE acknowledges step one (i) is for Unison to exercise its option. Further "We can instruct our client to proceed and can circulate unexecuted deeds to reflect the option exercise process above". UNISON ATTORNEY GERSHEN does not create the deeds and no deeds were ever circulated by anyone at UNISION. UNISION ATTORNEY GERSHEN states in an email below "Once we confirm the parties are in agreement" – this is not necessary because we have contracts. This is a failure to perform under the contracts by UNISION ATTORNEY GERSHEN and his most common stalling tatic.

> Once we confirm the parties are in agreement, we can instruct our client to proceed and can circulate unexecuted deeds to reflect the option exercise process above.
>
> Let us know if you have any questions.
>
> Alexander Gershen
>
> Partner
>
> **Scale LLP |** www.scalefirm.com
>
> C. 925.451.4494

So to restate the process, **after UNISON's option exercise**, then payment deposit into escrow, HOMEOWNER sells a percentage ownership to UNISON. Subsequently, they sell their share to the new homeowner. This requires 3 escrows. One for me to sell to UNISON where they pay me by depositing money into escrow (Wells Fargo loan is paid off) and two more where UNISION and HOMEOWNER sell their shares to the new owners - BUYERS. Again - 3 closing

statements and 3 escrows. The first sale of a percentage interest requires a reconveyance be filed on title.

***<u>Based on these facts, there was NOTHING holding back UNISION or UNISION ATTORNEY GERSHEN from participating.</u>***

On 11/26/2024 the third and final escrow asks UNISON ATTORNEY GERSHEN "The seller want to know if they are going to exercise their options?". UNISON ATTORNEY GERSHEN replies but does not say yes or no and dodges the question.

> On Tue, Nov 26, 2024 at 8:02 AM Roxanne Balone <roxanne.balone@corinthiantitle.com> wrote:
>
> *The seller wants to know if they are going to exercise their options ?*
>
> 
> 
>
> **Roxanne Balone**
> CORINTHIAN
> TITLE COMPANY, INC.
> 16787 Bernardo Center Drive, Suite 4
> San Diego Ca 92128
> PH: 858/926-3700
> FX: 858/923-2207
> Roxanne.balone@corinthiantitle.com

This email thread was initiated by UNISION ATTORNEY GERSHEN to ESCROW THREE without my knowledge, but I was later was forwarded a copy by ESCROW THREE.

Additional communications transpire in an attempt to close the deal managed by ESCROW 3 but UNISON ATTORNEY GERSHEN continues to not take any actions or firmly declare any intentions degrading everyone's confidence that UNISON can be dealt with. BUYERS AGENT says he is going to try to call UNISON ATTORNEY GERSHEN to close the deal, but that is not successful.

UNISION ATTORNEY GERSHEN emails ESCROW THREE his procedural & fraudulent financial desires repeatedly in multiple emails **excluding** HOMEOWNER that would violate the contracts by NOT exercising the option and NOT making a payment to escrow. ESCROW THREE asks UNISION ATTORNEY GERSHEN "Is he aware of this" (he is the me the HOMEOWNER) because she can see he is excluding me.

> *Is he aware of this*
>
> Thank you
>
> **Roxanne Balone**
>
> CORINTHIAN
> TITLE COMPANY, INC.

UNISION ATTORNEY GERSHEN states "yes" and continues to email escrow ***without my knowledge***. Eventually ESCROW THREE forwards the multiple scenarios (emails) to me because she needs to confirm I am aware. I state clearly on 11/26/24 "Hi Roxanne, ***Its option number 2 which is this one: Here is the correct step forward "Notice of exercise option" and "Payment into escrow"."*** Direct communication with escrow would be normal for a lender. But UNISION is NOT a lender. UNISION ATTORNEY GERSHEN knows this and calls it a "quote". His inability to make a financial demand is further demonstrated by his wording, He is careful here and states "If Mr. Parker proceeds with settling Unison's option interest (and therefore terminating the option).". They key word is "settle". This would require an **executed agreement** and probably a filing on title in order to get title insurance. He states further "there is no need to exercise the option because it will be settled". So again, this proves UNISION ATTORNEY GERSHEN

knows he is NOT ENTITLED TO A PAYMENT DEMAND instead using the word “settled” for a second time. He knows full well that he must exercise the option to participate - stating “Unison will need to exercise its option”. **Under no circumstances would an email be sufficient for anyone to override title and the contracts.** So to be clear, trying to convince ESCROW THREE to transfer money to UNISION by email is not possible or a possible remedy. You can also infer he is trying to get ESCROW THREE to implement his desires in violation of the contracts. Again, I respond clearly and promptly.

Roxanne,

As mentioned in my prior emails, if Mr. Parker proceeds with settling Unison's option interest (and therefore terminating the option) as part of the sale, Unison can sign the deed(s) and/or release documents and escrow would need to disburse the $839,125 payoff to Unison pursuant to the payoff quote provided. Under this method, there is no need to exercise the option because it will be settled and terminated as part of the escrow payments.

il.google.com/mail/u/0/?ik=b87e4fda60&view=pt&search=all&permthid=thread-f:1816741663962705444%7Cmsg-a:r-4110198163338455997...

:24 PM Gmail - Re: FW: RE: FW: Unison FRX-128092 Parker

If, on the other hand, that approach does not work for Mr. Parker or the other parties, Unison will need to exercise its option. Unison can still sign the deed(s) and/or release documents and would provide written notice of its intent to exercise the option, Mr. Parker must sign a deed granting Unison its 70% interest in the property, and Unison and Mr. Parker will need to sign deeds granting their interests (70% and 30%, respectively) to the new buyer. Unison would also execute release documents related to its security agreement. Additionally, under this scenario, Unison must send its additional purchase price balance of $532,875 into escrow, and escrow would disburse $1,372,000 to Unison. The end result remains a net disbursement to Unison of $839,125, but through a slightly different process.

Either scenario works for Unison, but the first method is simpler and quicker.

This wasted time, effort ,and created confusion since he knows full well at this point how his client must proceed to get paid. Any settlement discussions are inadmissible in court proceedings, **and no settlement was ever negotiated, prepared or agreed to**. This email chain by UNISION ATTORNEY GERSHEN excluding HOMEOWNER demonstrates his intent to use escrow to obtain a desired outcome which is outside of the scope of an escrow agents’ job. This is undue influence. I also experienced undue influence in my only verbal conversation with UNSION ATTORNEY GERSHEN.

On December 3rd UNISON ATTORNEY GERSEN states in an email to everyone in his law firm, everyone at the escrow team, ESCROW THREE, SELLERS AGENT, UNISON "assuming that Unison has made its payment of $532,875 to escrow following the notice of intent to exercise and deed transfer described below…". Again, UNSION demonstrates a full knowledge of what is required, but continues to do nothing. This is two weeks past closing and past UNISON'S first acknowledgement of the requirements to notice their option to participate in the transaction. **Again, notice the wording "notice of intent to exercise".** This is carefully worded to make sure that there is no doubt the option is not being exercised at this time! As an attorney UNISION ATTORNEY GERSHEN knows "a notice of intent" is not acceptable in the context of this transaction and contracts. In general a legal notice of intent would require a timeframe – such as "we intend to notice on Monday". He did not notice. ***The entire context of the escrow attempts demonstrate to the court that not only did they not exercise their option, but they did not proceed with the contractual requirements at all. This email demonstrates they had NOT exercised their option as of December 3rd. They also knew they needed to make a payment to purchase their option after option notice. The next day buyers cancelled. (EXHIBITs F & G)***

12/4/24, 3:30 PM Gmail - RE: FW: Update & Communications

Gmail Josh Parker <joshcparker@gmail.com>

**RE: FW: Update & Communications**
1 message

**Roxanne Balone** <roxanne.balone@corinthiantitle.com> Wed, Dec 4, 2024 at 3:12 PM
To: Josh Parker <joshcparker@gmail.com>, Alexander Gershen <agershen@scalefirm.com>
Cc: Emmett Dalton <emmettdalton10@gmail.com>, Team Teri <teamteri@corinthiantitle.com>, Home Partners <homepartners@unison.com>, Jamie Wells <jamie.wells@scalefirm.com>

*Buyers have Cancelled!*

*Josh Please executed cancellation instructions*

*Good Luck to everyboday!*

Thank you

**Roxanne Balone**
CORINTHIAN
TITLE COMPANY, INC.

---

HOMEOWNER was stunned they did not exercise their option, but there is no doubt it was on purpose. HOMEOWNER tried to stay positive and keep the deal going emailing “This deal will close!” to the parties during the proceedings. BUYERS were unbelievably patient and had planned to move in two weeks prior to needing to cancel. Ultimately UNISON did not take any of the steps required to purchase their share of the home. The sale was governed by the contract and specifically The Section 3.3(c) Page 5 of 45 "Unison Homeowner Covenant Agreement" [EXHIBIT A page 20 of 95] which is not in disagreement by the parties.

UNISON did not exercise its option and there was no requirement for them to do so: From the “Unison Homeowner covenant agreement” Page 1 section 1.1, [EXHIBIT A page 16 of 95]

"Owner is giving Investor the right, but not the obligation to exercise its Option and purchase an undivided interest in the property upon the sale of the property or on the occurrence of any other exercise event". The sale failed in part because UNSION ATTORNEY GERSHEN lead everyone to believe they might exercise their option, but the facts show they did not.

**Declarative relief sought** Plaintiff prays the court finds: "Defendant did not exercise its option to purchase their share of the home during the permitted sale letting the option lapse as of 12/4/2024"

**FOURTH CAUSE OF ACTION – Contracts between UNISON and HOMEOWNER are now terminated (Expired)**

**By Plaintiff [HOMEOWNER] against Defendant [UNISON]**

Pursuant to the contract Article 6 Section6.1(a), Page 10 of 45 "Unison Homeowner Covenant Agreement", EXHIBIT A page 25

**ARTICLE SIX**
**NON-EXERCISE TERMINATIONS OF OPTION**

6.1 Subject to Investor's Rights hereunder and to those representations and warranties, and duties and covenants of Owner which by their nature survive the Expiration Date; and to the Investor remedies set forth in **Article Seven** below, the Option shall terminate if:

**(a)** Investor in its Permitted Discretion elects not to exercise the Option, and voluntarily allows it to lapse as of any Exercise Event, the Term, or the Expiration Date;

Pursuant to article six, the court can declare the contracts are now terminated. UNISION did "voluntarily allows it to lapse". This was an "exercise event".

**Timing:** on 11/13/24 - UNISON confirmed the closing date of November 18, 2024 in an email to the parties. They still had not exercised their option on December 3rd – over two weeks later. So pursuant to Article six they further "voluntarily allowed it to lapse".

**Declarative relief sought** Plaintiff prays the court finds: "Defendants contracts with Plaintiff are terminated in their entirety pursuant to article six of the Unison Homeowner covenant agreement as of 12/4/2024"

**FIFTH CAUSE OF ACTION – Quiet title**

**By Plaintiff [HOMEOWNER] against Defendant [UNISON]**

**WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows regarding their lien holder adverse claim:**

1. Plaintiff's Title (CCP § 761.020(b)) 2.1 Plaintiff claims fee simple title to the Property EXHIBIT B Per deed recorded as instrument No. 2011-0169408 4/1/2011 (EXHIBIT M) in the office of San Diego County recorder

2. Defendants' adverse claim is EXHIBIT A. Specifically, the three documents filed on title make it impossible to perform any transaction on the home:

    1. Instrument No. 2019-0095255 "Memorandum of Unison Homeowner Agreement" recorded March 18th, 2019 (EXHIBIT A starting on page 61 of 95).

    2. Instrument No. 2019-0095256 "Unison Homeowner Deed of Trust and Security Agreement" recorded March 18th, 2019 (EXHIBIT A starting on page 72 of 95)
    3. Instrument No. 2019-0095257 "Assignment of Unison Homeowner agreement" Recorded March 18th, 2109 (EXHINIT A) transfers the agreements to a corporation not registered in the state of California as required by California Corporations Code (see **Corp Code §§ 15909.01–15909.08 for limited partnerships**), A foreign limited partnership (formed in Delaware) **must register with the California Secretary of State** if it is "transacting intrastate business" in California. **What counts as "transacting business":** Owning, managing, or developing real estate in California generally qualifies.

3. That defendant holds a deed of trust that is not a loan as required by California code. (EXHIBIT A section 3b. **"This Unison Homeowner Security Instrument constitutes a financing statement filed as a fixture filing pursuant to sections 9502(c) and 9514 of the California Uniform Code and any similar or successor provisions." "Trustor agrees that beneficiary may file either this Unison Home Owner security instrument or a copy of , or a UCC-1 financing statement in the real estate records or other appropriate index and / or in the office of the secretary of state of the state of California as a Financing Statement".** (EXHIBIT A Page 75 of 95) Per California code 9502(1) Must provide name of debtor – I am not a debtor; Further there is no financing statement - the

basis for this California code. The statement "constitutes a financing statement" is contrary to all the agreements that state they are not loans. This is **Fraudulent misrepresentation**.

4. You can't get someone to agree to break the law in a contract. Such agreements are deemed **illegal contracts** and are **void ab initio**—as if they never existed. Here they say "Trustor agrees…" and "UCC-1 financing statement". This clause is *Trustor agrees that this is a loan just for filing - even though it is not.*

5. HOMEOWNER met with the county of San Diego recorders office 7 times including 2 supervisors to determine how the documents could have been filed on title. UNSION uses an agent called Vantage Point Title out of Florida. They create a cover sheet to go on top of the cover sheet the UNISION creates. This is unacceptable title fraud. EXHIBIT A pages 72 & 73 show the two cover sheets. This is NOT allowed in violation of San Diego filing requirements. This deceives the San Diego recorders office to only looking at the top cover sheet which is a fraudulent loan cover sheet from what looks like a legitimate title company. They don't see the second cover sheet because they only review the cover sheet and verify there is a property description attached. Therefore, they only see it's from a Florida Title company and they don't know the title insurance policy is fake, the trustee is fake or any other element of fraud. They file it. So UNISION takes a hamburger and has someone legitimate wrap it in a taco wrapper and sells it the San Diego Recorders office as a taco. This is **Fraudulent misrepresentation**

6. The cover page by Vantage Point Title fraudulently states I am a "borrower", and "borrowers address" to defraud the county recorders office. This action demonstrates that UNISON also knows they can't file if it's not a loan. This was not shown to HOMEOWNER. In part, proven by the fact that the page numbering was changed by hand and HOMEOWNERS initials are missing from the "Memorandum of the Unison Homeowner Agreement" but are on some pages of the "Unison Homeowner Deed of Trust

and Security Agreement". Again, the fake cover sheets do not have my initials and were prepared after by Vantage Point Title without my knowledge. Other fake loan documents were prepared also with blank interest rates. This is **Fraudulent misrepresentation**

1. **Whereas,** Instrument No. 2019-0095255 "Memorandum of Unison Homeowner Agreement" recorded March 18th, 2019 is fraudulently filed as a loan "BORROWER NAME: Joshua Christoper Parker"; BORROWER ADDRESS: 6081 Roselle Meadows Trail" and the agreements state it is not a loan. Furthermore, this page was not presented during signing to "Trustor" (EXHIBIT A page 61 of 95).

2. **Whereas,** Instrument No. 2019-0095256 "Unison Homeowner Deed of Trust and Security Agreement" recorded March 18th, 2019 is fraudulently filed as a loan "BORROWER NAME: Joshua Christoper Parker"; BORROWER ADDRESS: 6081 Roselle Meadows Trail" and the agreements state it is not a loan. Furthermore, this page was not presented during signing to "Trustor" (EXHIBIT A page 72 of 95)

3. **The documents should be declared *void ab initio* due to the illegal nature and fraudulent misrepresentation.**

7. The deed of trust is based on a fraudulent amount of interest in the property. When the Deed was filed the interest in the property was zero percent. UNISION filed this: (EXHIBIT A page 82 of 95 section 21)

> **21.** **Extent of Lien.** The lien granted under this Unison HomeOwner Security Instrument shall encumber Trustor's entire interest in the Property, notwithstanding the fact that the Unison HomeOwner Agreement relates to only a fractional interest in the Property.

At no time and under no circumstances is the interest in the property ever 100%. This is fraudulent misrepresentation. A real estate option does not create an interest in the property which is violated by the agreements. This concept is understood and championed by Unison - "Unison's argument that Plaintiff lacks standing because option contracts do not create an interest in property and Unison has not exercised its option under the Agreements…" ***Singhal v. Unison Agreement Corp.*, No. 22-60656-CIV-SINGHAL, at *8 (S.D. Fla. Mar. 31, 2023).** Further this deed of trust is stating conditions that never exist and can be considered "Impossible" as its basis for existing. So to be clear HOMEOWNER always owns part of the property selling only a percentage to UNISION.

8. The documents on title rise to the standard of slander of title. The cause of action Cancellation of instrument (Civ. Code § 3412) applies

9. UNISION will not allow you to live with any other adult without their permission, so it is substantive unconscionability (EXHIBIT A page 58 of 95). This means if your kids turn 18 or you have a significant other UNISON must give permission. UNSION has never replied to anything I have ever mailed them or acknowledged receipt. Furthermore UNISON has consistently maintained a communication blackout with HOMEOWNER for years.

**10.** The contracts clearly state Pursuant to the contract Section 4, Page 2-3 of 7 "Unison Homeowner Option Agreement", [EXHIBIT A page 10-11] “Upon acceptance of such amount from Owner, Investor shall effect a full release and reconveyance of the Option, the Unison HomeOwner Agreement, the Unison HomeOwner Security Instrument, and the **other Transaction Documents**”. UNISION did not prepare that. They only offered a QuitClaim deed, without warranty, no property description, with no release the Deed of Trust, all. UNISON will not perform on any aspect of the contract, which is a breach of contract. The evidence will show they have done this for years under all aspects of the contracts. Although HOMEOWNER can’t pinpoint the reason, **it would be a breach of contract due to impossibility**. HOMEOWNER strongly believes that UNISION may not have the right to service the contracts since they used them as collateral to secure stock offerings and obtain investments. In other words, HOMEOWNERS property is being used to secure investments to 3rd parties and we don’t know under what conditions. Discovery will seek to obtain these contracts. Other possibilities would be

   1. UNISION may have had no money to buy the option or not be allowed to under their investor agreements or new business practices.
   2. UNISON is delaying until my death. I am 61 years old.

3. UNISON has changed its business practices and they have testified to this. Therefore UNISON no longer wants to participate in these type of contracts due to liability or other reasons.

I look forward to a detailed reply on this matter signed under the penalty of perjury by UNISION. **A lack of denial will be considered an admission of guilt.**

11. **Prior to listing the home**, HOMEOWNER contacted more than 8 escrow and title companies to see if any will transact on my home under any circumstances. All replies were “no’s”. Example reply: “We can’t ensure the transaction because it is a performance deed” – First lawyers title. Second response relayed to me from an underwriter “Unfortunately we are not in a position to do much with this” Further stating quote “So, I’d hate to waste your time at this point. I think we are at a spot where, unless the courts take action, we are kinda stuck.” Underwriters are the actual “insurer” service many title companies and there are only a few. It was further stated that title insurance has a list of companies that are “Redlined” and no one will insure them. No escrow or title insurance company wants a “passive contingency” property sale. HOMEOWNER determined that selling the home was the only way to clear title because he assumed UNISON would notice their option which clears title prior to the buyers transaction. HOMEOWNER disclosed there could be title issues, but again thought the option would solve all problems. The UNISON title documents cannot be resolved. They block any transaction on the subject property. After cancellation HOMEOWNER emailed UNISION “will you allow any transaction to occur on the subject property” and got no response. Please note UNISION does not do business like this anymore which was stated under the penalty of perjury by them. Any claim of ability to do business would require a copy of the contract that matches HOMEOWNERS. **Quiet Title should be granted based on the principal of “Impossibility”.**

12. The contracts and documents are now terminated based on the fourth cause of action being granted so quiet title can be granted.

**The plaintiff now Prays for Quiet Title:**

- That Plaintiff be adjudged the owner in fee simple of the real property described in the Complaint, free and clear of any right, title, estate, lien, or interest of Defendants, or any of them, and that Defendants, and all persons claiming under them, be forever barred from asserting any right, title, estate, lien, or interest in the Property adverse to Plaintiff;
- That title to the Property be quieted in favor of Plaintiff as of 12/4/2024
- That Plaintiff's title be declared valid and superior to any claims of Defendants, and that Defendants have no estate, right, title, lien, or interest in the Property adverse to Plaintiff;
- A Quiet title order California Code of Civil Procedure (CCP) §§ 760.010–764.080 to rescind:
    - "Memorandum of Unison Homeowner Agreement" - recorded as instrument No. 2019-0095255 on March 18th, 2019
    - "Unison Homeowner Deed of Trust and security Agreement" - recorded as instrument No. 2019-0095256 on March 18th, 2019
    - "Assignment of Unison Homeowner Agreement" - recorded as instrument No. 2019-0095257 on March 18th, 2019
    - ***All of official records, in the office of the county recorder of San Diego, California***

**SIXTH CAUSE OF ACTION – No money is due to UNISON**

**By Plaintiff [HOMEOWNER] against Defendant [UNISON]**

UNISON did not notice its option and therefore gets no proceeds from the sale. Further their initial payment is not refundable under any circumstances

The court can reference the following cases and arguments by Unison's attorneys to support no money due:

23-2835 Olson, et al. v. Unison Agreement Corporation

Unison attorney Jeremy Creelan argued in the **U.S. Court of Appeals for the Ninth Circuit** said a "credit obligation" is not a loan. Further arguing that

"This is the key point — there's no repayment obligation on the part of the consumer," he said. "That's why the Olsons engaged in it, and frankly, it's what provides consumers with such significant benefits. This deed of trust does not secure one or more advances, nor does it secure any repayment of anything.".

Further Jeremy Creelan states in verbal arguments "Unison can decline to exercise the option, and the homeowner the Olsen's here walk away with $64,750.00 with no obligation, no principal payments, no interest, they never pay anything."

"The <deed of trust> is not securing the repayment of anything"

Therefore, the court can enforce the contracts, terminate them and find that UNISON is due no money. The court has full support by UNISION arguments interpreting their own contracts October 24, 2024. https://youtu.be/rBY0wjVOoHg?si=gpTx1gWvxN2dWT5x

UNISON did not exercise its option and there was no requirement for them to do so: "Owner is giving Investor the right, but not the obligation to exercise its Option and purchase an undivided interest in the property upon the sale of the property"

From the "Unison Homeowner covenant agreement" Page 1 section 1.1, [EXHIBIT A page 16 of 95]

**Investment Payment**"). Under the Unison HomeOwner Option Agreement, Owner is giving Investor the right, but not the obligation, to exercise its Option and purchase an undivided percentage interest in and to the Property upon the sale of the Property or on the occurrence of any other **Exercise Event** specified in the Unison HomeOwner Option Agreement. This Unison HomeOwner Covenant Agreement (**"Unison**

From the "Unison Homeowner deed of trust and security agreement" Page 3 section 2. (f), [EXHIBIT A page 75] HOMEOWNER does not pay back any part of the Unison Investment Payment

> **f.** Trustor shall not be obligated to repay any part of the **Unison Investment Payment** (as such term is defined in Schedule A to the Unison HomeOwner Covenant Agreement); and therefore, such item shall not be included within the Obligations. The foregoing

Finally, "The Unison Investment Payment is not a principal amount which Investor is contractually or otherwise entitled to recover at Term or at Option exercise." So this means never.

From the "Unison Homeowner option agreement" Page 3 of 7 section 6. [EXHIBIT A page 10 of 95]

> **6. Nature Of Option And Of Unison Investment Payment.**
>
> **The Unison Investment Payment is not a loan. The Unison Investment Payment is not a principal amount which Investor is contractually or otherwise entitled to recover at Term or at Option exercise. The Investor Proceeds may be greater than, equal to, or less than the Unison Investment Payment, or zero, depending upon the change in value of the Property (the difference between the Original Agreed Value and the Ending Agreed Value) between the Effective Date and the Exercise Event. Owner will not be required to make any monthly interest or any other periodic payments to Investor calculated upon the amount of the Unison Investment Payment, nor will any periodic payment obligations be imposed upon or accrue on the amount of the Unison Investment Payment as indebtedness to Owner.**

**<u>Declarative relief sought</u>** Plaintiff prays the court finds: "Plaintiff owes no money to defendants as a result of the cancelled property sale and terminated contracts now or at any time in the future"

## SEVENTH CAUSE OF ACTION –UNISON is responsible for the cancelled sale

## By Plaintiff [HOMEOWNER] against Defendant [UNISON]

Per the contract named "Unison Homeowner covenant agreement" (Page 4-5 of 45) [EXHIBIT A page 19-20 of 95] a "permitted sale" section 3.2 (C) (i) states clearly "(c) Escrow and Closing. (i) A Permitted Sale must be consummated through an appropriate real property Escrow using the service of an **Escrow Holder**. Owner and Investor shall do or cause to be done, any and all acts

and things as shall be reasonably necessary for Escrow to close the transactions contemplated in the Unison HomeOwner Agreement."

(c) **Escrow and Closing.**

(i) A Permitted Sale must be consummated through an appropriate real property **Escrow** using the services of an **Escrow Holder**. Owner and Investor shall do or cause to be done, any

Page 4 of 45

© 2017, Unison

Form 250 HO-All (rev. 10/10/2017)

---

and all acts and things as shall be reasonably necessary for Escrow to close the transactions contemplated in the Unison HomeOwner Agreement.

UNISON ATTORNEY GERSHEN emails to HOMEOWNER he has been in "constant contact" with escrow but "we have not included you on those email discussions". As previously detailed, UNISION's exclusion of communication with HOMEOWNER was detrimental and in violation of the contracts. The attempts clearly violate the entire option agreement and sought to obtain a fraudulent amount of money tax free with no reconveyance at all. ESCROW THREE was not comfortable with this approach by UNISION ATTORNEY GERSHEN. Even after question about his approach UNISION ATTORNEY GERSHEN continued. UNISION ATTORNEY GERSHEN states "We have not included you on those email discussions". So there is probably a lot more I am not aware of.

Gmail

Josh Parker <joshcparker@gmail.com>

**Re: Parker - Information re Payoff of Unison Agreement Corp.'s Lien**

1 message

**Alexander Gershen** <agershen@scalefirm.com> Fri, Nov 22, 2024 at 6:44 PM
To: Josh Parker <joshcparker@gmail.com>
Cc: Jamie Wells <jamie.wells@scalefirm.com>, Corey Pedersen <cpedersen@scalefirm.com>, Alexander Gershen <agershen@scalefirm.com>

Mr. Parker,

We disagree. We have been in constant contact with Roxanne Balone and provided all relevant information to payoff Unison's lien. There is nothing false in the payoff statement.

We have not included you on those email discussions.

Alexander Gershen
Scale LLP
C. 925.451.4494

**Facts and events in Support**

1. UNISON and its lawyers failed to declare their option making it impossible for any escrow to move forward. Their communications held out the possibility which delayed the proceedings for weeks past closing and the BUTERS taking possession of the property.
2. UNISION did not start or complete any other required tasks such as their payment into escrow, preparing the deeds, or a reconveyance.
3. UNISON ATTORNEY LASZLO has failed to perform in prior escrows stating “Legal Hold”. A failure to certify under the penalty of perjury that they have the right to service the contracts would be considered an admission of guilt that they cannot perform under any circumstances.
4. UNISON did not complete the required W-9 and 1099-S forms for escrow to perform withholding and issue 1099-S after the sales
5. UNISION and UNISION ATTORNEY GERSHEN endlessly pursued obtaining a payment directly from escrow (EXHIBIT J) that
    a. Used a “Quitclaim deed” “without warranty” that cannot get title insurance by its nature. The inability to get title insurance was confirmed by ESCROW ONE (EXHIBIT D).
    b. Was in violation of the parties understood contract process section 3.3(c)

c. Put forth a "Quitclaim deed" in violation of the contracts which require a full reconveyance

d. Put forth a "Quitclaim deed" that was missing the property description, so it could not be filed with the county of San Diego. HOMEOWNER has met with the San Diego county recorder's office 7 times including 2 supervisors. They always check for the property description, or they will not file the document.

e. Put forth a "Quitclaim deed" that does NOT RELEASE THE DEED OF TRUST. **Whereas,** Instrument No. 2019-0095256 "Unison Homeowner Deed of Trust and Security Agreement" recorded March 18th, 2019 is not reference or included. The other 3 documents are referenced along with another instrument number.

f. Put forth a "Quitclaim deed" that includes the use of their own notary (a registered notary with company name "UNISON" and using their company address) in violation of the requirements of escrow for an independent assignment.

g. Put forth a "Quitclaim deed" that uses a previously unheard-of company name with no documentation to back up its use or signatory.

h. Put forth a "Quitclaim deed" that uses the phrase "Demand for payoff" confusing escrow into thinking that they were a lender. Lenders make "Payoff demands". UNSION ATTORNEY GERSHEN later referred to it as a "quote" but used the same document.

i. Put forth a "Quitclaim deed" that misstates the amount of money paid and subsequent calculation. This was based on a fraudulent payment claim by UNISION ATTORNEY GERSHEN contrary to a wire receipt provided by UNISION when the sale was approved. So to be clear, everyone knew it was a fraud. The initial fee paid was immediately emailed by UNISION to escrow on the approved sale (EXHIBIT H). UNISION ATTONREY GERSHEN was made aware of his fraudulent claim on the phone with HOMEOWNER. He asked, "Are you telling me you did not get that

amount of money?" I replied I did not, and he needed to look at the wire receipt provided by UNISION. Shockingly he never corrected his false claim, and all the parties were aware of it. He even stated in an email "there is nothing wrong with my calculation". Further he stated "There is nothing false in the payoff statement". His calculation is too large but telling the truth would prove that UNISION failed to make the required payment to initiate the contracts. UNISON was emailed the details of the fraudulent amounts and that UNISION ATTORNEY GERSHEN had refused to correct and instead emailed more lies to the parties. UNSION took no action. All representatives of UNSION were aware of their fraud.

6. ESCROW ONE assured HOMEOWNER that he would "Connect the dots" to determine the legitimacy of the company and signatory presented, but resigned prior to any further discussion on the issue

7. Additionally, UNISION ATTORNEY GERSHEN made financial demands to escrow circumventing me and without my knowledge. These demands violated the agreed contract process and cause escrow to be very uneasy and seek my input.

8. On December 4th ESCROW THREE emails to UNISON ATTORNEY GERSHEN UNISON, UNISON (and Jamie Wells from Gershen's firm) that buyers have cancelled. No one from UNISON or ATTORNEY UNISON GERSHEN ever responded to the cancellation email or **ever again**. This allows me to conclude that UNISION did not want the sale to go through. If they did not want to block the sale, they would have relented and taken action instead of silence. Their silence on cancellation spoke volumes to everyone on the transaction.

9. On December 4th the BUYERS AGENT emails ""It is clear from the recent seller communications that he is no closer to removing the Unison Lien and Delivering clear title". "We have no choice but to cancel the contract".

---------- Forwarded message ---------
From: **Daron Borst** <daron@theborstgroup.com>
Date: Wed, Dec 4, 2024 at 11:46 AM
Subject: 6081 Roselle Meadows - Cancellation of Contract
To: Emmett Dalton <emmettdalton10@gmail.com>, Roxanne Balone <roxanne.balone@corinthiantitle.com>
CC: phoenixtcsandiego@gmail.com <phoenixtcsandiego@gmail.com>

Emmett and Roxanne,

It is clear from the recent seller communications that he is no closer to removing the Unison lien and delivering clear title to the buyer for the purchase of 6081 Roselle Meadows.

We have no choice but to cancel the contract and continue on with our home search. Attached is the signed Cancellation of Contract.

All the best,

Daron

**Daron Borst**
Coldwell Banker, Realtor®
Certified Probate and Trust Specialist
International Sterling Society Honoree - 2023

COLDWELL BANKER REALTY

This is 2 weeks after the closing was supposed to occur, and owners were to move in.

Obviously the BUYERS need a home to live in.

**Not HOMEOWNERS FAULT**

Homeowner was excluded from many communications by UNISION and told by ESCROW THREE the following in an email leaving the responsibility firmly on UNISON:

*Unison recorded a deed of trust against your property on 2/19/2019, they are the ones I have to take instructions from to release this from title before you can transfer to new owner*

***Only Unison***

Thank you

**Roxanne Balone**

CORINTHIAN TITLE COMPANY, INC.

Whereas UNISION, it's attorneys, and title filings made it impossible to get title insurance (which blocks any sale to anyone at any price)

Whereas BUYERS cancelled due to UNISION

Whereas BUYERS AGENT states UNISION is the reason for the cancellation

Whereas UNISON did not notice its option, but held out their decision relentlessly

Whereas UNISON is responsible according to ESCROW THREE

UNSION is solely responsible for the cancelled sale and forced move of HOMEOWNER. It appears defendant acted with fraudulent intent, breaching the contracts and as a direct and foreseeable result of Defendant's actions, Plaintiff has suffered damages.

**Declarative relief sought** Plaintiff prays the court finds: "Defendants failure to perform the obligations under the contracts which **constitutes a breach** and caused the cancelled sale of the subject property as of 12/4/2024"

**Final request prior to litigation**

After the failed sale, On 1/27/25 HOMEOWNER demanded that UNISON ATTORNEY LASZLO "This is my final demand for you to ***release all claims on your deed of trust and walk away"*** ***<u>"The contracts are hereby terminated pursuant to the contract: "(a) Investor in its permitted discretion elects not to exercise the Option" (Article six)</u>***

I also continued ***"Obviously I will proceed to resolve the issues via a civil litigation without further communication".***

On 1/30/25 UNISON ATTORNEY LASZLO replied "we do not agree to your demand" (EXHIBIT K)

**DEMAND FOR RELIEF**

Wherefore, Plaintiff's demand for judgement as to all of the claims for relief is as follows:

**Plaintiff "HOMEOWNER" ask the court to find the following <u>causes of action enforcing the contracts</u>:**

1) UNISION engaged and approved the sale of the subject property to BUYERS at the contracted price (EXHIBIT C). Per the contracts between UNISION and HOMEOWNER (EXHIBIT A) this is a "Permitted Sale". UNISON did not seek any additional costs or fees including "Remodeling adjustment", "Early Termination Adjustment", "Deferred Maintenance Adjustment", "AOV Floor Adjustment", "Unpaid Owner Obligations", "asset administration fees" or lawyers' fees
2) Plaintiff's sale of the home was an "Exercise Event" based on the contract's definitions and judicial review
3) Defendant did not exercise its option to purchase their share of the home during the permitted sale letting the option lapse as of 12/4/2024All contracts between the parties are hereby terminated with no money due UNISION
4) A Quiet title order to rescind

a. "Memorandum of Unison Homeowner Agreement" - recorded as instrument No. 2019-0095255 on March 18th, 2019

b. "Unison Homeowner Deed of Trust and security Agreement" - recorded as instrument No. 2019-0095256 on March 18th, 2019

c. "Assignment of Unison Homeowner Agreement" - recorded as instrument No. 2019-0095257 on March 18th, 2019

***All of official records, in the office of the county recorder of San Diego, California***

5) Plaintiff owes no money to defendants as a result of the cancelled property sale and terminated contracts now or at any time in the future

6) Defendants' failure to perform the obligations under the contracts **constitutes a breach** and caused the cancelled sale of the subject property as of 12/4/2024

7) The court awards compensatory damages including court costs and interest $5,461.41 as of filing (EXHIBIT L)

8) The court awards punitive damages. Home price is dropping rapidly.

**VERIFICATION**

I am the plaintiff in this action; the foregoing complaint is true of my knowledge, except as to the matters stated on my information or belief, and as to those matters, I believe to be true.

I declare under penalty of perjury under the laws of the State of California.

DATED: 09/17/2025

Joshua Christopher Parker
In Pro Per

# Exhibit A

unison

**Unison**
650 California Street, Suite 1800
San Francisco, CA 94108
unison.com

Via Email

October 6, 2023

Sasan Mirkarimi, Esq.
E-mail: sasan@equitylegalllp.com

Re: Joshua Parker | Unison FRX-128092

Dear Mr. Mirkarimi:

Unison is in receipt of your September 22, 2023 letter[1] which purports to be an information request under the Real Estate Settlement Procedures Act ("RESPA"), Regulation X, Regulation Z, the Truth in Lending Act ("TILA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Fair Credit Reporting Act ("FCRA") (hereinafter, the "Letter").

Unison objects to the Letter because none of the statutes apply. Only RESPA and Regulation X provide for an information request, but neither RESPA nor Regulation X applies.[2] Among other things, Unison is not a "servicer" under 12 USC § 2605(i)(2) or 12 C.F.R. § 1024.2, and the agreement referenced in the letter is neither a "mortgage loan" under 12 C.F.R. § 1024.31 nor a "federally related mortgage loan" under 26 U.S.C. § 2602.

Unison additionally objects to the Letter because the information requested is vague, overbroad, and/or unduly burdensome. See 12 C.F.R. § 1024.36(f)(iv).

Unison further objects to the Letter because the information requested includes items that are irrelevant. See 12 C.F.R. § 1024.36(f)(iii).

Unison objects to the Letter because the information requested includes items that are confidential, proprietary and/or privileged. See 12 C.F.R. § 1024.36(f)(ii).

///

///

---

[1] The letter was dated September 21, 2023, but not emailed to Unison until September 22, 2023.

[2] Even if the other statutes provided for an information request, Unison is not a "creditor" under 15 U.S.C. § 1602 or 12 C.F.R. § 1026.2, Unison is not a "creditor or "debt collector" under 15 U.S.C. § 1692a, and Unison is not a "furnisher" under 15 U.S. Code § 1681s–2 or 12 C.F.R. § 1022.41.

unison

**Unison**
650 California Street, Suite 1800
San Francisco, CA 94108
unison.com

Notwithstanding the fact that RESPA and/or 12 C.F.R. § 1024.36 do not apply and notwithstanding Unison's objections, Unison agrees to produce reasonably accessible, nonprivileged, and responsive documents within its possession, custody, or control.

Regards,

Laszlo Ladi,
Corporate Counsel

unison

# NOTICE AND ACKNOWLEDGMENT REGARDING SPOUSES, PARTNERS AND CO-OCCUPANTS WHO ARE NOT SIGNATORIES TO THE UNISON HOMEOWNER AGREEMENT

Unison HomeOwner Agreement ID Number: FRX-128092

This Notice and Acknowledgement Form ("**Form**") contains important disclosures about the rights and liabilities of spouses, domestic partners, family members and other co-occupants of a Property ("**Property**") subject to a **Unison HomeOwner Agreement** who are not signatories to the Unison HomeOwner Agreement (collectively referred to as "**Non-Owner Occupant(s)**"). Please READ IT CAREFULLY. This Form must be signed by all homeowners entering into and executing a Unison HomeOwner Agreement ("**Unison Signatory(ies)**"). Any owner executing a Unison HomeOwner Agreement ("**Owner**") is responsible for ensuring that a complete and accurate version of this Form is returned to Unison Agreement Corp. ("**Unison**") as a prerequisite to entering into the Unison HomeOwner Agreement.

The rights of a Non-Owner Occupant to occupy or retain possession of the Property following the death of the Last Surviving Owner who is a party to the Unison HomeOwner Agreement, Option exercise, or an Owner Event Of Default under the Unison HomeOwner Agreement, may be significantly affected by the operation of the Unison HomeOwner Agreement. This is because the Unison HomeOwner Agreement is an option agreement which gives Unison the right to exercise its option and purchase an undivided percentage interest ("**Investor Percentage**") in the Property upon certain triggering events. *Two such triggering events are the death of the Last Surviving Owner, or an Owner Event Of Default, regardless of whether Non-Owner Occupants are occupying the Property at that time.* A Non-Owner Occupant of a Property subject to a Unison HomeOwner Agreement will be required to settle Unison's option rights even if the Non-Owner Occupant inherits the Property as the heir, beneficiary or survivor of an Owner. Depending on the appreciation of the Property during the term of the Unison HomeOwner Agreement, the amount required to settle Unison's option rights may be substantial. In addition, following an Event of Default (including default by Non-Owner Occupants), Unison may be entitled to exercise its recorded security interest and/or compel the sale of the Property, resulting in a Non-Owner Occupant losing possession and/or ownership thereof.

Unison cannot know who occupies the Property as a principal residence if those persons are not named on title. Unison must and will rely on the Owner to supply this information accurately.

The responsibility for notifying Unison of any change in the status of Non-Owner Occupants is also a continuing obligation of all Owners throughout the Term of the Unison HomeOwner Agreement. All Owners are responsible for returning a complete and accurate amended Form to Unison with the signatures of all Non-Owner Occupants, both at inception of the Unison HomeOwner Agreement, and in the event that any new Non-Owner Occupant not signatory to the Unison HomeOwner Agreement commences to occupy the Property as his or her principal residence, or in the event a non-adult occupant of the Property attains the age of 18, at any time during the Term.

In the event that a Unison Signatory wishes to add another person onto the title to the Property after entering into the Unison HomeOwner Agreement, he or she must execute the complete set of Unison HomeOwner Agreement legal documents and meet all then-current Unison HomeOwner Agreement education requirements. Unless and until these requirements are met, the individual will remain and must be identified to Unison as a Non-Owner Occupant of the Property subject to the option and contractual rights of Unison as above described.

All Owners acknowledge that they have read and understand this Form, and that they have been advised by Unison to consult independent legal counsel and estate planning professionals to ascertain the legal effects of the Unison HomeOwner Agreement on future possession and occupancy of the Property.

[✓] I represent and warrant that there are no Non-Owner Occupants living in my Property.

Acknowledged and agreed:

| Owner: | Co-Owner: |
|---|---|
| x Joshua Christopher Parker (signature) | |
| Joshua Christopher Parker | |
| Date signed: 2/20/19 | Date signed: |

[ ] I represent and warrant that I have presented this form to and discussed its contents with all Non-Owner Occupants living in my Property. The names of all Non-Owner Occupants and their relation to me appear below.

Acknowledged and agreed: NA

| Owner: | Owner: |
|---|---|
| | |
| Joshua Christopher Parker | |
| Date signed: | Date signed: |
| Non-Owner Occupant 1: | Non-Owner Occupant 2: |
| Print name: | Print name: |
| Relation to Applicant: | Relation to Applicant: |
| Non-Owner Occupant 3: | Non-Owner Occupant 4: |
| Print name: | Print name: |
| Relation to Applicant: | Relation to Applicant: |

**DEFERRED MAINTENACE ADDENDUM TO UNISON HOMEOWNER AGREEMENT**

Unison HomeOwner Agreement ID Number: FRX-128092

This Deferred Maintenance Addendum to the **Unison HomeOwner Agreement** ("Deferred Maintenance Addendum") restates those rights and obligations of the parties previously set forth in Section 8.4(b)(i) of the **Unison HomeOwner Covenant Agreement.**

Reference is made to that certain Unison HomeOwner Agreement by and between JOSHUA CHRISTOPHER PARKER AN UNMARRIED MAN (collectively, "**Owner**") and **Unison Agreement Corp.**, its successors and assigns ("**Investor**"), in connection with the purchase of the property at 6081 Roselle Meadows Trl, San Diego, CA 92130 ("**Property**"), consisting of (1) the **Unison HomeOwner Option Agreement**; (2) the **Unison HomeOwner Covenant Agreement**; (3) the **Unison HomeOwner Recorded Memorandum**, and (4) the **Unison HomeOwner Security Instrument**. All initially bolded terms in this Deferred Maintenance Addendum are defined in Schedule A to the Unison HomeOwner Covenant Agreement.

Section 8.4(b)(i) of the Unison HomeOwner Covenant Agreement provides for notation by Investor of certain repair items or conditions on the Property in connection with the **Owner Property Purchase,** which repair items or conditions may be expressly reserved by Investor for application of a **Deferred Maintenance Adjustment** at the time of calculation of the **Ending Agreed Value** of the **Property** and determination of the **Investor Proceeds**. The following items are noted by Investor under Section 8.4(b)(i):

> Page 34 of 37 in the home inspection report by National Property Inspection dated 01/30/19 specifically noted: Water stains can be found on the ceiling in this garage. Suspect previous plumbing leak from bathroom above. Monitor condition. Recommend further evaluations by a licensed contractor.
>
> Page 35 of 37 in the home inspection report by National Property Inspection dated 01/30/19 specifically noted: Noted rust forming at the base of this AC unit. Monitor condition as early repairs may be needed.
>
> Page 35 of 37 in the home inspection report by National Property Inspection dated 01/30/19 specifically noted: Hot water valve at bathtub was found to be damaged. Recommend repairs by a licensed plumber.

If the items, defects, or conditions listed above have not been fully corrected or repaired by Owner at the time of any calculation of the Ending Agreed Value of the Property and any determination of the Investor Proceeds, then Investor shall have the right under Section 8.4(a) of the Unison HomeOwner Covenant Agreement to make (in consultation with third party experts and inspectors unaffiliated with Investor), a commercially reasonable estimate of the dollar

amount which is required, at that time, to repair such Deferred Maintenance, independently and without reference to any estimate of costs required for repair which may have been given to Owner and to apply the dollar amount so obtained by Investor as a Deferred Maintenance Adjustment in calculating the Ending Agreed Value of the Property and the Investor Proceeds.

Investor shall have no liability in connection with, or for Owner's failure to cure, the items, defects and conditions listed above.

This Addendum may be executed in counterparts.

**INVESTOR:**

Unison Agreement Corp.

By: ______________________
Ismael Casas, Jr.

Title: VP
Vice President

02/22/2019
Date Signed

**OWNER:**

By: Joshua Christopher Parker
Joshua Christopher Parker

Date Signed: 2/20/19

By: ______________________

Date Signed: ______________________

By: ______________________

Date Signed: ______________________

By: ______________________

Date Signed: ______________________

Unison HomeOwner Agreement ID Number: FRX-128092

# UNISON HOMEOWNER OPTION AGREEMENT

This Unison HomeOwner Option Agreement ("**Unison HomeOwner Option Agreement**") is entered into as of 02/19/2019 ("**Effective Date**").

**1. Grant Of Option; Option Price; Consideration.**

**(a)** Joshua Christopher Parker ("**Owner**") hereby grants to Unison Agreement Corp., a Delaware corporation, and its successors and assigns ("**Investor**"), an option ("**Option**") to purchase, in the future, an undivided 70.00% interest (the "**Investor Percentage**") in and to that certain residential real property known as 6081 Roselle Meadows Trl, San Diego, CA 92130 and further described in the attached **Exhibit A** (the "**Property**") for the Unison Purchase Price of $710,500.00 ("**Unison Purchase Price**"). The Option is granted by Owner in partial consideration of Investor's providing Owner with an advance of funds in the amount of $177,625.00 (the "**Unison Investment Payment**").

**(b)** As consideration for granting the Option, and for Owner's obligations under the Unison HomeOwner Agreement ("**Unison HomeOwner Agreement**"), Owner shall receive: **(1)** the Unison Investment Payment; **(2)** the delayed right and express waiver of any and all rights of Investor to exercise the Option it has purchased in the Property, unless or until such time as Owner elects, in Owner's sole discretion, to sell the Property, or until the occurrence of another **Exercise Event,** as defined herein; and **(3)** Investor's performance of its obligations under, and such other rights and benefits as are provided to Owner under the Unison HomeOwner Agreement.

**(c)** The Unison Investment Payment is an advance payment of a portion of the Unison Purchase Price. Therefore, in the event Investor elects to exercise the Option, the remaining portion of the Unison Purchase Price (the "**Unison Purchase Price Balance**") will be $532,875.00.

**(d)** This Option is made subject to the terms and conditions of the following documents, each executed as of the Effective Date and incorporated herein by reference ("**Transaction Documents**"), which Transaction Documents together with this Unison HomeOwner Option Agreement comprise the Unison HomeOwner Agreement: **(1)** the Unison HomeOwner Covenant Agreement ("**Unison HomeOwner Covenant Agreement**"); **(2)** the Unison Deed of Trust/Mortgage and Security Instrument, together with any riders thereto ("**Unison HomeOwner Security Instrument**"); and **(3)** the Memorandum of Unison HomeOwner Agreement ("**Unison HomeOwner Recorded Memorandum**"). Capitalized terms not defined herein are defined in **Schedule A** to the Unison HomeOwner Covenant Agreement.

**2. Term Of Option; Right To Exercise.**

The term of the Option ("**Term**") is thirty (30) years. The Term commences on the Effective Date and expires on the date immediately preceding the thirtieth (30th) anniversary of the Effective Date ("**Expiration Date**"), subject to extension under limited circumstances set forth in the Unison HomeOwner Covenant Agreement. Investor will have the right in its **Permitted Discretion** to exercise this Option only upon the following events ("**Exercise Events**"): **(a)** as of the Expiration Date; **(b)** upon Owner's arms' length sale of the Property; **(c)** upon the death of the last surviving Owner ("**Last Surviving Owner**"); or **(d)** following a material and uncured event of Owner default ("**Event Of Default**"), or acceptance by Owner of



© 2018, Unison 

Investor's offer of Option exercise and Orderly Sale, as described in and subject to the terms of **Article Seven** of the Unison HomeOwner Covenant Agreement.

**3. Manner Of Option Exercise.**

Upon the occurrence of any Exercise Event, Investor (or Investor's agent, servicer, **Asset Administrator**, or other designee) may exercise the Option by transmission of a written statement either substantially in the form of **Exhibit B** hereto, or which otherwise evidences Investor's intent to purchase its undivided percentage interest in and to the Property and settle the Unison HomeOwner Agreement ("**Option Exercise Notice**"). Transmission of the Option Exercise Notice will constitute exercise of the Option when sent to any of the following **Persons**: **(a)** Owner, either at the address of the Property, or at the electronic mail address given for notices below; **(b)** any **Escrow Holder** engaged in processing a sale or transfer of the Property; **(c)** any real estate agent or broker engaged by Owner in processing a sale or transfer of the Property; **(d)** any heir(s), representative, or executor of the Last Surviving Owner ("**Owner's Estate**"); or **(e)** any other Person Owner has designated during the Term as authorized to receive notices under the Unison HomeOwner Agreement.

**4. Property Valuation; Investor Purchase.**

Owner agrees that the value of the Property as of the Effective Date is $1,015,000.00 ("**Original Agreed Value**"). Owner further agrees that the future value of the Property, when calculated at any time during the Term, is called the **Ending Agreed Value**, which will be determined as provided in the Unison HomeOwner Covenant Agreement and which shall be subject to certain adjustments if: **(a)** Owner sells the Property prior to the third (3rd) anniversary of the Effective Date; **(b)** Owner sells the Property in a **Sale By Owner**, **Intrafamily Sale**, or a sale to a **Third Party Buyer** that is not a **Natural Person** (as such terms are defined in the Unison HomeOwner Covenant Agreement); **(c)** the Ending Agreed Value is negatively affected as a result of either (i) Owner's failure to maintain the Property during the Term, or (ii) a condition or defect in, or damage to the Property or its title which either existed as of the Effective Date or which occurred or developed during the Term and which was not remedied or repaired by Owner; **(d)** Owner remodels, improves or modifies the Property and thereby affects the Ending Agreed Value (positively or negatively); or **(e)** Owner defaults under the Unison HomeOwner Agreement and fails to cure the Event of Default.

Upon Option exercise, Investor shall be entitled to purchase its undivided percentage interest in and to the Property in exchange for the Unison Purchase Price Balance. The value of Investor's undivided percentage interest in the Property will be calculated as the Ending Agreed Value of the Property (as adjusted, if applicable) multiplied by the Investor Percentage. Any and all **Unpaid Owner Obligations**, as such term is defined in the Unison HomeOwner Covenant Agreement, shall be subtracted from the Unison Purchase Price Balance in calculating the amount Investor shall pay for its undivided percentage interest. Investor's exercise of its Option and purchase of an undivided percentage interest in and to the Property shall be conducted pursuant to the procedures prescribed in the Unison HomeOwner Covenant Agreement. Pursuant to the procedures prescribed in the Unison HomeOwner Covenant Agreement, Owner may terminate Investor's right to purchase an undivided percentage interest in and to the Property pursuant to Investor's exercise of the Option by tendering to Investor an amount equal to the value of Investor's undivided percentage interest (if any), minus the Unison Purchase Price Balance (from which Unpaid Owner Obligations shall have been subtracted). Upon acceptance of such amounts from Owner, Investor shall effect



© 2018, Unison 

a full release and reconveyance of the Option, the Unison HomeOwner Agreement, the Unison HomeOwner Security Instrument, and the other Transaction Documents. In the event that Owner does not terminate Investor's right to purchase its undivided percentage interest in and to the Property, Investor and Owner, as co-owners of the Property, shall promptly market and sell the Property in order to liquidate their respective percentage interests thereto.

**5. Investor Proceeds; Investor Interest.**

The value of Investor's undivided percentage interest in and to the Property, minus the Unison Purchase Price Balance, is termed the "**Investor Proceeds.**" The amount of Investor Proceeds, if any, plus the amount of Unpaid Owner Obligations, if any, is termed the "**Investor Interest.**"

**6. Nature Of Option And Of Unison Investment Payment.**

**The Unison Investment Payment is not a loan. The Unison Investment Payment is not a principal amount which Investor is contractually or otherwise entitled to recover at Term or at Option exercise. The Investor Proceeds may be greater than, equal to, or less than the Unison Investment Payment, or zero, depending upon the change in value of the Property (the difference between the Original Agreed Value and the Ending Agreed Value) between the Effective Date and the Exercise Event. Owner will not be required to make any monthly interest or any other periodic payments to Investor calculated upon the amount of the Unison Investment Payment, nor will any periodic payment obligations be imposed upon or accrue on the amount of the Unison Investment Payment as indebtedness to Owner.**

**7. Special Termination.**

At any time following the third (3rd) anniversary of the Effective Date, Owner may request special termination of the Option ("**Special Termination**") prior to the occurrence of an Exercise Event or the Expiration Date, pursuant to **Section 6.2** of the Unison HomeOwner Covenant Agreement, by payment to Investor of an amount ("**Special Termination Price**") equal to the greater of (a) the Unison Investment Payment plus any Unpaid Owner Obligations, or (b) the Investor Interest.

**8. Maximum Authorized Debt.**

The sum total of loans from third parties secured by liens on the Property that Owner may incur while the Unison HomeOwner Agreement is outstanding is $710,500.00. This amount is called the **Maximum Authorized Debt**. A sum total of loans from third parties secured by liens on the Property in excess of the Maximum Authorized Debt at any time during the Term is an Event of Default under the Unison HomeOwner Agreement.

**9. Recorded Lien.**

Owner's performance under the Unison HomeOwner Agreement will be secured as a recorded lien on the Property by recording of both the Unison HomeOwner Security Instrument and the Unison HomeOwner Recorded Memorandum in the county where the Property is located. If there is a material and uncured Event of Default under the terms of the Unison HomeOwner Agreement, Investor shall have the right, but is not obligated to, demand Owner's performance of the terms of the Unison HomeOwner Agreement; and upon Owner's continued failure to perform following such demand, Investor shall have the



© 2018, Unison

right to invoke any and all remedies under the Unison HomeOwner Agreement, including the right of Option exercise, and those remedies provided to Investor as a secured lien holder under the Unison HomeOwner Security Instrument and applicable law.

**10. Summary of Financial Terms and Fees.**

| | |
|---|---|
| Effective Date: | 02/19/2019 |
| Term: | 30 Years |
| Expiration Date: | 02/18/2049<br>at 11:59 pm Pacific Time |
| Original Agreed Value: | $1,015,000.00 |
| Investor Percentage: | 70.00% |
| Unison Purchase Price: | $710,500.00 |
| Unison Investment Payment: | $177,625.00 |
| Unison Purchase Price Balance:* | $532,875.00 |
| Maximum Authorized Debt: | $710,500.00 |

* The Unison Purchase Price Balance may be subject to reduction under Sections 7.3(d) and 10.2 of the Unison HomeOwner Covenant Agreement.

The formulae to be applied in any calculation of the Investor Proceeds or Investor Interest hereunder are set forth in Article 10 of the Unison HomeOwner Covenant Agreement, which is incorporated herein by reference.

Address, Phone Number and Electronic Mail Address for Notice to Owner:

6081 Roselle Meadows Trl
San Diego, CA 92130
858-775-0103

Address for Notice to Investor:

Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA 94126-6800
Attn: Asset Administration



© 2018, Unison

IN WITNESS WHEREOF, intending to be legally bound, the parties have executed this Unison HomeOwner Option Agreement as of the Effective Date.

**INVESTOR:**

Unison Agreement Corp.

By: ______________________________
Ismael Casas, Jr.

Title: Vice President

02/20/2019

Date Signed

**OWNER:**

By: ______________________________
Joshua Christopher Parker

Date Signed: 2/20/2019

By: ______________________________

Date Signed: ______________________________

By: ______________________________

Date Signed: ______________________________

By: ______________________________

Date Signed: ______________________________



© 2018, Unison

# **Exhibit A**

## PROPERTY DESCRIPTION

That certain real property situated in the City of San Diego, County of SAN DIEGO, State of California, described as follows:

APN: 305-161-27-00

[End of legal description.]



© 2018, Unison

**LEGAL DESCRIPTION** .

Real property in the City of San Diego, County of San Diego, State of California, described as follows:

PARCEL 1:

LOT 103 OF PACIFIC HIGHLANDS RANCH UNIT NO. 5.

THE FEE SIMPLE TITLE TO LOT 103 OF PACIFIC HIGHLANDS RANCH UNIT NO. 5 LOCATED IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 14754, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, CALIFORNIA ON MARCH 19, 2004.

PARCEL 2:

A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OVER THE PRIVATE DRIVES, STREETS, ALLEYS AND COMMON AREA OF THE ABOVE-REFERENCED TRACT MAP, AS PROVIDED FOR IN AND SUBJECT TO THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS, AND RESTRICTIONS FOR WEST PORTICO COMMUNITY ASSOCIATION RECORDED AUGUST 2, 2005 AS INSTRUMENT NO. 2005-0657428, IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, CALIFORNIA.

EXCEPT ALL OIL, ASPHALTUM, PETROLEUM, NATURAL GAS AND OTHER HYDROCARBONS AND ANY OTHER VALUABLE MINERAL SUBSTANCES AND PRODUCTS, AND ALL OTHER MINERALS, WHETHER OR NOT OF THE SAME CHARACTER HEREINBEFORE GENERALLY DESCRIBED, IN OR UNDER SAID LAND AND LYING AND BEING AT A VERTICAL DEPTH OF 500 OR MORE FEET BELOW THE PRESENT NATURAL SURFACE OF THE GROUND, BUT WITHOUT RIGHT OF ENTRY ON THE SURFACE OR WITHIN A VERTICAL DEPTH OF 500 FEET BELOW THE PRESENT SURFACE OF THE GROUND.

PARCEL 3:

AN EXCLUSIVE EASEMENT OVER AND UPON THAT PORTION OF LOT 104 OF SAID MAP, AS DEPICTED AND SHOWN ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART THEREOF, FOR THE PURPOSES DEFINED IN ARTICLE IX OF THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS HEREIN REFERRED TO. THIS EASEMENT IS APPURTENANT TO AND FOR THE USE AND BENEFIT OF THE OWNER(S) OF LOT 103 AND THEIR SUCCESSORS. THE OWNER OF PARCEL 1 SHALL BE RESPONSIBLE FOR ALL MAINTENANCE, REPAIR AND COSTS OF THE SIDE YARD EASEMENT CONVEYED IN THIS PARCEL 3.

APN: 305-161-27-00

## Exhibit B

### OPTION EXERCISE NOTICE

Date:

To: [Homeowner Name(s)]
[Property Address]
[City State ZIP]

1. Notice is hereby given of Investor's election to exercise the Option granted to Investor by [Homeowner Name(s)] ("Owner") under the Unison HomeOwner Agreement between Investor and Owner dated as of [Effective Date] ("Unison HomeOwner Agreement"). Capitalized terms not defined herein are defined in the Unison HomeOwner Agreement.

2. Under the terms of the Unison HomeOwner Agreement, the Ending Agreed Value of the Property (as adjusted if applicable), multiplied by the Investor Percentage, minus the Unison Purchase Price Balance, together with any Unpaid Owner Obligations, equals the sum of

$ ( dollars and cents).

3. Upon acceptance of such amount from Owner, Investor shall effect a full release and reconveyance of the Option, the Unison HomeOwner Agreement, the Unison HomeOwner Security Instrument, and the other Transaction Documents.

Dated: ______________________________

By: **Exhibit - Do Not Sign**

Name: **Exhibit - Do Not Sign**

Title: **Exhibit - Do Not Sign**



© 2018, Unison

Unison HomeOwner Agreement ID Number: FRX-128092

# UNISON HOMEOWNER COVENANT AGREEMENT

## ARTICLE ONE
## INTRODUCTORY PROVISIONS

**1.1 Transaction Documents; Purpose of Unison HomeOwner Covenant Agreement.** Pursuant to that certain Unison HomeOwner Option Agreement (**"Unison HomeOwner Option Agreement"**) dated as of 02/19/2019 (**"Effective Date"**), JOSHUA CHRISTOPHER PARKER AN UNMARRIED MAN (**"Owner"**) is granting to Unison Agreement Corp., a Delaware corporation, its successors and assigns (**"Investor"**), an option (**"Option"**) to purchase an undivided fractional interest (**"Investor Percentage"**) in that certain residential real property known as 6081 Roselle Meadows Trl, San Diego, CA 92130 (the **"Property"**), in partial consideration of Investor's providing Owner an advance of funds (the **"Unison Investment Payment"**). Under the Unison HomeOwner Option Agreement, Owner is giving Investor the right, but not the obligation, to exercise its Option and purchase an undivided percentage interest in and to the Property upon the sale of the Property or on the occurrence of any other **Exercise Event** specified in the Unison HomeOwner Option Agreement. This Unison HomeOwner Covenant Agreement (**"Unison HomeOwner Covenant Agreement"**), dated as of the Effective Date, sets forth the representations, warranties, duties and covenants of Owner and Investor during the **Term** of the Option and whenever reasonable or necessary to protect the rights of the parties.

The Unison HomeOwner Agreement (**"Unison HomeOwner Agreement"**) consists of the following transaction documents together with any and all addenda, supplements, schedules, and exhibits thereto (**"Transaction Documents"**): **(a)** this Unison HomeOwner Covenant Agreement; **(b)** the Unison HomeOwner Option Agreement; **(c)** a memorandum giving notice of the Option and the Unison HomeOwner Agreement, recorded in the county where the Property is located (**"Unison HomeOwner Recorded Memorandum"**); and **(d)** a deed of trust (or mortgage) and security agreement, together with any riders thereto giving notice of the Option as a secured interest, recorded in the county where the Property is located (**"Unison HomeOwner Security Instrument"**).

**1.2 Definitions.** The Unison HomeOwner Agreement contains certain defined terms (**"Defined Terms"**). All Defined Terms either have their meaning described within the Transaction Documents, or are defined in alphabetical order in Schedule A to this Unison HomeOwner Covenant Agreement. The first use of any Defined Term in any Transaction Document is in **bold-face** type, and in some cases may also be placed within quotation marks and parentheses.

## ARTICLE TWO
## REPRESENTATIONS AND WARRANTIES

**2.1 Title, Occupancy, Capacity, Authority; Intent Of Agreement.**

**(a) Fee Simple Title.** Owner is the owner of the Property and has marketable and insurable absolute title to the Property, free of any other claims, restrictions, leases, liens and other encumbrances or interests against the title, other than **Permitted Encumbrances** and **Permitted Senior Liens**.

**(b) Principal Residence.** Owner will occupy the Property as Owner's **Principal Residence** throughout the Term, unless otherwise agreed by Investor, in writing, in its **Permitted Discretion**.

**(c) Capacity.** Owner has full capacity to enter into the Unison HomeOwner Agreement and each of the Transaction Documents and, upon execution and delivery, the Unison HomeOwner Agreement shall constitute a legal, valid and binding agreement and obligation of Owner.



© 2017, Unison 

**(d)** **Authority.** Owner is a **Natural Person** with the legal power, right and authority to grant the Option, to enter into the Unison HomeOwner Agreement and each of the Transaction Documents, and to consummate all transactions contemplated by the Unison HomeOwner Agreement. If the Property is to be held in a **Revocable Trust**, Owner has executed and delivered to Investor the revocable trust rider to the Unison HomeOwner Security Instrument ("**Revocable Trust Rider**") warranting the identical legal power, right and authority of the **Trustee(s)** and **Trustor(s)**.

**(e)** **Intent and Purpose of Agreement.** Owner acknowledges that the Unison HomeOwner Agreement is not offered by Investor, and should not be used by Owner, for use as a source of short-term (fewer than three year) funding. Owner acknowledges that the Unison HomeOwner Agreement is instead exclusively offered by Investor as a source of funding pursuant to which Owner will occupy the residence as principal residence (unless otherwise agreed to in writing by Investor, in its Permitted Discretion) for a period of three years or more from the Effective Date in order to permit Investor a reasonable time in which to recoup its transaction costs in originating its investment, and that the following provisions, in addition to this **Section 2.1(e)** of the Unison HomeOwner Covenant Agreement, are expressly designed, and intended by Owner and Investor, to effectuate this purpose and intent: Unison HomeOwner Covenant Agreement **Sections 2.2, 2.5, 3.5, 6.2, 7.1(b), 7.3(d), 9.4(c), 10.2, 10.4(b)** and **10.4(c)**. Owner further acknowledges that evidence of intent by Owner to use the Unison HomeOwner Agreement other than in accordance with this purpose and intent shall raise a presumption of bad faith on the part of Owner which shall constitute a breach of the Unison HomeOwner Agreement if not rebutted by clear and convincing evidence.

**2.2 No Lawsuits, Claims, Foreclosures, Or Violations; Property Defects and Conditions.**

**(a)** To the best of Owner's knowledge, after due and diligent inquiry, there is no litigation or arbitration pending or threatened against Owner or the Property that might adversely affect the value of the Property or the ability of Owner to perform Owner's obligations under the Unison HomeOwner Agreement;

**(b)** To the best of Owner's knowledge, after due and diligent inquiry, there is no foreclosure, notice of default, notice of sale, condemnation, environmental, zoning, or land-use regulation proceeding; or any material lawsuit, tax claim, special assessment, or other dispute, present or threatened, which could affect the use or value of the Property. Owner shall notify Investor immediately of any such proceedings of which Owner becomes aware.

**(c)** To the best of Owner's knowledge, after due and diligent inquiry, there are no operations or activities upon, or present or proposed use or occupancy of the Property or portion thereof, that are not or will not be fully compliant with all state, federal and local laws, zoning ordinances, and regulations.

**(d)** There are no material defects or conditions on or affecting the Property or title to the Property undisclosed to Investor which are now known to or could reasonably be discovered by Owner, which if later disclosed or discovered, could affect the future use or value of the Property. Owner acknowledges that evidence of misrepresentation or nondisclosure by Owner in contravention of this **Section 2.2(d)** shall raise a presumption of bad faith on the part of Owner which shall constitute a breach of the Unison HomeOwner Agreement if not rebutted by clear and convincing evidence.

**2.3 No Advice. Owner understands that granting Investor the Option and entering into the Unison HomeOwner Agreement can have significant tax, financial and estate planning consequences. Owner acknowledges that Investor has urged Owner to discuss the Unison HomeOwner Agreement with family members, heirs, and with independent tax, legal and financial advisors to ensure an understanding of the risks and benefits of the Unison HomeOwner Agreement with respect to Owner's particular situation, and that of Owner's family and heirs, and Owner has had the opportunity to do so to Owner's full satisfaction. Owner has reviewed, and understands the risks and benefits of, the Unison HomeOwner Agreement.**



© 2017, Unison 

**In granting the Option and entering into the Unison HomeOwner Agreement, Owner is not relying on any information or representation by Investor, its agents, its affiliates, or any of their officers, employees or agents, regarding: (a) the value of the Property; (b) the advisability of Owner's entering into the Unison HomeOwner Agreement or any transaction contemplated thereunder; or (c) the tax implications and consequences of entering into the Unison HomeOwner Agreement or any transaction contemplated thereunder. Owner has made, and will make, Owner's own investigation and seek independent advice regarding such matters, as Investor has expressly urged.**

**2.4 Spouse Or Other Resident Not On Title**. Owner has identified and obtained the signatures of all **"Non-Owner Occupants"** who occupy the Property on the **Notice and Acknowledgment Regarding Spouses, Partners and Co-Occupants Who Are Not Signatories To The Unison HomeOwner Agreement** (**"Non-Owner Occupant Disclosure"**) in the form attached hereto as Exhibit B. Owner must make, and advise all Non-Owner Occupants to make, independent investigation regarding the legal and financial effect of the Unison HomeOwner Agreement upon the sale of the Property, the death of the last surviving Owner (**"Last Surviving Owner"**), the end of the Term, or following an **Event Of Default** hereunder. Investor makes no representations as to consequences of Owner's granting the Option or entering into the Unison HomeOwner Agreement on the rights of any Non-Owner Occupant. If any additional adult person not on record title commences to occupy the Property during the Term, Owner must promptly notify Investor and deliver Investor a complete and revised Non-Owner Occupant Disclosure.

**2.5 Documentation and Information Supplied by Owner; Financial Condition of Owner**. All financial and other documentation and other information Owner has provided to Investor in granting the Option, or in applying for or entering into the Unison HomeOwner Agreement is truthful, complete, not misleading, and fairly and accurately reflects the financial condition of Owner and the condition of the Property as of the date supplied, as of the date of Owner's execution of the Unison HomeOwner Agreement, and as of the Effective Date. There has been no material change in Owner's financial condition or the condition of the Property since Owner's application to Investor.

**2.6 Continuing Obligations.** Owner is making the representations and warranties herein to induce Investor to enter into the Unison HomeOwner Agreement. All representations and warranties given, and instruments delivered by Owner in connection with the Unison HomeOwner Agreement (including Owner's application for the Unison HomeOwner Agreement), are both true and correct at the time given, at the time of execution of the Unison HomeOwner Agreement by Owner and as of the Effective Date, and Owner must promptly notify Investor during the Term if any representation or warranty Owner has made under this **Article Two** or elsewhere ceases to be materially accurate or true. Investor's right to rely on the truth, accuracy and completeness of the representations, warranties and covenants set forth in this **Article Two** shall survive the Term.

**2.7 Conflict.** Owner's execution and delivery of the Unison HomeOwner Agreement and Transaction Documents, the incurrence of its obligations, the consummation of the transactions it contemplates, and Owner's compliance with its terms, will not conflict with, or result in a breach of, or constitute a default under, any note, mortgage, deed of trust, loan, agreement, lease, indenture, evidence of indebtedness, or other agreement or instrument to which Owner is a party or by which any portion of the Property may be bound.



© 2017, Unison

## ARTICLE THREE
## OPTION EXERCISE ON SALE OF PROPERTY

**3.1 In General.**

**(a)** Investor may, in its Permitted Discretion, exercise the Option as of any sale, exchange, or other transfer of the Property or any portion thereof by Owner, other than an **Exempted Owner Assignment**. The manner of Option exercise shall be as prescribed in **Section 3** of the Unison HomeOwner Option Agreement.

**(b)** At any time during the Term, Owner may solicit offers for the Property sale to a third party (**"Third Party Buyer"**) without the express approval of Investor, provided Owner complies with all terms and conditions of this **Article Three**. If a sale or transfer of the Property does not satisfy the terms and conditions of this **Article Three**, it shall not constitute a Permitted Sale (**"Permitted Sale"**), and Investor shall not be obligated to release Owner from any duty or liability under the Unison HomeOwner Agreement in connection with the sale or transfer. Any attempted sale or transfer of the Property or any portion thereof by Owner that does not comply with this **Article Three** is an Event Of Default by Owner and is deemed imminently to prejudice **Investor's Rights** hereunder.

**3.2 Requirements Of Permitted Sale.**

**(a)** Notice. Owner must notify Investor in writing of Owner's decision to market, sell or transfer the Property (**"Notice Of Intention To Sell"**), at least 45 days (or otherwise within a commercially reasonable time) prior to the closing of such sale or transfer. Owner must attach to such Notice Of Intention To Sell any and all documents executed by Owner in connection with the Property's marketing or sale (including but not limited to any and all inspection report(s), listing agreements, staging agreements, and preliminary escrow instructions).

**(b) Documentation; Appraisal; Inspections.**

**(i)** Owner must promptly provide to Investor copies of all the following as Owner receives them: **(A)** all offers to purchase the Property; and **(B)** all contracts and other documents related to the prospective sale (including but not limited to inspections, appraisals, escrow instructions, preliminary title reports and other transaction documents and instruments of whatever character relating to the proposed sale or transfer).

**(ii)** In the event that the Third Party Buyer does not obtain, at a minimum, a standard pest report and standard contractor's inspection report in connection with the Property, Owner must obtain such reports, at Owner's sole expense (or, alternatively, Investor may obtain such reports at Owner's expense), and deliver these to Investor no later than fourteen (14) days prior to the proposed closing of the sale. These reports shall be used by Investor to review the terms of the sale, and, along with other reports deemed necessary by Investor, in connection with Investor's determination of the **Deferred Maintenance Adjustment,** if any.

**(iii)** Investor may, in its Permitted Discretion, provide to Owner one or more proposed date(s) for **Appraisal** of the Property, to be performed at Owner's expense in accordance with and subject to the terms of **Section 8.5** below, to ascertain the market value and condition of the Property, including Investor's determination of the **Remodeling Adjustment** and/or Deferred Maintenance Adjustment, if any.

**(c) Escrow and Closing.**

**(i)** A Permitted Sale must be consummated through an appropriate real property **Escrow** using the services of an **Escrow Holder**. Owner and Investor shall do or cause to be done, any



© 2017, Unison 

and all acts and things as shall be reasonably necessary for Escrow to close the transactions contemplated in the Unison HomeOwner Agreement.

**(ii)** The closing of any Permitted Sale shall be scheduled so as to allow Investor: **(A)** to review relevant documents for the Remodeling Adjustment, if any, and Deferred Maintenance Adjustment, if any; and **(B)** to obtain Appraisal(s), in its Permitted Discretion.

**3.3 Option Settlement Or Exercise At Closing Of Permitted Sale**. As of the close of Escrow of a Permitted Sale, and provided Owner has complied with the terms of the Unison HomeOwner Agreement:

**(a)** Prior to the close of Escrow, Investor shall deliver to Owner or to Escrow Holder a calculation of the **Unison Purchase Price Balance** payable to Owner by Investor for its undivided percentage interest in and to the Property and a statement of any and all monetary amounts owed to Investor as unreimbursed **Protective Advances**, unpaid interest, fees and other charges associated with Protective Advances, or unpaid **Asset Administration Fees** hereunder ("**Unpaid Owner Obligations**"). Because Investor will have previously paid a portion of the **Unison Purchase Price** to Owner in the form of the Unison Investment Payment, the Unison Purchase Price shall be reduced by the Unison Investment Payment in calculating the Unison Purchase Price Balance.

**(b)** Upon close of, and through Escrow for the Permitted Sale, Investor shall be entitled to exercise its Option to purchase its undivided percentage interest in and to the Property, the value of which is calculated as the **Ending Agreed Value** of the Property (determined in accordance with **Section 10.3** below) multiplied by the Investor Percentage, in exchange for the Unison Purchase Price Balance minus any Unpaid Owner Obligations as set forth in **Section 3.3(a)** above; Owner however may elect to settle the Unison HomeOwner Agreement and terminate Investor's Option to purchase Investor's undivided percentage interest by tendering to Investor, through Escrow for the Permitted Sale, the amount calculated as follows: the Ending Agreed Value (determined in accordance with **Section 10.3** below), multiplied by the Investor Percentage, minus the Unison Purchase Price Balance (such amount to be termed the "**Investor Proceeds**"), together with any and all Unpaid Owner Obligations (the Investor Proceeds, if any, together with the Unpaid Owner Obligations, if any, to be termed the "**Investor Interest**."). Upon Escrow's delivery and Investor's acceptance of the Investor Interest, in and through Escrow for the closing of the Permitted Sale, Investor shall deliver to Escrow Holder such executed, notarized documents or other instruments as are required by Escrow Holder to effect a full release or reconveyance of the Option, the Unison HomeOwner Agreement, the Unison HomeOwner Security Instrument, and the other Transaction Documents, which documents of release shall be recorded by Escrow in the county where the Property is located.

**(c)** In the event Owner does not terminate Investor's Option to purchase and settle the Unison HomeOwner Agreement pursuant to **Section 3.3(b)** above, then Investor may exercise its Option and consummate the purchase of its undivided percentage interest in and to the Property through Escrow simultaneously with closing of a Permitted Sale, as follows: Owner shall deed Investor its percentage interest in and to the Property through Escrow for the Permitted Sale; Investor and Owner, as co-owners of the Property, shall deed the Property to Third Party Buyer through Escrow for the Permitted Sale; and Escrow shall close the Permitted Sale, transfer title to Third Party Buyer, and liquidate Investor and Owner's respective percentage interests in and to the Property.

**(d)** **Priority of Investor Interest In Connection With Senior Liens.** On close of Escrow of a Permitted Sale, prior to the disbursement of any sums to Investor, Escrow Holder shall first disburse from proceeds in Escrow, all amounts necessary to satisfy in full any outstanding loans secured by "**Permitted Senior Liens**" or "**Approved Subsequent Liens**" on the Property.

**(e)** **Closing Costs and Sales Commissions.** Owner shall pay all costs in connection with the Permitted Sale of the Property, or in connection with Investor's Option exercise that is followed by a sale of the Property in order to liquidate Investor's percentage interest, including, without limitation, recording



© 2017, Unison 

fees and costs, reconveyance fees, Escrow fees, title insurance fees, federal, state, local and documentary transfer taxes ("**Closing Costs**") and all sales commissions ("**Sales Commissions**") owed in connection with the Sale or Investor's Option exercise, not including any closing costs owed by Third Party Buyer. Closing Costs and Sales Commissions shall be paid from the amounts that are owed to Owner, and not from any amounts that are owed to Investor.

**(f) <u>Owner's Obligation For Transaction Costs.</u> In the event that there are amounts in Escrow equal to the Investor Interest, together with sufficient amounts to release and reconvey all Senior Liens or Approved Subsequent Liens on the Property (including those Senior Loans secured by Senior Liens for which the lien holder has agreed to accept less than the outstanding amounts due in satisfaction of Owner's obligation), but there are insufficient amounts to additionally satisfy those Closing Costs, Sales Commissions, taxes, fees, other loans or obligations of Owner, or any other out of pocket expenses required to be paid to third parties in order to deliver clear title to the Property to the Third Party Buyer, Owner shall be solely responsible for paying such other obligations, costs and expenses from Owner's other assets or separate funds.**

**(g)** If the date scheduled for close of Escrow of a Permitted Sale falls after the Expiration Date of the Unison HomeOwner Agreement, the Term and the Expiration Date shall automatically extend for a reasonable period of time necessary to permit settlement of the Investor Interest or, alternatively, Investor's purchase of its undivided percentage interest and subsequent sale of the Property by Investor and Owner as co-owners to a Third Party Buyer.

**<u>3.4 Additional Restrictions On Permitted Sales.</u>** In addition to the requirements set forth in **Sections 3.1 and 3.2** above, no sale or transfer of the Property shall constitute a Permitted Sale, nor shall Investor consent to any proposed sale of the Property, which does not meet the following restrictions and requirements:

**(a) <u>Arm's Length</u>.** Any sale or transfer of the Property must be at arm's length, made on commercially reasonable terms and entered into in good faith.

**(b) <u>Responsibility For Liens</u>.** In connection with any sale or transfer, Owner shall be solely responsible for conveying title free and clear of any liens, and for satisfying any and all loans and other obligations secured by liens on the Property.

**(c) <u>Sufficient Cash To Owner</u>.** Except as consented to by Investor in writing in its Permitted Discretion, no proposed sale of the Property shall be a Permitted Sale if the consideration for the sale price is not provided by the Third Party Buyer in good and lawful funds at close of Escrow, or if the sale or transfer employs financing by Owner, non-cash consideration, or wraparound financing by Third Party Buyer such that full cash consideration in the amount of the sale price is not conveyed to the Owner.

**(d) <u>No Sales "Subject To" Or Defeasible Sales</u>.** Except as consented to by Investor in writing in its Permitted Discretion, no sale or other transfer which purports to convey title to the Property by Owner to a Third Party Buyer "subject to" the lien created by the Unison HomeOwner Agreement, or "subject to" any other existing lien or payment obligation on the Property, nor any sale or transfer which purports to be defeasible by Owner and Third Party Buyer after close of Escrow upon the occurrence of some future contractually-specified event, shall be a Permitted Sale.

**<u>3.5 Sale Price At Variance With Appraised Or Estimated Market Value; Special Provisions Relating to Sale By Owner, Intrafamily Transactions and Sales to Entities.</u>**

**(a)** In the case of any proposed sale or transfer by Owner wherein Investor determines in its Permitted Discretion that the proposed sale price differs materially from the then-estimated market value of the Property or an **Appraised Value**, or in any **Sale By Owner Transaction** or **Intrafamily Transaction** proposed by Owner, Investor shall have the right, but not the obligation, to take any or all of



© 2017, Unison 

the following actions, in its Permitted Discretion: **(i)** to make an offer in writing to purchase the Property from Owner for the same price or higher, and upon the same terms and conditions, as the proposed offer from the Third Party Buyer and, if such offer is rejected by Owner, to obtain a written affidavit under oath from Owner stating the reasons for the rejection; **(ii)** to require Owner, Third Party Buyer and, where applicable, their respective real estate brokers of record conducting the proposed sale transaction, to execute an affidavit under oath attesting that **(A)** the relationship between Owner and Third Party Buyer and the proposed transaction is at arm's length; and **(B)** that the proposed sale price of the Property has been determined either by reasonable exposure to the real estate market in the area where it is located or by other valuation methods acceptable to Investor in its Permitted Discretion, which affidavit shall be accompanied, at Investor's request, with supporting written documentation; **(iii)** to require that one or more Appraisals of the Property be conducted in order for valuation of the Property to be established, pursuant to **Sections 8.5 and 8.6** of this Unison HomeOwner Covenant Agreement;

**(b)** In any Sale By Owner or Intrafamily Transaction or a sale to any Third Party Buyer that is not a Natural Person (or Natural Persons taking title to the Property in the form of a Revocable Trust), or otherwise under circumstances of Owner's fraud, misrepresentation or bad faith hereunder, Investor shall have the right, in its Permitted Discretion to require that an Appraised Value, rather than the **Effective Sale Price**, be used to determine the Ending Agreed Value of the Property.

**3.6 No Investor Liability.** Investor shall not be liable to Owner for, and Owner hereby holds Investor harmless from, any and all liability or loss in connection with any delay or postponement of closing of a sale or transfer hereunder **(a)** resulting from any reasonable inquiry or dispute by Investor pertaining to the estimated market value or Appraised Value of the Property, the Remodeling Adjustment, the Deferred Maintenance Adjustment, or to the validity of any proposed sale or transfer as a Permitted Sale; **(b)** where Owner has failed to provide Investor with timely, accurate and complete documentation or materials as required hereunder or otherwise requested by Investor in connection with such sale or transfer; or **(c)** resulting from any action undertaken by Investor under the terms of **Section 3.5** above.

## ARTICLE FOUR
## OPTION EXERCISE AT TERM

**4.1 In General.** In its Permitted Discretion, Investor shall have the right to exercise the Option as of the Expiration Date of the Unison HomeOwner Agreement, as specified in **Section 2** of the Unison HomeOwner Option Agreement, subject to the terms and conditions of this **Article Four**.

**4.2 Opening Escrow At Term; Inspections; Appraisals.** Investor's exercise of the Option at Term, and its purchase of an undivided percentage interest in and to the Property, shall be conducted through Escrow. At least 90 days, but not more than 150 days, prior to the Expiration Date of the Unison HomeOwner Option Agreement, Investor shall open Escrow with an Escrow Holder selected by Investor. Investor and Owner shall, at a mutually convenient date and time, conduct both a home inspection and Appraisal, at Owner's expense, for the purpose of ascertaining the Ending Agreed Value, the Deferred Maintenance Adjustment, if any, and the Remodeling Adjustment, if any. Investor reserves the right to order more than one home inspection or Appraisal, in its Permitted Discretion.

**4.3 Escrow: Deliveries, Timing; Closing.** As of the close of Escrow, and provided Owner has complied with the terms of the Unison HomeOwner Agreement:

**(a)** Prior to the close of Escrow, Investor shall deliver to Owner or to Escrow Holder a calculation of the Unison Purchase Price Balance payable to Owner by Investor for its undivided percentage interest in and to the Property and a statement of Unpaid Owner Obligations, if any. Because Investor will have previously paid a portion of the Unison Purchase Price to Owner in the form of the Unison Investment Payment, the Unison Purchase Price shall be reduced by the Unison Investment Payment in calculating the Unison Purchase Price Balance.



© 2017, Unison 

**(b)** Upon close of, and through Escrow for the Option exercise, Investor shall be entitled to exercise its Option to purchase its undivided percentage interest in and to the Property, the value of which is calculated as the Ending Agreed Value of the Property (determined in accordance with **Section 10.3** below) multiplied by the Investor Percentage, in exchange for the Unison Purchase Price Balance minus any Unpaid Owner Obligations, as set forth in **Section 4.3(a)** above. Owner however may elect to settle the Unison HomeOwner Agreement and terminate Investor's Option to purchase its undivided percentage interest by tendering the amount calculated as the Investor Interest to Investor through Escrow. Upon Escrow's delivery and Investor's acceptance of the Investor Interest, Investor shall deliver to Escrow Holder such executed, notarized documents or other instruments as are required by Escrow Holder to effect a full release or reconveyance of the Option, the Unison HomeOwner Agreement, the Unison HomeOwner Security Instrument, and the other Transaction Documents, which documents of release shall be recorded by Escrow in the county where the Property is located.

**(c)** In the event Owner does not terminate Investor's Option to purchase and tender Investor the Investor Interest pursuant to **Section 4.3(b)** above, then Investor may exercise its Option and consummate the purchase of its undivided percentage interest in and to the Property, and Owner shall promptly deed Investor such interest in and to the Property, whereupon Investor and Owner, as co-owners of the Property, shall promptly market and sell the Property in order to liquidate their respective percentage interests therein and thereto; and the Term shall automatically extend for such reasonable time as will permit Investor's purchase, and the closing of such subsequent sale.

**(d)** **Closing Costs and Sales Commissions.** Owner shall pay all Closing Costs and Sales Commissions owed in connection with the sale of the Property following Investor's Option exercise, not including any closing costs owed by Third Party Buyer. Closing Costs and Sales Commissions shall be paid from the amounts that are owed to Owner, and not from any amounts that are owed to Investor.

**4.4 Owner's Right To Sell Property In Permitted Sale Prior To Option Exercise At Term.** Owner may sell or transfer the Property in a Permitted Sale prior to close of Escrow under this **Article Four**, provided any such sale or transfer complies with the requirements of **Article Three** above, and such sale or transfer closes no later than 11:59 p.m. Pacific Time on the date at least five (5) Business Days prior to the Expiration Date.

## ARTICLE FIVE
## OPTION EXERCISE AS OF DEATH OF OWNER

**5.1 In General.** Investor has the right in its Permitted Discretion to exercise the Option as of the death of the Last Surviving Owner, according to the procedures set forth in this **Article Five**.

**5.2 Opening Escrow Inspections; Appraisals**

**(a)** Each Owner must at all times during the Term have designated at least one living Natural Person out of Owner's administrators, devisees, executors, heirs, legatees or representatives (collectively and individually, "**Owner's Estate**") which Person shall be charged with notifying Investor immediately in writing of the death of such Owner.

**(b)** Upon or following Investor's receipt of notice of the death of the Last Surviving Owner, in the event Investor elects to exercise the Option, Investor shall open Escrow with an Escrow Holder selected by Investor. The date selected for close of Escrow may be no earlier than 180 days following the date of death of the Last Surviving Owner; unless agreed to by Owner's Estate in writing; provided, further, that if Investor deems in its Permitted Discretion that Owner's Estate has commenced good faith efforts to sell the Property in a Permitted Sale within the 180 day period following the date of death, Investor may in its Permitted Discretion extend the date selected for close of Escrow for a maximum of



© 2017, Unison

two consecutive 90-day periods following the 180th day from death of the Last Surviving Owner to permit Owner's Estate to accomplish such Permitted Sale.

**(c)** Investor and Owner's Estate shall, at a mutually convenient date and time, conduct both a home inspection and Appraisal of the Property, at Owner's Estate's expense, for the purpose of ascertaining the Ending Agreed Value, the Deferred Maintenance Adjustment, if any, and the Remodeling Adjustment, if any. Investor reserves the right to order more than one home inspection or Appraisal, in its Permitted Discretion.

**5.3 Escrow; Deliveries; Timing; Closing.** As of the close of Escrow, and provided Owner has complied with the terms of the Unison HomeOwner Agreement:

**(a)** Prior to the close of Escrow, Investor shall deliver to Owner's Estate or to Escrow Holder a calculation of the Unison Purchase Price Balance payable to Owner by Investor for its undivided percentage interest in and to the Property and a statement of Unpaid Owner Obligations, if any. Because Investor will have previously paid a portion of the Unison Purchase Price to Owner in the form of the Unison Investment Payment, the Unison Purchase Price shall be reduced by the Unison Investment Payment in calculating the Unison Purchase Price Balance.

**(b)** Upon close of, and through Escrow for the Option exercise, Investor shall be entitled to exercise its Option to purchase its undivided percentage interest in and to the Property, the value of which is calculated as the Ending Agreed Value of the Property (determined in accordance with **Section 10.3** below) multiplied by the Investor Percentage, in exchange for the Unison Purchase Price Balance minus any Unpaid Owner Obligations, as set forth in **Section 5.3(a)** above. Owner's Estate however may elect to settle the Unison HomeOwner Agreement and terminate Investor's Option to purchase its undivided percentage interest by tendering the amount calculated as the Investor Interest to Investor through Escrow. Upon Escrow's delivery and Investor's acceptance of the Investor Interest, Investor shall deliver to Escrow Holder such executed, notarized documents or other instruments as are required by Escrow Holder to effect a full release or reconveyance of the Option, the Unison HomeOwner Agreement, the Unison HomeOwner Security Instrument, and the other Transaction Documents, which documents of release shall be recorded by Escrow in the county where the Property is located.

**(c)** In the event Owner's Estate does not terminate Investor's Option to purchase and tender Investor the Investor Interest pursuant to **Section 5.3(b)** above, then Investor may exercise its Option and consummate the purchase of its undivided percentage interest in and to the Property, and Owner's Estate shall promptly deed Investor such interest in and to the Property, whereupon Investor and Owner's Estate, as co-owners of the Property, shall promptly market and sell the Property in order to liquidate their respective percentage interests therein and thereto; and the Term shall automatically extend for such reasonable time as will permit Investor's purchase, and the closing of such subsequent sale.

**(d) Closing Costs and Sales Commissions**. Owner's Estate shall pay all Closing Costs and Sales Commissions owed in connection with the sale of the Property following Investor's Option exercise, not including any closing costs owed by Third Party Buyer. Closing Costs and Sales Commissions shall be paid from the amounts that are owed to Owner's Estate, and not from any amounts that are owed to Investor.

**5.4** Reserved.

**5.5 Administration of Estate; Investor Rights.** Owner's Estate shall administer and protect the Property so as to preserve Investor's Rights to the extent permitted by law following the death of Owner; and Investor's rights in and to the Property under the Unison HomeOwner Agreement shall have priority over expenditures by Owner's Estate which are not reasonably necessary to administer and protect the Property.



© 2017, Unison

**<u>5.6 Owner's Estate's Right to Sell the Property Prior to Close of Escrow</u>.** Owner's Estate may sell the Property in a Permitted Sale within the period prescribed in **Section 5.2(b)**.

<u>5.7</u> All time periods specified in this **Article Five** shall run from the actual date of the death of the Last Surviving Owner. Failure of Owner's Estate or any other Person to notify Investor of the death of the Last Surviving Owner shall not toll or suspend the running of any time period specified herein.

## ARTICLE SIX
## NON-EXERCISE TERMINATIONS OF OPTION

<u>6.1</u> Subject to Investor's Rights hereunder and to those representations and warranties, and duties and covenants of Owner which by their nature survive the Expiration Date; and to the Investor remedies set forth in **Article Seven** below, the Option shall terminate if:

**(a)** Investor in its Permitted Discretion elects not to exercise the Option, and voluntarily allows it to lapse as of any Exercise Event, the Term, or the Expiration Date;

**(b)** Investor in its Permitted Discretion voluntarily terminates the Unison HomeOwner Agreement in writing;

**(c)** Investor acquires title to 100% of the Property;

**(d)** the Property is destroyed and the insurance proceeds are paid to Investor in the full amount specified in **Section 8.16** of this Unison HomeOwner Covenant Agreement; or

**(e)** the Property is condemned, in whole and not in part, and the condemnation proceeds are paid to Investor in the full amount specified in **Section 8.17** of this Unison HomeOwner Covenant Agreement.

**<u>6.2 Special Termination By Owner</u>.** Owner acknowledges and agrees that under the terms of the Unison HomeOwner Agreement, Investor and Owner have covenanted and agreed that the Option may not be exercised until the occurrence of the earlier of an Exercise Event as defined in the Unison HomeOwner Option Agreement, or the Expiration of the Term. Notwithstanding the foregoing, Investor acknowledges and agrees that commencing on the third (3rd) anniversary of the Effective Date, Owner shall have the right to request a special termination of the Option in advance of an Exercise Event or Expiration of Term (**"Special Termination"**) by payment to Investor of the greater of: the Unison Investment Payment plus any Unpaid Owner Obligations; or the Investor Interest calculated at the time of Special Termination (**"Special Termination Price"**). The Investor Proceeds in any Special Termination shall be calculated using an Ending Agreed Value equal to the greater of the Appraised Value of the Property at the time of Special Termination, or the **Solicited Sale Value.** Investor's consent to a Special Termination shall not be unreasonably withheld.

**(a) <u>Notice; Proof Of Funds</u>.** At least 45 days prior to the proposed Special Termination, Owner shall deliver notice to Investor that Owner is offering a Special Termination and open Escrow with an Escrow Holder selected by Investor. With such notice, Owner shall provide to Investor true and correct copies of: **(i)** all offers for the purchase of the Property, or any expressions of interest therein; and **(ii)** all listings for the sale of the Property, if any. Investor shall have the right in its Permitted Discretion to require proof from Owner of adequate funds to pay the Special Termination Price.

**(b)** Investor and Owner shall, at a mutually convenient date and time, conduct both a home inspection and Appraisal of the Property for the purpose of ascertaining the Ending Agreed Value, the Deferred Maintenance Adjustment, if any, and the Remodeling Adjustment, if any. Investor reserves the right to order more than one home inspection or Appraisal, in its Permitted Discretion.



© 2017, Unison 

(c) **Investor's Deliveries.** Prior to close of Escrow, provided Owner has complied with the terms of the Unison HomeOwner Agreement, Investor shall deliver to Escrow:

> **(i)** such executed, notarized documents or other instruments as are required by Escrow Holder to effect a full release and/or reconveyance of the Unison HomeOwner Recorded Memorandum, Unison HomeOwner Security Instrument and the Unison HomeOwner Agreement; and
>
> **(ii)** a statement calculating the Special Termination Price payable to Investor by Owner in consideration for such full release and reconveyance.

**(d) Owner's Deliveries.** On or prior to the close of Escrow, Owner shall deliver the Special Termination Price into Escrow as demanded by Investor together with any and all Closing Costs, recording expenses or other expenses in connection with Escrow or such Special Termination.

**(e) Closing.** At close of and through Escrow, Investor shall be paid the Special Termination Price. Upon, and only upon, Investor's accepting the Special Termination Price, Investor shall instruct Escrow to release and reconvey the Unison HomeOwner Recorded Memorandum, the Unison HomeOwner Security Instrument, and to record any and all other documents as Escrow reasonably requires to reflect the release and/or reconveyance of the Unison HomeOwner Agreement in the county where the Property is located.

**(f)** Investor shall retain the right, in Investor's Permitted Discretion, to reject any purported tender by Owner of the Special Termination Price where **(i)** Investor has not had adequate opportunity to review inspections, appraisals, or other documents, or **(ii)** Investor deems Owner's tender insufficient, inadequate, or untimely.

**(g) Non-Disclosure Or Sale At Or After Special Termination.** If Owner fails to disclose an offer to purchase the Property made within ninety (90) days prior to, or Investor becomes aware of a Solicited Sale Value within ninety (90) days following a Special Termination, Owner shall remain liable to Investor for the amount, if any, by which the Investor Interest computed according to the Solicited Sale Value exceeds the Special Termination Price actually paid to Investor.

## ARTICLE SEVEN
## DEFAULT

**7.1 Events Of Default.** The occurrence of any of the following shall constitute an event of default by Owner (**"Event Of Default"**) hereunder:

**(a) Failure To Perform.** Owner **(i)** breaches or fails to perform any obligation or covenant under the Unison HomeOwner Agreement, including but not limited to **(A)** failure to honor Investor's Rights; or **(B)** failure to cooperate with, or interference with, Investor's Option exercise and purchase of an undivided percentage interest in and to the Property; or **(ii)** Owner otherwise takes any action to impede the exercise of the Option, or to reject Investor's rights under the Unison HomeOwner Agreement or any of the Transaction Documents as unenforceable.

**(b) Misrepresentation.** Owner makes (or has made) any oral or written representation or warranty to Investor that is false or misleading as of the time given, including, without limitation, any breach of the representations and warranties given by Owner in **Section 2.2** above; any misrepresentation or suppression of material fact in connection with the amount or kind of consideration given to Owner in any sale or transfer of the Property, in connection with the condition or value of the Property, or in connection with any financial and other documentation and other information Owner has provided to Investor in applying for or entering into the Unison HomeOwner Agreement; or Owner fails to correct a



© 2017, Unison 

material representation that has become untrue and which may reasonably be expected to affect the Property, its value, or Investor's Rights.

**(c) <u>Other Events Of Default</u>.** Any and all of the following: **(i)** any loans that are secured by liens on the Property, whether recorded or unrecorded, become delinquent (whether or not such loans or liens have been approved or subordinated to by Investor); **(ii)** any taxes on the Property become delinquent; **(iii)** Owner transfers or attempts to transfer the Property or any interest therein, except in accordance with the Unison HomeOwner Agreement; **(iv)** Owner ceases to occupy the Property as Owner's Principal Residence, or leases or rents the Property, or any portion of the Property, without Investor's express written consent in its Permitted Discretion; **(v)** the Property is used for any commercial purpose (other than a "home office" within the meaning of applicable U.S. tax regulations) or as anything other than a residential dwelling; **(vi)** Owner fails to maintain, preserve or repair the Property to the standards and in the manner specified in the Unison HomeOwner Agreement; **(vii)** any lien in violation of the terms of the Unison HomeOwner Agreement attaches to the Property; **(viii)** the total amount of indebtedness secured by the Property exceeds the **Maximum Authorized Debt**; **(ix)** Owner fails to maintain insurance on the Property as prescribed in the Unison HomeOwner Agreement; **(x)** Owner assigns, or attempts to assign or transfer the Option in violation of the Unison HomeOwner Agreement; **(xi)** any event of insolvency of any Owner, including but not limited to the commencement of any bankruptcy proceeding by or against any Owner or the appointment of a conservator of the affairs of any Owner or a receiver for the Property; **(xii)** following the death of the Last Surviving Owner, Owner's Estate does not comply with **Article Five** or any other provision of the Unison HomeOwner Agreement; or **(xiii)** any other action or event occurs which may reasonably be expected to have a material adverse effect on the Property, the value of the Property, or Investor's Rights.

**<u>7.2 Acceleration And Power Of Sale</u>.**

**(a) The occurrence of one or more of the Events Of Default in Section 7.1 above, if material and uncured, shall be deemed a failure of Owner's performance of Owner's obligations as secured by the Unison HomeOwner Security Instrument, and Investor shall be entitled to demand cure of such Event of Default, and both to exercise its Option and demand performance by Owner (or Owner's Estate) of any and all of its obligations under the Unison HomeOwner Agreement. The failure of Owner (or Owner's Estate) to cure such Event of Default and/or to render full performance of Owner's obligations under the Unison HomeOwner Agreement shall permit Investor to invoke any and all remedies permitted by the Unison HomeOwner Agreement, according to applicable law, including those remedies provided in Section 7 of the Unison HomeOwner Security Instrument. The procedures for Investor's exercise of its remedies under the Unison HomeOwner Security Instrument shall be as set forth in the Unison HomeOwner Security Instrument and as specified by applicable law.**

**(b) <u>Liquidated Investor Bid Amount.</u>** Owner and Investor agree and acknowledge that, because the damages that would arise from a failure of Owner's performance secured by the Unison HomeOwner Security Instrument under this **Article Seven** may be uncertain, depend on many factors, and be extremely difficult to ascertain, the amount of any investor bid ("**Investor Bid Amount**") to be made in connection with a foreclosure sale of the Property by Investor or otherwise, shall be a liquidated amount equal to the Investor Interest calculated using an Ending Agreed Value for the Property as determined under **Section 10.4(f)** below.

**(c) <u>Right Of Cure And Reinstatement</u>.** Owner's rights to discontinue enforcement of the Unison HomeOwner Security Instrument by cure and reinstatement shall be as set forth in the Unison HomeOwner Security Instrument and as specified by applicable law.

**7.3 Additional Remedies For Certain Events Of Default.**

(a) **Termination.** Investor shall be entitled, but is not obligated to, demand immediate **Termination** of the Unison HomeOwner Agreement, the return of the Unison Investment Payment and any and all other payments tendered to Owner hereunder, and the immediate payment of the amount, if any, by which the Investor Interest calculated pursuant to **Section 10** below exceeds the Unison Investment Payment, together with any and all **Attorney's Fees** and costs incurred by Investor in connection with such termination, upon the discovery, occurrence, or during the continuation of any of the following: **(i)** fraud, bad faith, or material misrepresentation or nondisclosure by Owner; **(ii)** breach of the representations and warranties given in **Section 2.1(e)** or **Section 2.2(d)** above; or **(iii)** a transfer or sale, or attempted transfer or sale, of the Property by Owner in violation of the terms of the Unison HomeOwner Agreement.

(b) **Damages For Breach**. Owner shall be responsible to pay Investor any damages incurred by Investor arising or relating to Owner's Events Of Default hereunder.

(c) **Specific Performance And Injunctive Relief**. Owner and Investor agree that if Investor is not allowed to exercise its rights under the Unison HomeOwner Agreement, or if Owner fails to comply with its obligations thereunder, the damages to Investor may be irreparable and extremely difficult to estimate, making money damages or any remedy at law inadequate. Thus, in addition to any other rights and remedies available to it in law, equity or otherwise, Investor shall be entitled to specific performance of the covenants, agreements and rights contained in the Unison HomeOwner Agreement. Owner and Investor further agree and acknowledge that a violation or threatened violation of the Unison HomeOwner Agreement by Owner is likely to cause irreparable injury to the Investor and that, in addition to any other remedies that may be available, in law, in equity or otherwise, the Investor shall thereafter be entitled to obtain immediate and other injunctive relief against the threatened breach of the Unison HomeOwner Agreement or the continuation of any such breach by Owner, without the posting of a bond or the necessity of proving actual damages.

(d) **Reduced Unison Purchase Price Balance.** Owner and Investor agree that in the event of **(i)** fraud, bad faith, or material misrepresentation or nondisclosure by Owner; **(ii)** any transfer or sale, or attempted transfer or sale, of the Property by Owner in violation of the terms of the Unison HomeOwner Agreement, or **(iii)** any other prolonged, material and uncured default by Owner under the terms of the Unison HomeOwner Agreement, the Investor Interest may, in Investor's Permitted Discretion, be calculated by applying a Unison Purchase Price Balance which has been reduced by an amount equal to ten percent (10%) of the Unison Investment Payment.

(e) **Investor Right To Make Protective Advances.** Investor shall have the right to make **Protective Advances** as provided in **Section 8.11**, in connection with any Event Of Default, whether or not Investor is also pursuing any other remedies under this **Article Seven**.

(f) **Investor Rights To Enter Property.** Investor shall have the right to enter the Property in connection with or following any Event Of Default hereunder to the extent reasonable or necessary in Investor's Permitted Discretion **(i)** to conduct inspection(s) and Appraisal(s) of the Property at Owner's or Owner's Estate's expense, for the purpose of ascertaining the Ending Agreed Value, the Deferred Maintenance Adjustment, if any, and Remodeling Adjustment, if any; **(ii)** to prevent waste of the Property by Owner or Owner's Estate; and **(iii)** for any other purpose reasonable and necessary to prevent imminent or continuing harm to or diminution in value of the Property, in Investor's Permitted Discretion.

**7.4 Option Exercise And Orderly Sale As Additional Remedy For Event Of Default.** Investor and Owner agree that, upon an Event Of Default by Owner, in addition to the remedies provided in Paragraph 7 of the Unison HomeOwner Security Instrument and otherwise under this **Article Seven**, Investor and Owner, or Owner's Estate, may mutually elect a special remedy of Option exercise and Orderly Sale (**"Orderly Sale"**), as follows:



© 2017, Unison 

(a) **Offer and Acceptance.**

(i) Upon any Event Of Default by Owner (and provided that Owner has first reasonably exhausted any loss mitigation remedies offered to Owner by the holder of a Senior Lien), Investor may, but is not obligated to, in its Permitted Discretion, offer Owner the remedy of Option exercise and Orderly Sale. Investor shall tender such offer to Owner by opening an Escrow with an Escrow Holder selected by Investor, and promptly offering in writing to tender the Unison Purchase Price Balance into Escrow, in proposed exchange for Owner's granting and conveying to Investor through Escrow Investor's undivided fractional interest in and to the Property, together with a right of Investor to exclusively and unilaterally market and sell the Property in an orderly market sale, which offer shall advise Owner that Owner may have alternative means to cure an Event of Default related to delinquencies on a **Senior Loan** by application to the holder of the **Senior Lien**.

(ii) Within 10 days of Investor's delivery of such offer, Owner may, but is not obligated to, accept Investor's offer of Option exercise and Orderly Sale. Upon written notice of acceptance of such offer, Investor shall deliver the Unison Purchase Price Balance into escrow. Following such delivery, Owner shall deliver into Escrow: **(A)** a grant deed, executed by Owner and notarized, granting and delivering to Investor good and marketable fee simple title to an undivided fractional interest in the Property equivalent to the Investor Percentage, which deed Escrow Holder shall promptly cause to be recorded in the county where the Property is located; and **(B)** a notarized **Irrevocable Limited Power of Attorney** substantially in the form of Exhibit A hereto executed by Owner authorizing and empowering Investor (although only a co-owner of the Property) to exclusively market, advertise, sell and transfer title to one hundred percent (100%) of the Property, including Owner's interest therein, upon Owner's delivery of the deed; and **(C)** instructions to Escrow concerning disbursement of the Unison Purchase Price Balance to remedy Events Of Default in accordance with **Section 7.4(b)** below, and in form and content acceptable to Investor .

(b) **Disbursements to Cure Events Of Default.** Promptly upon recordation of the deed and delivery of the Irrevocable Limited Power of Attorney, Investor will instruct Escrow Holder to disburse from the Unison Purchase Price Balance in Escrow as Protective Advances those amounts necessary to cure and remedy any and all Events Of Default, including delinquent payments, accrued interest, late fees, reinstatement fees and other penalties, together with any and all amounts which Investor deems necessary, in its Permitted Discretion, to repair, protect and maintain the Property. In the event amounts in Escrow are insufficient to cure and remedy any and all such Events Of Default, Investor may make additional Protective Advances; or Owner may advance amounts from Owner's separate assets or funds. Funds remaining in Escrow following such disbursements shall thereafter be retained by Escrow pending closing of the Orderly Sale.

(c) **Marketing and Sale.**

(i) Promptly following the cure of Owner's Event(s) Of Default, Investor may commence to market and sell the Property in an Orderly Sale. Owner will cooperate with Investor in conducting the Orderly Sale, provided that Investor, although only a co-owner of the Property, shall have the sole and exclusive right in its Permitted Discretion to market, advertise, list, determine the asking price of, and to solicit, accept, reject or negotiate any offers of sale of the Property, without the consent of Owner.

(ii) Investor will promptly provide copies of all written offers for sale of the Property to Owner, together with all contracts and other documents related to the prospective sale (including but not limited to listing and commission agreements, inspections, appraisals, escrow instructions, preliminary title reports and other documents and instruments of whatever character).



© 2017, Unison 

**(iii)** Owner shall obtain a standard pest report and standard contractor's inspection report in connection with the Property, at Owner's sole expense, (or, alternatively, Investor may obtain such reports at Owner's expense), and deliver these reports to Investor no later than twenty-one (21) days prior to the proposed closing of the sale. These reports shall be used by Investor to review the terms of the sale, and, along with other reports deemed necessary by Investor, for Investor's determination of the Deferred Maintenance Adjustment, if any, or Remodeling Adjustment, if any.

**(iv)** Investor may, in its Permitted Discretion, provide to Owner one or more proposed date(s) for an Appraisal of the Property, to be performed at Owner's expense in accordance with and subject to the terms of **Section 8.5** below to ascertain the market value and condition of the Property, including Investor's determination of the Remodeling Adjustment, if any, or Deferred Maintenance Adjustment, if any.

**(d)** **Occupancy, Use and Entry During Orderly Sale.** Owner shall have sole and exclusive use of occupancy of the Property during an Orderly Sale unless otherwise mutually agreed in writing by the parties, subject to any and all reasonable rights of Investor and Investor's agents, affiliates or other representatives to enter the Property in order for Investor to carry out its exclusive right to market and sell the property, including, without limitation, rights of entry as reasonable, necessary or required to clean, repair, paint, stage, photograph, inspect, hold publicly open, and show the Property to prospective buyers. Investor shall have the right, as co-owner of the Property, to encumber the Property by obtaining loans secured by liens on the Property, in order to raise those funds reasonably required to improve, repair and prepare the Property for sale at a competitive price in its market.

**(e)** **Closing.** Closing of the Orderly Sale will be scheduled so as to: **(i)** allow Owner to exercise the Owner **Right Of First Refusal;** and **(ii)** permit Investor to calculate the Remodeling Adjustment, if any, and Deferred Maintenance Adjustment, if any. Closing of the Orderly Sale shall be conducted identically to the closing of a **Third Party Sale** as set forth in **Sections 3.3(c), (d), (e),** and **(f)** above.

**(f)** **Owner Right Of First Refusal On Orderly Sale.** Owner and Owner's Estate shall have a limited Right Of First Refusal to purchase the Property on economic terms identical to those Investor has indicated it is willing to accept for the Orderly Sale of the Property, as follows:

**(i)** At such time as Investor receives a written bona fide offer for an Orderly Sale that Investor is willing to accept, Investor must refrain from accepting such offer and Owner will have until the close of business on the 3rd Business Day following Owner's actual receipt of the offer to execute and deliver a binding purchase contract with Investor to purchase the Property on economic terms (including terms with respect to financing) and within all specified time periods Investor has indicated it is willing to accept.

**(ii)** If the price of a bona fide written offer previously delivered to Investor is materially reduced after delivery to Investor, Investor shall promptly inform Owner in writing of such reduced price and Owner shall have until the close of the 3rd Business Day following Owner's actual receipt of such notice to execute and deliver a binding purchase contract with Investor to purchase the Property on economic terms, including the reduced price identical to the revised terms Investor has indicated it is willing to accept.

**(iii)** Owner's (or Owner's Estate's) failure to respond to Investor within the time set forth in this **Section 7.4(f)** shall constitute Owner's (or Owner's Estate's) waiver of the Owner Right Of First Refusal.

**(iv)** The closing of the sale to Owner or Owner's Estate shall occur not later than the date specified for the closing of the proposed Orderly Sale.



© 2017, Unison

**(v)** Owner or Owner's Estate shall pay any and all Closing Costs and Sales Commissions incurred in connection with the sale to Owner or Owner's Estate and the proposed Orderly Sale.

**(vi)** If there are any outstanding loans secured by liens on the Property, Owner or Owner's Estate may choose to accept the Property subject to such liens rather than satisfying the loans and removing the liens through Escrow.

**(g)** The right to elect an Orderly Sale upon offer therefor by Investor shall extend to Owner's Estate following an Event Of Default or the death of Last Surviving Owner.

**7.5 Repayment In Bankruptcy**. In the event Investor is required to and does remit or disgorge one or more dollars paid by Owner or Owner's Estate pursuant hereto as a preference claim in a bankruptcy proceeding involving Owner or Owner's Estate, then Investor shall be entitled to assert a claim against Owner or Owner's Estate for each such dollar remitted (and permitted costs herein) under the terms and conditions of the Unison HomeOwner Agreement, and such claim of Investor shall begin to accrue on the date such dollar is actually remitted and shall automatically survive the Term.

**7.6 Remedies Concurrent And Not Exclusive.** The remedies set forth in this **Article Seven** shall be concurrent, cumulative and not exclusive to the extent permitted by law. Every right, power and remedy granted to Investor in the Unison HomeOwner Agreement, including the Unison HomeOwner Security Instrument, shall be in addition to all those rights, powers and remedies granted to Investor at law or in equity or by statute, and each such right, power and remedy may be exercised from time to time and as often and in such order as may be deemed expedient by Investor to the extent permitted by law, and the exercise of any such right, power or remedy shall not be deemed a waiver of the right to exercise, at the same time or thereafter, any other right, power or remedy. An election by Investor to pursue an Option exercise and Orderly Sale will not be deemed to constitute Investor's waiver or consent to any Event(s) Of Default (whether prospective or retrospective), nor a waiver of any of Investor's other rights and remedies under the Unison HomeOwner Agreement, including those rights under **Section 7** of the Unison HomeOwner Security Instrument, all of which are concurrent, and shall remain expressly reserved.

## ARTICLE EIGHT
## ADDITIONAL COVENANTS OF OWNER

**8.1 Purposes.** Pursuant to the Unison HomeOwner Agreement, Investor's Rights depend upon the value of the Property during the Term. To preserve and protect any and all of Investor's Rights hereunder, and to induce Investor to enter into the Unison HomeOwner Agreement, Owner agrees to each and all of the covenants set forth in **Sections 8.2 - 8.18** below.

**8.2 Maintenance and Repair.**

**(a)** Owner shall: **(i)** maintain the Property in good condition; **(ii)** prevent any waste, deterioration or decrease in value due to the Property's condition (ordinary wear and tear excepted); **(iii)** periodically perform such repairs and replacements as are customary and reasonable for similar properties in similar locations; and **(iv)** ensure that any operations or activities upon, or use or occupancy of, the Property or any portion of the Property will be in compliance with all state, federal and local laws and regulations, including, without limitation, any applicable laws requiring flood, earthquake or other specific hazard insurance.

**(b)** In no event shall Owner permit the Property to deteriorate such that its condition shall be worse than its condition as of the Effective Date and as further described in the inspection, appraisal and other third party reports prepared in connection with the origination of the Unison HomeOwner Agreement, ordinary wear and tear excepted.



© 2017, Unison 

(c) __No Credit or Offset.__ Owner shall not be entitled to any credit, offset or compensation for ordinary maintenance, repairs or replacement that maintain the condition and value of the Property.

(d) __Prompt Repair.__ To the extent that any material damage to the Property occurs, including, without limitation, from fire, flood, earthquake, hurricane or other natural disaster, Owner shall promptly repair such damage subject only to the provisions of **Section 8.16** below, regarding the disposition and use of insurance proceeds. Investor shall not be obligated to contribute toward, or be responsible for any portion of, the cost of any such repair.

**8.3 Property Modifications and Remodeling Adjustment.**

(a) Owner shall have the right at Owner's sole expense to make modifications to the Property without prior written consent of Investor, provided that such modifications do not violate any provision of the Unison HomeOwner Agreement and are performed in compliance with all applicable state, federal and local statutes, regulations and ordinances, and all appropriate zoning, licensing and permitting requirements.

(b) Owner may request the benefit of certain qualified material modifications made to the Property during the Term through an adjustment (**"Remodeling Adjustment"**) which will applied by Investor to the determination of the Ending Agreed Value of the Property at the end of the Unison HomeOwner Agreement Term, provided the following terms and conditions are met, in Investor's Permitted Discretion:

(i) Owner must notify Investor of Owner's request for a Remodeling Adjustment in writing no less than 45 days prior to the closing of any Permitted Sale, Option exercise, Special Termination, Orderly Sale, or other event requiring determination of an Ending Agreed Value of the Property. As part of such notice, Owner shall specify the material modifications for which a Remodeling Adjustment is sought, and shall provide Investor with photographic and supporting evidence of the material modifications which meets the requirements set forth in **Section 8.3(b)(iii)** below. Owner shall cooperate with Investor to obtain the Appraisal of the Property in order to calculate the Remodeling Adjustment, if any.

(ii) The Appraiser must determine as part of the written Appraisal that Owner's specified material modifications have, as of the time Investor Proceeds are calculated, actually increased the Ending Agreed Value of the Property above a hypothetical Ending Agreed Value at which the Property would have appraised had it not been materially modified. The Appraiser shall be instructed as follows:

(A) to derive two values for the Property: the value of the Property as-is (**"Actual Value"**); and the hypothetical value of the Property if it had not been materially modified (**"Hypothetical Value"**), the difference between which shall equal the appraised value of the material modifications. In the event that the Appraisal is conducted in connection with a Permitted Sale by Owner, the Appraiser shall assume that the agreed sale price between Owner and Third Party Buyer in the Permitted Sale is the Actual Value of the Property;

(B) to determine the value of any material modification for which a Remodeling Adjustment is sought solely in terms of the value, if any, added to the Property, and without reference to the actual or inferred dollar cost of such modifications to Owner;

(C) to consider the age, depreciation and potential functional obsolescence of Owner's material modifications in determining their value, if any; and



© 2017, Unison

**(D)** to ascertain the Hypothetical Value of the Property in the absence of Owner's material modifications based on a comparison between the current condition of the Property, and the photographic and supporting evidence of material modification supplied by Owner; provided, however, that the Appraiser shall have no obligation to ascertain any Hypothetical Value unless Owner's photographic and supporting evidence meets the requirements set forth in **Section 8.3(b)(iii)** below in Appraiser's discretion.

**(iii)** Owner shall maintain, and provide to Appraiser and Investor upon any request for a Remodeling Adjustment, photographic and other physical documentation of the Property before completion of the material modifications, which documentation shall be sufficient in scope, clarity, number and detail to permit the Appraiser to compare the Actual Value to the Hypothetical Value, in Appraiser's discretion. No Remodeling Adjustment shall be applied in the event Owner fails to maintain and provide documentation meeting the requirements of this **Section 8.3(b)(iii)**.

**(iv)** No Remodeling Adjustment shall be given to the extent a) Owner modifications are determined by appraisal to have become functionally obsolescent; or b) constitute a **Prohibited Use**, in Investor's Permitted Discretion.

Provided all of the conditions of this **Section 8.3(b)** are met, Investor shall apply a Remodeling Adjustment in its calculation of Investor Proceeds equal to the Actual Value minus the Hypothetical Value, the difference between which shall equal the value of the material modifications and constitute the amount of the Remodeling Adjustment.

**(c) Exclusion for Ordinary and Necessary Maintenance.** A material modification materially affects either the value or the useful life of the Property, while ordinary and necessary maintenance and repairs maintain the condition and value of the Property in its general condition. Costs of ordinary and necessary maintenance and repairs to keep the Property in an efficient operating condition, as more particularly outlined in U.S. Treasury Regulation 1.162-4 (as amended from time to time), are not eligible for any Remodeling Adjustment.

**(d) Prior To the Third (3rd) Anniversary Of Effective Date.** Notwithstanding anything to the contrary in this **Section 8.3**, no Remodeling Adjustment shall be applied by Investor to any determination of the Ending Agreed Value of the Property if Owner elects to sell the Property or the Unison HomeOwner Agreement is otherwise terminated at any time prior to the third (3rd) anniversary of the Effective Date.

**(e)** If the Appraisal valuation process set forth in **Section 8.3(b)(ii)** above determines that the Actual Value minus the Hypothetical Value yields a negative number, Investor may, in its Permitted Discretion, apply any such decrease in value as a **Negative Remodeling Adjustment** when calculating the Ending Agreed Value, at any time during the Term. In the absence of a request by Owner for a Remodeling Adjustment, if Investor believes the Appraisal valuation process set forth in **Section 8.3(b)(ii)** above would likely result in a Negative Remodeling Adjustment, Investor may, in its Permitted Discretion, obtain such Appraisal.

**8.4 Deferred Maintenance Adjustment.**

**(a)** If, as a result of a home inspection, Appraisal or otherwise, upon any event requiring determination of the Ending Agreed Value, Investor determines that either **(i)** Owner has breached Owner's duties of maintaining and repairing the Property as set forth in this Unison HomeOwner Covenant Agreement and elsewhere; or **(ii)** the Ending Agreed Value is negatively affected not as a result of market forces, but as the direct result of a condition or defect in, or damage to the Property or its title which either existed as of the Effective Date or which occurred or developed during the Term, Investor



© 2017, Unison 

shall have the right in its Permitted Discretion to make (in consultation with appraisers, third party experts and inspectors unaffiliated with Investor) a commercially reasonable estimate of the dollar amount of such deferred maintenance and to apply such dollar amount as a "Deferred Maintenance Adjustment" when calculating the Ending Agreed Value.

**(b)** Investor may also, in its Permitted Discretion, apply a Deferred Maintenance Adjustment when determining the Ending Agreed Value of the Property where: **(i)** as of the Effective Date, Investor in its Permitted Discretion identified and expressly reserved for a Deferred Maintenance Adjustment significant material defects or conditions in or on the Property which, if not remedied promptly or within a reasonable time, posed clear and serious risks to the Property improvements or Property value, and Owner failed to correct such defects or conditions; or **(ii)** if Owner knew or had reason to know of such a defect or condition as of the Effective Date or during the Term of the Unison HomeOwner Agreement, but failed or neglected to disclose it to Investor.

**8.5 Appraisal.** The process of valuation of the Property by appraisal and any and all appraisals of the Property obtained by either party in connection with the Unison HomeOwner Agreement ("**Appraisal**") must conform to this **Section 8.5**. An Appraised Value shall be an independent third party valuation of the Property made pursuant to the terms and conditions of this **Section 8.5**.

**(a) Appraiser.** All Appraisals shall be conducted by an appraiser approved in advance by Investor and unaffiliated with either Investor or Owner, and who satisfies the requirements of Fannie Mae, Freddie Mac or FHA and Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and the regulations promulgated thereunder, and any applicable state laws, as of the date of the Appraisal, and in compliance with the Uniform Standards of Professional Appraisal Practice.

**(b) Appraisals.** All Appraisals must conform to Investor's then-current Appraisal requirements, and to the requirements of **Section 8.5(a)**. Either party may obtain one or more Appraisals of the Property at any time upon reasonable notice to the other party. Owner and Investor shall each fully and reasonably cooperate at their own expense in connection with any Appraisal ordered on the Property. Owner will cooperate with the appraiser by granting full access to the Property and by making available any and all relevant documentation and information in Owner's possession pertaining to, including but not limited to plat maps, surveys, plans, tax or assessor's records, and any other documentation concerning encroachments, dimensions, measurements, setbacks, uses of and modifications to the Property.

**(c) Appraisal Review.** If either party concludes that an Appraisal contains a material omission or material error of fact, such party may, within 10 days after receipt of the Appraisal, request a reconsideration of the Appraisal, as allowed by applicable law, at the party's own cost.

**(d) Remodeling Adjustment.** If Owner requests a Remodeling Adjustment, and the request is determined to be valid in accordance with the provisions of **Section 8.3**, or if Investor believes a Negative Remodeling Adjustment should apply, the appraiser will be instructed to determine the amount of a Remodeling Adjustment, if any, that should be applied to the Ending Agreed Value of the Property as follows: the appraiser will determine two fair market values for the Property: first, the Actual Value of the Property in its current condition; and second, the Hypothetical Value based upon either the hypothetical absence of specified material modifications or a Prohibited Use. The Actual Value minus the Hypothetical Value shall equal the Remodeling Adjustment. If the Hypothetical Value of the Property is more than the Actual Value, the adjustment will be deemed a Negative Remodeling Adjustment.

**(e) Payment of Appraisal Expenses.** As allowed by applicable law, Owner shall pay all expenses ("**Appraisal Expenses**") associated with the first Appraisal obtained in connection with: **(i)** initial valuation of the Property prior to execution of the Unison HomeOwner Agreement; **(ii)** any proposed sale, Permitted Sale or Orderly Sale; **(iii)** any Option exercise by Investor; **(iv)** any Special Termination; **(v)** any allocation of insurance or condemnation proceeds; **(vi)** any determination of an Investor Bid Amount; and **(vii)** any determination of a Remodeling Adjustment or Deferred Maintenance



© 2017, Unison 

Adjustment. In the case of one or more additional Appraisals of the Property obtained in connection with any of the events described above, the Appraisal Expenses shall typically be paid by the party who obtained or requested the Appraisal, or, if both parties agree that an additional Appraisal(s) should be obtained, by both parties divided equally. If Appraisal Expenses have not been paid by the party required to bear them, the other party may subtract them, or direct their payment out of Escrow, from the funds that would otherwise be due to the party liable therefor, as allowed by applicable law.

**8.6 Arbitration of Fair Market and Appraised Value, Remodeling Adjustment, Deferred Maintenance Adjustment. IF INVESTOR AND OWNER ARE UNABLE TO AGREE IN GOOD FAITH ON THE FAIR MARKET OR APPRAISED VALUE OF THE PROPERTY UNDER THE UNISON HOMEOWNER AGREEMENT, OR ON THE AMOUNT OF ANY REMODELING ADJUSTMENT OR DEFERRED MAINTENANCE ADJUSTMENT TO BE APPLIED UNDER THE UNISON HOMEOWNER AGREEMENT, THE ISSUE WILL BE DETERMINED BY BINDING ARBITRATION BEFORE A SINGLE NEUTRAL ARBITRATOR. THE ARBITRATION WILL BE ADMINISTERED BY THE JUDICIAL ARBITRATION AND MEDIATION SERVICE (OR "JAMS") OR ITS SUCCESSOR PURSUANT TO ITS STREAMLINED ARBITRATION RULES AND PROCEDURES (OR SUCCESSOR PROCEDURES). THE ARBITRATION FEES (INCLUDING THE FEES OF THE ARBITRATOR) SHALL BE SHARED EQUALLY BY INVESTOR AND OWNER. OWNER AND INVESTOR SHALL EACH PAY THEIR OWN ATTORNEYS' FEES INCURRED IN CONNECTION WITH SUCH ARBITRATION.**

**8.7 Inspections and Disclosures of Condition.**

**(a)** Owner agrees that Investor or its agents may upon reasonable notice, make reasonable inspections of both the interior and exterior of the Property both as a condition of entering into, and from time to time during the Term of, the Unison HomeOwner Agreement. Owner agrees to cooperate in setting the time and allowing entry for any such inspection. If Investor is not permitted to timely inspect the Property it shall be deemed that Owner has failed to maintain and repair the Property as required under the Unison HomeOwner Agreement, subject to Owner's right to cure within a reasonable time.

**(b)** Investor may in its Permitted Discretion require written homeowner disclosures from Owner from time to time during the Term of the Unison HomeOwner Agreement, regarding any conditions known to Owner which may affect the Property or its value.

**(c)** When, either at origination of the Unison HomeOwner Agreement or during its Term, Investor determines in its Permitted Discretion that any significant material defect or condition exists in or on the Property which, if not remedied promptly or within a reasonable time, poses clear and serious risks to the Property improvements or Property value, Investor may: **(i)** require that Owner promptly remedy such defect or condition at Owner's expense either as a condition precedent to executing the Unison HomeOwner Agreement or otherwise; **(ii)** note the defect or condition and require that it be remedied at Owner's expense upon Option exercise or other termination or expiration of the Unison HomeOwner Agreement; or **(iii)** note the defect or condition and require that the cost of remedy or repair be applied as a Deferred Maintenance Adjustment to the Ending Agreed Value whenever a determination thereof is made.

**(d)** Notwithstanding the contents of any disclosure or report pertaining to the Property which is provided to Investor under this **Section 8.7** or otherwise, or the existence of any defect or condition on the Property whether known or unknown by Investor, Investor shall have no liability to Owner or to any third party for, and Owner hereby holds Investor harmless from, any and all loss or liability resulting from or in connection with any defect or condition on or affecting the Property, whether known or unknown, and Investor's interest in and liability in regard to the Property shall at all times be construed as that of a passive investor in, and not as that of a record title owner or occupant of, the Property, except as may be expressly provided otherwise under the Unison HomeOwner Agreement.



© 2017, Unison 

**8.8 Occupancy and Use of Property.**

**(a) Principal Residence.** Unless Investor consents otherwise in writing in its Permitted Discretion, at least one Owner shall occupy the Property as Owner's Principal Residence. Owner shall be deemed not to meet this requirement if no Owner is using the Property as living and sleeping quarters for 60 or more consecutive days, or for a total of 180 days out of any 365-day period, without notifying Investor of such absence, obtaining Investor's written consent, and making arrangements satisfactory to Investor in Investor's Permitted Discretion to care for the Property while Owner is gone. The circumstances described above shall define the meaning of "**Principal Residence**." If Owner does not give such notice, obtain consent, or make such arrangements, an Event Of Default will be considered to have occurred on the last day of the 60-day period or on the last of the 180-day period, as applicable. If the Property is held in a Revocable Trust, the occupancy requirement will be satisfied if either any one Owner, or any one Trustor, who is an individual, occupies the Property as a Principal Residence.

**(b) Prohibited Use.** Owner must not **(i)** use the Property in any way other than as a residential property; **(ii)** rent all or any portion of the Property except with Investor's express written consent in its Permitted Discretion; or **(iii)** use or permit the use of the Property for any commercial use, with the exception of a "home office" in compliance with applicable U.S. tax regulations. Owner shall take all reasonable and practical action to prevent the conversion or zoning of the Property for commercial or mixed use ("**Prohibited Use(s)**").

**(c) Owner Right of Occupancy.** Owner shall enjoy sole right of occupancy of the Property under the Unison HomeOwner Agreement as an owner and not as a tenant or lessee, whether or not Investor has exercised the Option, subject to the limited Investor rights of entry, Investor rights of repair following Owner Event Of Default, and any and all of Investor rights in connection with an Orderly Sale under **Article Seven** hereof. Owner's right of occupancy shall be effective only so long as Owner **(i)** does not transfer or attempt to transfer the Property except as permitted under the Unison HomeOwner Agreement, and **(ii)** occupies the Property as provided in the Unison HomeOwner Agreement. Owner's right of sole occupancy is not transferable by Owner except as part of a Permitted Sale or Orderly Sale, or as otherwise approved by Investor in its Permitted Discretion.

**8.9 Debt Limits and Related Obligations.**

**(a) Limitation on Debt Associated with the Property.**

**(i) Maximum Authorized Debt.** Without Investor's express written approval in its Permitted Discretion, Owner may not at any time increase, or permit the increase of, the total principal balance of loans secured by liens on the Property (including the unused portion of any committed credit line) to exceed the Maximum Authorized Debt specified in the Unison HomeOwner Option Agreement. The Maximum Authorized Debt limitation applies both to **Permitted Senior Loans** (which pre-existed or originated simultaneously with execution of the Unison HomeOwner Agreement), and **Approved Subsequent Loans** (new loans secured by the Property approved by Investor in its Permitted Discretion during the Term of the Unison HomeOwner Agreement).

**(ii) Approved Subsequent Loans.**

**(A)** If during the Term of the Unison HomeOwner Agreement, the principal balance of all loans secured by liens on the Property is less than the Maximum Authorized Debt, and the Appraised Value of the Property is greater than or equal to the Original Agreed Value, Investor may give written consent to Owner to obtain additional Approved Subsequent Loans on the Property up to the Maximum Authorized Debt, which consent shall not be unreasonably withheld provided that Owner provides to Investor all loan documentation related to the proposed loan (including, but not limited to,



© 2017, Unison 

any commitment letter, offer letter, term sheet, proposed note, proposed deed of trust or mortgage, preliminary title report, inspections, appraisals and other Property valuations) as such documentation becomes available, but no later than 3 Business Days prior to the proposed close of such loan.

**(B)** If the Appraised Value of the Property at the time of the proposed Subsequent Loan(s) is less than the Original Agreed Value, Investor may give written consent to Owner to obtain a proposed Subsequent Loan(s), but only if such proposed Subsequent Loan(s) are less than or equal to the then-current principal balance of all Permitted Senior Loans on the Property, plus actual and reasonable refinancing costs. Investor's consent shall not be unreasonably withheld provided Owner provides to Investor all loan documentation related to the proposed loan as described in **Section 8.9(a)(ii)(A)**.

**(C)** Investor shall have no obligation to respond to or approve any proposed lending transaction unless and until it has timely received all relevant documents and information.

**(D)** Immediately following the close of any Approved Subsequent Loan, Owner shall ensure that copies of all documents recorded as Approved Subsequent Liens against the Property are delivered to Investor.

**(iii)** **Prohibited Loans.** Owner may not encumber the Property with, and Investor shall not consent to, any lien on the property that could, in Investor's Permitted Discretion, materially impair Investor's Rights. Such loans shall include, without limitation, reverse mortgage loans, shared appreciation mortgage loans, mortgage loans with negative amortization or prepayment penalties, private or non-institutional loans, unrecorded loans secured by the Property, and certain loans with payment reset or other variable payment features.

**(b) No Investor Liability For Owner Loans.**

**(i)** Investor shall not be liable for (including liability to repay) any loans created or obtained by Owner whether or not pre-existing, subsequent, consented to, approved of, or subordinated to by Investor.

**(ii)** Investor shall not be obligated to execute any documents in connection with any loans created, obtained or refinanced by Owner, except such documents reasonably required to confirm any subordination to which Investor consents hereunder.

**(iii) Investor makes no representations or warranties regarding the terms or availability of any loan that Owner has prior to or may seek during the Term of the Unison HomeOwner Agreement and Investor shall have no liability to Owner in connection therewith, including as a result of the unavailability or unfavorable terms of any such loan.**

**(c) Subordination.**

**(i)** Except for construction loans, which are addressed below, Investor will subordinate the priority of its rights under the Unison HomeOwner Agreement to the lien of any lender that extends to Owner an Approved Subsequent Loan, provided that: **(A)** the Approved Subsequent Loan satisfies all of the requirements of **Section 8.9(a)**; **(B)** any requested subordination and loan documents contain only reasonable and customary terms common to such agreements and acceptable to Investor in its Permitted Discretion; and **(C)** Owner pays Investor the Asset Administration Fees associated with such subordination.



© 2017, Unison

**(ii)** Investor may subordinate its lien on the Property to any lender in connection with any construction loan, or other financing of any improvements to the Property if: **(A)** the construction loan satisfies all of the requirements of **Section 8.9(a)**; **(B)** Investor in its Permitted Discretion determines that Investor's Interest is not jeopardized; **(C)** any requested subordination and loan documents contain only reasonable and customary terms common to such agreements and acceptable to Investor in its Permitted Discretion; and **(D)** Owner pays the Asset Administration Fees associated with subordination imposed by Investor.

**(iii)** Investor may subordinate its lien on the Property to a lender in connection with any loan not meeting the requirements specified in **Section 8.9(a)(ii)** only if **(A)** Investor, in its Permitted Discretion, determines that Investor's Rights are not jeopardized; **(B)** any requested subordination and loan documents contain only reasonable and customary terms common to such agreements and acceptable to Investor in its Permitted Discretion; and (C) Owner pays Investor the Asset Administration Fees associated with subordination.

**(iv)** Following any subordination by Investor, Owner shall remain obligated to keep current and satisfy all liens on the Property.

**(d)** **Free of Liens.** Owner shall at all times keep the Property free of any and all liens and title exceptions (including easements), except for: **(i)** Permitted Senior Liens; **(ii)** Approved Subsequent Liens; and **(iii)** Permitted Encumbrances.

**(e) Cure of Defaulted Loans.** To the extent that there is a default under any loan or other obligation secured by a lien on the Property; or notice of default or notice of sale or foreclosure upon, or enforcement of, a lien on the Property, Owner shall take immediate action (upon or without notice or demand from Investor) necessary to: **(i)** terminate such foreclosure or enforcement, **(ii)** satisfy the secured obligation, and/or **(iii)** remove or release such lien from the Property. Whether or not Owner takes such immediate action, Investor may take such action as it deems necessary in its Permitted Discretion to protect Investor's Rights hereunder including, without limitation, advance of funds as Protective Advances, pursuit of any and all remedies set forth in Article Seven, or an offer to Owner of Option exercise and Orderly Sale.

**(f)** **No Investor Loans.** Investor shall have no authority to obtain or increase any loans from third parties that are secured by liens against the Property except in connection with an Orderly Sale.

**8.10 Taxes and Assessments.**

**(a)** **Payments.** Owner shall promptly pay all taxes and assessments accruing on the Property, except for taxes or assessments that are in good faith dispute and that Owner is diligently challenging; provided that upon final discharge of any such challenge, Owner shall pay the disputed amount promptly. During the pendency of any such challenge, Owner shall, within 10 days following Investor's written demand therefor, provide Investor adequate proof of funds sufficient to satisfy such taxes and assessments in the event Owner's challenge is unsuccessful. Owner shall provide Investor with proof of payment of taxes or assessments upon request. Owner shall not apply for any deferral of taxes or assessments accruing on the Property or any deferral available to senior citizens, if applicable. If Owner fails to pay any taxes or assessments other than those in good faith dispute, Investor, in its Permitted Discretion, may pay such taxes or assessments at Owner's expense as Protective Advances.

**(b)** **Tax Benefits.** Owner shall be entitled to the full benefit of any and all tax advantages arising in relation to the Property, including, without limitation, all available deductions for taxes and mortgage interest paid by Owner. **Investor does not provide tax advice and makes no representations as to the tax advantages or disadvantages which may accrue to Owner in connection with the Property or the Unison HomeOwner Agreement.**



© 2017, Unison 

**8.11 Protective Advances.**

**(a)** If Owner fails to take action to protect the Property and Investor's Rights, Investor may take such action and pay such money as Investor deems appropriate in its Permitted Discretion, upon 10 days' written notice to Owner, to correct Owner's failure including, without limitation: the placement of insurance; the payment of Appraisals or for inspections of the Property; the payment of taxes, assessments, levies, liabilities, obligations and other charges of every nature on the Property; the making of necessary repairs; the cure of any defaulted loans; or the removal of a receiver appointed for the Property. All such amounts advanced by Investor (including, without limitation, Attorneys' Fees incurred in litigation or arbitration with parties other than Owner) shall be deemed "**Protective Advances**." Prior notice from Investor is not required if the Unison HomeOwner Agreement expressly so provides, or when Investor, in its Permitted Discretion, determines that prompt action is necessary in order to protect the Property and Investor's Rights. Owner and Investor agree that Investor shall incur no liability for its election not to take any action authorized under this **Section 8.11(a)**.

**(b)** **Reimbursement.** Investor may, in its Permitted Discretion, demand prompt reimbursement for any and all Protective Advances. Owner shall reimburse Investor no later than 10 days after demand. Protective Advances shall bear interest at the rate of one and one-half percent (1½%) per month, subject to applicable law, from the date of demand until paid in full. These charges are intended to be a reasonable liquidated estimate of those sums which Investor could be obliged to obtain and expend in the event appropriate corrective action(s) are not taken to protect the Property or Investor's Rights, which sums and costs are not readily ascertainable, and will be difficult to predict or calculate.

**8.12 Asset Administration Fees.** Unless prohibited by applicable law, Owner will pay all **Asset Administration Fees** necessary to defray costs and expenses to the **Asset Administrator** in accordance with the **Asset Administration Fee Schedule** (attached as Exhibit C hereto and as such schedule is amended and made available by Investor from time to time). Asset Administration Fees shall include, without limitation, fees for: **(a)** processing subordinations; **(b)** processing changes in title or ownership; **(c)** processing reconveyance of the Option and the Unison HomeOwner Agreement or a Special Termination; **(d)** processing Protective Advances; **(e)** administering Owner Events Of Default; and **(f)** paying and reimbursing such reasonable, customary, bona fide fees and out-of-pocket costs as are actually charged to Investor by Investor's Asset Administrator or by other third parties relating to any of the foregoing (including, for example, title and escrow charges, recording fees and Attorney's Fees).

**8.13 Notices; Additional Information.**

**(a)** Owner, Owner's Estate, or Owner's representative shall immediately provide Investor with notice of any event that may have a material effect upon the Property, the value of the Property, or Investor's ability to exercise any of Investor's Rights hereunder, including, without limitation: **(i)** Owner's failure to meet any condition or covenant set forth in the Unison HomeOwner Agreement; **(ii)** the death or divorce of any Owner (or of any Trustee or Trustor, if the Property is held in a Revocable Trust); **(iii)** Owner's decision to market, sell, or transfer the Property or any interest in the Property; **(iv)** the discovery of any lien or adverse possessory interest in the Property not previously disclosed in writing to Investor, whether or not recorded or recordable; **(v)** the filing of any bankruptcy by or against Owner (or any Trustee or Trustor, if the Property is held in a Revocable Trust); **(vi)** any material damage or injury to the Property; **(vii)** Owner's receipt of any notice of condemnation; **(viii)** Owner's receipt of any solicited or unsolicited written offer to purchase the Property; **(ix)** a representation or warranty made under the Unison HomeOwner Agreement becomes inaccurate or untrue; **(x)** any new Non-Owner Occupant as yet unidentified to Investor commences to occupy the Property using the form attached hereto as Exhibit B; or **(xi)** the occurrence of any other event that might have a material adverse effect on the Property, the value of the Property, Owner's interest in the Property, or Investor's Rights under the Unison HomeOwner Agreement.



© 2017, Unison 

**(b) <u>Additional Information.</u>** Owner will provide to Investor such reports and information available to Owner concerning the Property and any modifications to the Property as Investor may reasonably request, and will promptly complete and return any Property questionnaire or similar form that Investor provides to Owner from time to time. If Owner fails to complete or return any such Property survey or certification within the time frame requested by Investor, Owner shall pay for any Property inspection, appraisal or other report that Investor obtains in order to collect the information that would have been provided therein. If Owner fails to pay any such amounts, Investor, in its Permitted Discretion, may make any and all such payments as Protective Advances.

**<u>8.14 Reserved.</u>**

**<u>8.15 Right to Disclose Certain Information.</u>** Subject to applicable laws, Investor may share certain personal and financial information with regard to the Unison HomeOwner Agreement with affiliates, subsidiaries, investors, assignees and Persons with which it intends to conduct business, including, without limitation, the address and general location of the Property, appraisal reports and other valuations of the Property, and the financial terms of the Unison HomeOwner Agreement.

**<u>8.16 Insurance.</u>**

**(a) <u>General Coverage Requirements.</u>** Owner shall maintain at Owner's expense: **(i)** insurance on the Property against fire and other hazards included in the special form (HO-3) policy (and similar successor forms) with only those exclusions customarily associated with special form policies, and exceptions to those exclusions for ensuing loss, as well as insurance against any other hazards, including flood hazards, for which Investor may from time to time reasonably require insurance and which insurance is common for similar properties in similar locations; and **(ii)** liability insurance on the Property against such risks and in such amounts as are reasonable for similar properties in similar locations. Such insurance may be obtained from any insurance company reasonably acceptable to Investor and shall be in amounts and include terms (including deductible levels) as Investor may from time to time reasonably require. Currently, Investor requires hazard insurance in an amount equal to the current replacement cost of the improvements on the Property, including law and ordinance coverage (which amounts shall be increased not less frequently than annually as the replacement cost of the improvements increases). Investor shall be named as an additional named insured or as otherwise directed by Investor under all hazard and liability insurance policies obtained by Owner, whether or not such policies are required by Investor.

**(b) <u>Copies And Proceeds.</u>** Copies of all insurance policies shall be furnished to Investor promptly upon issuance, and Owner shall provide Investor with proof of coverage upon request. All proceeds of such policies shall be subject to the provisions of this **Section 8.16**.

**(c) <u>Failure To Maintain.</u>** If Owner fails to maintain or obtain the insurance coverage required by this **Section 8.16**, Investor, at Owner's expense, may, but is not obligated to, obtain such coverage on the Property as Investor, in its Permitted Discretion, may deem necessary and appropriate to protect Investor's Rights. All such expenses paid by Investor shall be deemed to be Protective Advances. Owner acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Owner could have obtained and may not protect Owner or cover Owner's personal property to the same extent as any policy Owner might have had or could have obtained.

**(d) <u>Owner To Cooperate.</u>** Owner agrees to allow Investor to cooperate with Owner in the pursuit, settlement, and adjustment of any losses under any hazard and liability policies obtained by Owner, and expressly authorizes Investor to communicate directly with all such insurance companies for the purposes of ensuring the maintenance of policies, the coverage and the reimbursement of losses thereunder.

**(e) <u>Property Destruction Or Damage.</u>** <u>Subject to Owner's obligations and the requirements in connection with any Senior Lien:</u>

**(i)** **Repair and Restoration.** Insurance proceeds shall be applied as follows (whether the underlying insurance is required by Investor or not): if the Property is destroyed or damaged in any material manner, any and all insurance proceeds shall be applied to restore or repair the Property to at least the same condition and characteristics as of the time immediately preceding such destruction or damage, subject to all applicable local ordinances; provided that Investor shall have the right to prior review of any restoration or repair plans and to determine, in good faith and in the exercise of its reasonable discretion: **(A)** whether the restoration or repair plans are economically feasible; and **(B)** if not, to disapprove such restoration or repair plans.

**(ii)** During any repair or restoration, to ensure that the work is performed to Investor's satisfaction, Investor shall have the right to hold any and all insurance proceeds and release such funds to the Person or Persons performing the repair and restoration work in one or more progress payments as the work is completed. Owner is responsible to assure that any repair or restoration work is properly completed and performed in an adequate and workman-like manner, and in no way impairs or threatens to impair the structural integrity, habitability or value of the Property. To the extent any governmental approvals or permits are required for such repair or restoration work, Owner is responsible and shall assure that such governmental approvals or permits are obtained. Unless applicable law requires interest to be paid on such insurance proceeds or a written agreement to that effect is made by the parties, Investor shall not be required to pay Owner any interest or earnings on such proceeds. If the Property is repaired, it must be restored to at least the same condition and characteristics as of the time immediately preceding such destruction or damage, subject to all applicable local ordinances; and, in any event, no less favorable a condition than set forth in **Section 8.2** above, regardless of whether the insurance proceeds are sufficient to accomplish such repair. Investor shall have no responsibility or obligation to pay any amount in connection with the restoration or repair of the Property, even if the insurance proceeds are insufficient to complete the restoration or repair, in which case Owner shall be responsible for any shortfall.

**(iii)** **Allocation Where Repair Not Feasible.** If any loss occurs in connection with the Property, and restoration or repair is not economically feasible, the value of the Property as it existed immediately prior to the destruction or damage shall be determined by Appraisal, or if valuing the Property by Appraisal is not possible due to the destruction or damage, by some other reasonable, customary and appropriate process based on an expert third party opinion obtained by Investor. Any and all insurance proceeds, whether or not the underlying insurance was required by Investor, will be allocated in the following order:

**(A)** to payment (or reimbursement) of reasonable costs and expenses (including, without limitation, Attorneys' Fees that have been approved by Investor in its Permitted Discretion) reasonably incurred by Owner and/or Investor in collecting and contesting with the insurers the payments under the relevant insurance policies;

**(B)** to payment of all Senior Loans, which payment may result in the discharge of the related Senior Liens;

**(C)** to Investor, in an amount equivalent to the Investor Interest as it would have been calculated had Investor exercised its Option immediately before the loss; and

**(D)** to Owner, the balance of the proceeds.

**(f)** **Special Measure Of Damages Where Owner Has Failed To Insure.** Owner and Investor agree that, in the event Owner fails to maintain insurance in amounts required by Investor pursuant to this **Section 8.16**, and/or any insurance claim is denied due to Owner's action or inaction, there may be added economic burden and risk imposed on Investor, and resulting damages may be uncertain, depend on many factors, and be extremely difficult to ascertain. In the event of loss to Investor resulting directly from



© 2017, Unison 

Owner's failure to maintain insurance or obtain a claim, Owner and Investor therefore agree that Investor shall be entitled to a special measure of liquidated damages ("**Special Damages For Failure To Insure**") in the amount of the Investor Interest as it would have been calculated had Investor exercised its Option immediately before the loss, but without credit of the Unison Purchase Price Balance to Owner.

**8.17 Condemnation.**

**(a) Total Condemnation Or Partial Condemnation When The Option Has Been Exercised.** If the Property is condemned, in whole, or in part when the Option has been exercised, all condemnation proceeds net of reasonable costs and expenses (including, without limitation, Attorneys' Fees approved by Investor) incurred by Owner and/or Investor in collecting and contesting the condemnation proceeds ("**Net Condemnation Proceeds**") shall be allocated in the following order:

**(i)** to payment of all Senior Loans, which payment may result in the discharge of the related Senior Liens;

**(ii)** to Investor, an amount equivalent to the Investor Interest as it would have been calculated immediately prior to the condemnation; and

**(iii)** to Owner, the balance of the proceeds.

**(b) Partial Condemnation When The Option Has Not Been Exercised.** If the Property is condemned in part, and if the Option has not been exercised, the following provisions shall apply:

**(i)** The Net Condemnation Proceeds shall be used, first, to pay all Senior Loans, provided that such payment may result in the discharge of the related Senior Liens;

**(ii)** Any remaining Net Condemnation Proceeds shall be distributed as follows:

**(A)** First, to Investor, an amount equal to the total of **(1)** any unreimbursed Protective Advances, including any associated unpaid interest and other fees and charges plus **(2)** any unpaid Asset Administration Fees;

**(B)** Second, to Owner, the balance of the proceeds; and

**(iii)** For all remaining calculations to be made under the Unison HomeOwner Agreement in connection with any Option exercise, including an Orderly Sale, the Unison Purchase Price Balance shall be reduced by the Net Condemnation Proceeds multiplied by the Investor Percentage ("**Investor Condemnation Credit**").

**(c) Reservation of Rights.** In the case of a partial condemnation, Investor shall retain its Investor Rights with respect to any Property that has not been condemned.

**8.18 Environmental Matters.**

**(a) Environmental Prohibitions.** Owner shall not, and shall not allow others to, perform any activities upon, or use or occupy the Property, or any portion of the Property, in any manner that violates any state, federal or local law or regulation, including, without limitation, those relating to the generation, handling, manufacturing, treatment, storage, use, transportation, spillage, leakage, dumping, discharge or disposal (accidental or intentional) of any toxic or hazardous substances, materials or wastes, including, but not limited to hydrocarbons, asbestos, or any other substance whose nature or quantity, use, manufacture, disposal, or effect, renders it subject to public regulation, investigation, remediation or removal as potentially injurious to the environment, animals or the public health or welfare ("**Hazardous Materials**").



© 2017, Unison 

**(b) <u>Environmental Representations.</u>** Owner represents and warrants to Investor, that Owner has no knowledge of or information concerning any violation or claim of violation of laws or regulations relating to the generation, handling, manufacturing, treatment, storage, use, transportation, spillage, leakage, dumping, discharge or disposal (whether accidental or intentional) of any Hazardous Materials in connection with the Property. Owner has no knowledge of any Hazardous Materials on, in, or in the vicinity of the Property.

**(c) <u>Environmental Indemnity.</u>** Owner will indemnify and hold Investor harmless from and against any and all claims, damages, liabilities, actions and expenses (including, without limitation, Attorneys' Fees) of every kind arising out of or relating to: **(i)** Owner's breach of this **Section 8.18** or **(ii)** the presence of any Hazardous Materials on, in, or in the vicinity of the Property.

## ARTICLE NINE
## MISCELLANEOUS PROVISIONS

**<u>9.1 Indemnification By Owner.</u>** Owner hereby agrees to indemnify and hold Investor harmless from, and against, any and all claims, damages, liabilities, actions and expenses (including, without limitation, Attorneys' Fees) of every kind arising out of or relating to: **(a)** a breach of any of Owner's covenants, representations or warranties under the Unison HomeOwner Agreement; **(b)** any act or omission by Owner or Owner's agents; or **(c)** the Property.

**<u>9.2 Covenants To Run With Land.</u>** The Unison HomeOwner Option Agreement, Unison HomeOwner Covenant Agreement, and the other provisions of the Unison HomeOwner Agreement are deemed to be covenants running with the land as reflected in the Unison HomeOwner Recorded Memorandum. The interpretation of the phrase "Covenants running with the land" shall be within the meaning of the applicable law of the state where the Property is located so as to give it the broadest possible application.

**<u>9.3 Relationship</u>. Investor shall not be deemed a partner, joint venturer, trustee, lender or fiduciary with, or of, Owner. Owner shall not be permitted to execute any document or enter into any agreement on behalf of Investor, nor shall Owner be permitted to make any representation on behalf of Investor or to represent Owner as the agent or representative or partner of Investor. The Option is intended to and shall be treated for all purposes (including, without limitation, tax purposes) as an option to purchase an undivided percentage interest in and to the Property, and not as a purchase (unless and until Option exercise), loan, or joint venture. Owner expressly waives any claims against any of the Investor's agents, assignees, affiliates, employees or funding sources not a signatory hereto.**

**<u>9.4 Multiple Owners and Revocable Trusts.</u>**

**(a) <u>Multiple Owners.</u>** If Owner is more than one Person: **(i)** the Transaction Documents must be signed by each such Owner; **(ii)** all such multiple Owners shall be jointly and severally liable for Owner's liabilities and obligations under the Transaction Documents; **(iii)** notice required to be given by, or to, an Owner shall be deemed adequately given if given by, or to, any of Owners using the contact information set forth in the Unison HomeOwner Option Agreement; and **(iv)** Investor may treat any notice received from any one Owner as notice from all Owners.

**(b) <u>Revocable Trusts</u>.** If Owner is the Trustee of a Revocable Trust: **(i)** all Trustees and all Trustors must sign the Unison HomeOwner Agreement Transaction Documents both in their capacities as individuals and as Trustees and/or Trustors, provided that any Trustee who is also a Trustor need only sign the Unison HomeOwner Agreement Transaction Documents once for them to be binding on such Person both as Trustee and as Trustor; **(ii)** each Trustee and Trustor who signs the Unison HomeOwner Agreement Transaction Documents hereby represents and warrants that all Trustees and Trustors have been disclosed to Investor; **(iii)** all rights and powers specified for, and all actions required of, Owner in the Unison HomeOwner Agreement that are exercised by a Trustee shall be deemed approved and



© 2017, Unison

exercised by all Trustees unanimously; **(iv)** all Trustees and all Trustors, in their capacities as individuals, shall be jointly and severally liable with Owner for Owner's liabilities and obligations under the Unison HomeOwner Agreement; **(v)** all representations and warranties by Owner in the Unison HomeOwner Agreement are made by all Trustees on behalf of the Revocable Trust and by all Trustees and all Trustors in their capacities as individuals; **(vi)** notice required to be given by, or to, an Owner shall be deemed adequately given if given by, or to, any of the Trustees using the contact information set forth in the Unison HomeOwner Option Agreement; and **(vii)** Investor may treat any notice received from any one Trustee as notice from all Trustees and from Owner.

**(c) Owners To Be Natural Persons.** Each Owner under the Unison HomeOwner Agreement must be a Natural Person. No entity, including, without limitation, corporations, limited liability companies, partnerships, or joint ventures, may be an Owner hereunder; provided, however, that an Owner or Owners who are Natural Persons may hold title to the Property in a Revocable Trust, provided that the requirements for Revocable Trusts set forth in **Section 9.4(b)** above are satisfied.

**9.5 Delegation of Duties.** Investor may execute any of its duties under the Unison HomeOwner Agreement by or through agents, Asset Administrators, employees or attorneys-in-fact; shall be entitled to advice of counsel concerning all matters pertaining to such duties; and any actions taken on advice of counsel shall be deemed taken in good faith. Investor shall not be responsible for the negligence or misconduct of any agent, Asset Administrator, employee, or attorney-in-fact that it selects as long as Investor's selection was made without gross negligence or willful misconduct.

**9.6 Successors and Assignees.** The Unison HomeOwner Agreement shall be binding on Owner's and Investor's successors and assignees, but may not be assigned contrary to the following express provisions:

**(a) Assignment by Investor.** **(i)** Investor may assign, participate, hypothecate or sell, in whole or in part, Investor's right and title to, and interest in, the Unison HomeOwner Agreement at any time and to any Person without prior notice to, or consent of Owner. In connection with any assignment, Investor may in its Permitted Discretion disclose any and all documents and information in its possession relating to Owner and the Property, subject to its assignee's agreement to continue to observe Investor's policies regarding privacy and disclosure of personal and financial information and applicable privacy laws, or provide disclosure to Owner and an opportunity for Owner to opt in or out in compliance with applicable law. Upon such assignment, Investor's (or any future) assignee shall automatically be delegated all the duties, and assume all the rights and remedies of, Investor under the Unison HomeOwner Agreement, including the Unison HomeOwner Security Instrument. Investor and Owner shall execute and deliver in recordable form, if requested, such other documents as are appropriate to reflect the assignment of the Unison HomeOwner Agreement. Investor and Owner agree to cooperate with such assignee and execute such additional documents as may be necessary to insure assignee's interest in the Property. Investor shall notify Owner no later than 60 days after the effective date of any such assignment.

**(ii)** Owner acknowledges and consents to any assignment whereby the Asset Administrator's responsibilities, including, but not limited to, the right to enforce the Unison HomeOwner Agreement and the other Transaction Documents, are assigned and/or delegated to an entity other than Unison Agreement Corp.

**(b) Owner Assignments.** Absent Investor's prior written consent, which may be withheld in Investor's Permitted Discretion, Owner may not assign or otherwise transfer the Unison HomeOwner Agreement or the other Transaction Documents; except that Investor will generally not unreasonably withhold consent to an assignment: **(i)** between Owner and the Trustor of a Revocable Trust; or **(ii)** to Owner's spouse who acquires an undivided interest in the Property provided that in each case the assignee (including any Trustor, if applicable): **(A)** executes the Unison HomeOwner Agreement Transaction Documents, including a recordable addendum to both the Unison HomeOwner Recorded



© 2017, Unison 

Memorandum and the Unison HomeOwner Security Instrument, **(B)** executes a written notice of assignment (**"Exempted Owner Assignment"**), and **(C)** successfully completes the then-current education process required of Unison HomeOwner Agreement applicants. In the event of an Exempted Owner Assignment to the Trustee(s) of a Revocable Trust, the original Owner (i.e., the Trustor), jointly and severally, shall continue to remain liable under the Unison HomeOwner Agreement.

**9.7 Survival.** The following provisions, without limitation, shall survive the Expiration Date or any other termination of the Unison HomeOwner Agreement: **(a)** the obligations relating to a Solicited Sale Value under **Section 6.2**; **(b)** the indemnification provisions of **Section 9.1**; **(c)** obligations to pay any and all Protective Advances and Asset Administration Fees; **(d)** obligations to remove any liens on the Property and pay any Sales Commissions, Closing Costs and or other expenses properly chargeable to Owner in connection with a Third Party Sale or an Orderly Sale to the extent not discharged through Escrow; **(e)** the obligation to pay any Appraisal Expenses; **(f)** any and all covenants, representations and warranties of Owner; and **(g)** any and all other provisions which are required by their terms to be enforceable following expiration or termination, including, without limitation, provisions prescribing monetary remedies, fees, costs and expenses owed by Owner in connection with any Owner Event Of Default hereunder.

**9.8 Attorneys' Fees.** If a lawsuit or arbitration proceeding (other than an arbitration under **Section 8.6** above), is commenced in connection or arising out of the Option or the Unison HomeOwner Agreement or in connection with the interpretation, enforcement or protection of Investor's Rights, the prevailing party, as determined by the court or arbitrator, shall be entitled to recover court and other dispute resolution costs, attorneys' and experts' fees and costs, and fees and disbursements of Investor's in-house counsel that are directly attributable to the specific matters on which they prevailed (collectively "Attorneys' Fees"). Attorneys' Fees shall include, without limitation, Attorneys' Fees and costs incurred in any state, federal, appellate, or bankruptcy court, and in any bankruptcy case or insolvency proceeding, of any kind in any way related to the Option or the Unison HomeOwner Agreement, to the interpretation or enforcement of the parties' rights thereunder, or to the Property, and shall not for any purpose be treated as compensatory damages.

**9.9 Injunction.** Notwithstanding anything to the contrary in the Unison HomeOwner Agreement or otherwise, if Investor is stayed or enjoined from exercising the Option, commencing or initiating Option exercise or purchase procedures hereunder (whether as a result of Owner's bankruptcy or otherwise), or enforcing any other of Investor's Rights under the Unison HomeOwner Agreement, Investor's Rights shall not expire, and any deadline or notice period prescribed in the Unison HomeOwner Agreement which Investor is prevented or prohibited from observing by operation of law or by court order, shall automatically be stayed for the duration of such stay, injunction or legal prohibition.

**9.10 Choice of Law; Venue.** The Unison HomeOwner Agreement shall be determined under, governed by, and construed in accordance with California law, without regard to its conflict of law principles, unless the law of the jurisdiction where the property is located mandatorily governs, in which case the laws of such jurisdiction shall apply. The parties agree that all actions or proceedings arising in connection with the Unison HomeOwner Agreement shall be litigated or arbitrated only in the state and federal courts located in or having jurisdiction in the city or county where the Property is located. Owner waives any right to assert the doctrine of forum non conveniens or to object to such venue.

**9.11 Further Assurances.** The parties agree, from time to time, as and when requested by any other party to the Unison HomeOwner Agreement or its successors or assignees to execute and deliver, or cause to be executed and delivered, all such instruments; and take, or cause to be taken, all such further or other actions as may be reasonably necessary or desirable in order to implement the provisions and to effect the intent and purposes of the Unison HomeOwner Agreement. Such actions shall include, without limitation, all actions necessary by the parties to correct any error or inaccuracy in the Unison HomeOwner Agreement Transaction Documents or any other document related to the Unison HomeOwner Agreement, to ensure that such documents reflect the true and correct terms upon which the parties agreed to enter into the Unison HomeOwner Agreement, and/or to replace any missing or misplaced documentation, or to



© 2017, Unison

confirm and restate any authorities granted hereunder to the extent such authority is impacted by a change in any law, rule or regulation impacting its terms on the date hereof, to the fullest extent permissible under such changed, law, rule or regulation.

**9.12 Reliance by Investor.** Investor shall be entitled to rely, and shall be fully protected in relying, upon any writing, resolution, notice, consent, certificate, affidavit, letter, telegram, telefacsimile or other electronic method of transmission, telex or telephone message, statement or other document or conversation believed by it to be genuine and correct and to have been signed, sent, or made by the proper Person or Persons, and upon advice and statements of legal counsel, independent accountants and other experts selected by Investor, and counsel to Owner. Investor shall in all cases be fully indemnified by Owner under the Unison HomeOwner Agreement where Investor's action, or refusal to act, is in response to a request of or the consent of the Owner, and such request and any action taken or failure to act by Investor pursuant thereto shall be binding upon the Owner. The transmission or delivery of written materials to the Investor shall constitute a representation and warranty by Owner as to the accuracy and completeness of the information contained therein.

**9.13 Severability; Waivers.** Each provision of the Unison HomeOwner Agreement shall be severable from every other provision for the purpose of determining the legal enforceability of any provision. No waiver by Investor of any of its rights or remedies in connection with the Unison HomeOwner Agreement shall be effective unless such waiver is in writing and signed by Investor and Owner, and then any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. No delay or waiver by Investor in exercising any right shall be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse. To the extent that enforcement of any provision, or exercise of any right, under the Unison HomeOwner Agreement is held to be invalid or stayed or enjoined by a court of competent jurisdiction, then such provision shall be considered separately and apart from the remaining provisions, and any and all other remaining provisions shall continue to be fully enforceable under applicable law. To the extent that enforcement of any provision under the Unison HomeOwner Agreement, is deemed to violate a subsequently issued state or federal law, rule or regulation, then the parties agree that such provision shall be enforced exclusively with reference to principles of equity, and that any and all other remaining provisions shall continue to be fully enforceable in equity and under law. No waiver by Investor on any occasion shall affect or diminish Investor's rights thereafter to require strict performance by Owner of any provision of the Unison HomeOwner Agreement. Investor in its Permitted Discretion, may at any time, unilaterally waive the right to demand, in whole or in part, the future performance of Owner's obligations under the Unison HomeOwner Agreement, and reserves the right in its Permitted Discretion, at any time during the Term, to cancel the Option by notice in writing to Owner, or to rescind its election to exercise the Option, in which case any such prior election by Investor shall be deemed void *ab initio.*

**9.14 Notices.** Any notice, demand or request required under the Unison HomeOwner Agreement, unless telephone contact is specifically contemplated, shall be deemed given in writing by delivery to either the mailing address set forth in the Unison HomeOwner Option Agreement by overnight delivery by a nationally recognized overnight courier service, and may also be given to Owner by electronic mail transmission to the electronic mail address specified for Owner in the Unison HomeOwner Option Agreement. Any such notice, demand or request shall be deemed received on the Business Day either immediately following deposit with the overnight courier service, or the date of electronically stored record of e-mail transmission; provided, however, that the following notices shall not be deemed received by Investor from Owner until written confirmation of receipt made by Investor to Owner: notices of default and notices of sale in connection with secured liens on the Property; notices of delinquency in tax or insurance payments on the Property; notices of the death of an Owner; and notices of the commencement of legal or other action concerning the Property, or of bankruptcy proceedings by Owner. Each party shall have the right to change the place to which notice shall be sent or delivered or to specify one additional address to which copies of notices shall be sent, in either case by similar notice sent or delivered in the same manner to the other party.



© 2017, Unison 

**9.15 Entire Agreement; Amendment.** Schedule A, and Exhibits A, B, and C below, are incorporated herein by this reference. The Transaction Documents and the other written agreements made by and between Owner and Investor as of the Effective Date together constitute the entire agreement between the parties pertaining to the subject matter contained in them. Except as expressly agreed in writing, all prior agreements, understandings, representations, warranties, statements, and negotiations between the parties, if any, whether oral, electronic or written, relating to the Property, the Option, the Unison HomeOwner Agreement, the other Transaction Documents, and the transaction which is the subject matter thereof, including but not limited to any and all offer letters, terms sheets and earlier drafts and versions of other documents and agreements, are superseded and merged into the Unison HomeOwner Agreement. No supplement, modification or amendment of the Unison HomeOwner Agreement shall be binding unless in writing and executed by the party against whom enforcement is sought.

**9.16 Headings.** Article and Section headings are for reference only and shall not affect the interpretation or meaning of any provisions of the Unison HomeOwner Agreement.

**9.17 Third-Party Beneficiaries.** The Unison HomeOwner Agreement is entered into for the protection and benefit of Investor and Owner and their respective permitted successors, affiliates and assignees with regard to their respective present and contingent ownership interests in the Property. No other Person shall have any rights or causes of action under the Unison HomeOwner Agreement.

**9.18 Days of the Week; Time Periods.** Whenever the word "day(s)" is used in any of the Transaction Documents, it shall refer to calendar day(s) unless it is expressly identified as being "**Business Day(s)**". When any date referred to falls on a day of the week that is other than a Business Day, then such date shall, for all purposes (unless otherwise required by statute), be deemed to be the Business Day immediately following such date. Whenever an anniversary date of the Effective Date is applied, its applicable expiration shall be at 11:59 p.m., Pacific Time, on the day immediately preceding the anniversary date.

**9.19 Counterparts; Electronic Signatures.** The Unison HomeOwner Agreement Transaction Documents may be executed in counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same agreement. A signed copy of any of the Transaction Documents which is transmitted by a party to another party via facsimile or by electronic means shall be binding on the signatory to that copy.

**9.20 WAIVER OF JURY TRIAL. TO THE FULLEST EXTENT PERMITTED BY LAW, INVESTOR AND OWNER HEREBY VOLUNTARILY, UNCONDITIONALLY AND IRREVOCABLY WAIVE TRIAL BY JURY UNDER ALL CIRCUMSTANCES WHETHER IN ANY LITIGATION OR PROCEEDING IN A STATE OR FEDERAL COURT RELATED TO, OR ARISING OUT OF, THE TRANSACTION DOCUMENTS OR THE OBLIGATIONS OR TRANSACTIONS CONTEMPLATED BY THE UNISON HOMEOWNER AGREEMENT, INCLUDING, WITHOUT LIMITATION, ALL CLAIMS OR DISPUTES HOWEVER ARISING (INCLUDING TORT CLAIMS AND CLAIMS FOR BREACH OF DUTY) BETWEEN INVESTOR AND OWNER.**



© 2017, Unison

## ARTICLE TEN
## CALCULATIONS

**10.1**

**(a)** The "Investor Proceeds" under this Unison HomeOwner Agreement shall be defined and calculated as follows:

Ending Agreed Value *multiplied by* Investor Percentage

*minus* the Unison Purchase Price Balance.

**(b)** The "Unpaid Owner Obligations" under this Unison HomeOwner Agreement shall be defined and calculated as the sum of any and all monetary amounts owed to Investor as unreimbursed Protective Advances, unpaid interest, fees and other charges associated with Protective Advances; and unpaid Asset Administration Fees.

**(c)** The "Investor Interest" under this Unison HomeOwner Agreement shall be defined and calculated as the Investor Proceeds, if any, *plus* the Unpaid Owner Obligations, if any.

**(d)** Following Investor's exercise of the Option, Owner may terminate Investor's Option to purchase an undivided percentage interest in and to the Property by tendering to Investor the amount (if any) of the Investor Interest as calculated herein.

**10.2** In any calculation of the Investor Proceeds or Investor Interest made in connection with **(a)** circumstances of fraud, bad faith, or material misrepresentation or nondisclosure by Owner; **(b)** any transfer or sale, or attempted transfer or sale, of the Property by Owner in violation of the terms of the Unison HomeOwner Agreement, or **(c)** other circumstances of prolonged, material and uncured default by Owner under the terms of the Unison HomeOwner Agreement, the Unison Purchase Price Balance may, in Investor's Permitted Discretion, be reduced by an amount equal to ten percent (10%) of the Unison Investment Payment.**10.3** The Ending Agreed Value of the Property under the Unison HomeOwner Agreement is calculated as:

**Base Ending Agreed Value** (as set forth in **Section 10.4** below)

*minus any* Remodeling Adjustment*

*plus any* Deferred Maintenance Adjustment

*If there is a Negative Remodeling Adjustment, the absolute value of that number is added rather than subtracted.

**10.4 Base Ending Agreed Values.** The "Base Ending Agreed Values" applicable under the terms of the Unison HomeOwner Agreement are as follows:

**(a)** In any Option exercise on Permitted Sale of the Property following the third year anniversary of the Effective Date: the Effective Sale Price.

**(b)** In any Option exercise on Permitted Sale of the Property prior to the third year anniversary of the Effective Date: the greater of the Effective Sale Price or the Original Agreed Value.

**(c)** In any Option exercise on sale of the Property which is not a Permitted Sale, or is a Sale By Owner Transaction, an Intrafamily Transaction, a sale to a buyer that is not a Natural Person, or a sale



© 2017, Unison 

with respect to which Investor has elected to apply its rights under **Section 3.5** above: either the Effective Sale Price, or an Appraised Value of the Property, in Investor's Permitted Discretion.

**(d)** In any Option exercise at Term: the Appraised Value of the Property.

**(e)** In any Option exercise upon death of the Last Surviving Owner wherein the Property is not sold to a Third Party Buyer in a Permitted Sale: the Appraised Value of the Property.

**(f)** Following any Owner Event Of Default which is not remedied by an Orderly Sale, or in any calculation of an Investor Bid Amount in connection with a foreclosure sale of the Property: the greatest of the **(i)** Original Agreed Value, or **(ii)** the highest Appraised Value of the Property calculated between the date of the first Owner Event Of Default through the date of recording of Investor's release and reconveyance of the Option and the Unison HomeOwner Agreement Transaction Documents.

**(g)** In any allocation of insurance proceeds: the Appraised Value of the Property as it existed immediately prior to the destruction or damage, or if valuing the Property by Appraisal is not possible due to the destruction or damage, the Property value immediately prior to the destruction or damage as determined by some other reasonable, customary and appropriate process based on an expert third party opinion obtained by Investor.

**(h)** In any total condemnation of the Property, or partial condemnation in which the Option has been exercised: the greater of: the Net Condemnation Proceeds under **Section 8.17**, or the Appraised Value of the Property as it existed immediately prior to the condemnation, or if valuing the Property by Appraisal is not possible due to the condemnation, the Property value immediately prior to the condemnation as determined by some other reasonable, customary and appropriate process based on an expert third party opinion obtained by Investor.

**(i)** In any Special Termination: the greater of the Appraised Value of the Property at the time of Special Termination, or the Solicited Sale Value.

**(j)** In any Orderly Sale, any one of the following, in Investor's Permitted Discretion: **(i)** the Effective Sale Price; **(ii)** the Original Agreed Value; **(iii)** the highest Appraised Value of the Property calculated between the date of the first Owner Event Of Default through the date of recording of Investor's release and reconveyance of the Option and the Unison HomeOwner Agreement Transaction Documents; or **(iv)** such other Base Ending Agreed Value as may be agreed by Owner and Investor in writing.

[Signatures on following page.]



© 2017, Unison

**READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. EXERCISE OF THE UNISON HOMEOWNER OPTION OR OTHER ENFORCEMENT OF THE TERMS OF THE UNISON HOMEOWNER AGREEMENT MAY RESULT IN THE SALE OF YOUR PROPERTY. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH INVESTOR AND/OR INVESTOR'S AGENT(S), INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THE UNISON HOMEOWNER OPTION AGREEMENT, THIS UNISON HOMEOWNER COVENANT AGREEMENT, THE UNISON HOMEOWNER RECORDED MEMORANDUM, THE UNISON HOMEOWNER SECURITY INSTRUMENT, AND ANY OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND INVESTOR AS OF THIS EFFECTIVE DATE.**

IN WITNESS WHEREOF, intending to be legally bound, the parties have executed this Unison HomeOwner Covenant Agreement as of the Effective Date.

**INVESTOR:**

Unison Agreement Corp.

By: [signature]
Ismael Casas, Jr.

Title: Vice President

Date Signed: 02/22/2019

**OWNER:**

By: Joshua Christopher Parker [signature]
Joshua Christopher Parker

Date Signed: 2/20/2019

By: ____________________

Date Signed: ____________________

By: ____________________

Date Signed: ____________________

By: ____________________

Date Signed: ____________________



© 2017, Unison

## SCHEDULE A

## DEFINITIONS

As used in the Unison HomeOwner Agreement, the following terms shall have the meanings specified below:

**Actual Value**. Is defined in **Section 8.3(b)(ii)(A).**

**Appraisal.** The process of determining value of the property by Appraisal(s) as described in **Section 8.5**, and any appraisal of the Property under **Section 8.5**.

**Appraisal Expenses.** All fees and expenses owed to third parties (but excluding Attorneys' Fees) in connection with an appraisal or other valuation of the Property.

**Appraised Value.** The value of the Property determined in accordance with the procedures set forth in **Section 8.5**.

**Approved Subsequent Lien.** A lien upon the Property securing an Approved Subsequent Loan that is perfected after the Effective Date.

**Approved Subsequent Loan.** A loan or other obligation secured by the Property that is not prohibited under **Section 8.9(a)(iii)** of the Unison HomeOwner Covenant Agreement or otherwise approved in writing by Investor, as so secured, after the Effective Date.

**Asset Administration Fees.** Fees, costs and charges of the type further described in **Section 8.12**, which Asset Administration Fees are designed to compensate the Asset Administrator for the time, effort, costs and expenses incurred in responding to requests from Owner or Events Of Default by Owner under the Unison HomeOwner Agreement or in paying and reimbursing customary, reasonable, bona fide out of pocket costs charged to Asset Administrator by third parties performing such actions pursuant to the Unison HomeOwner Agreement.

**Asset Administration Fee Schedule.** A written schedule of regularly imposed fees for certain life events of the Unison HomeOwner Agreement, a copy of which is provided to Owner in connection with application for, and execution of, a Unison HomeOwner Agreement.

**Asset Administrator.** The entity responsible for monitoring Owner's compliance with, and discharging Investor's responsibilities under, the Unison HomeOwner Agreement. The Asset Administrator may be Unison Agreement Corp.

**Attorneys' Fees.** All court and other dispute resolution costs, attorneys' and experts' fees and costs, and fees and disbursements of Investor's in-house counsel that are directly attributable to the specific matters on which a party prevailed. Attorneys' Fees shall include, without limitation, Attorneys' Fees incurred in any state, federal, appellate, or bankruptcy court, and in any bankruptcy case or insolvency proceeding, of any kind in any way related to the Unison HomeOwner Agreement, Investor's Rights, or to the interpretation or enforcement of the parties' rights under the Unison HomeOwner Agreement, Investor's Rights or the Property.

**Base Ending Agreed Value.** The Ending Agreed Value of the Property before any Remodeling Adjustment or Deferred Maintenance Adjustment, as set forth in **Section 10.4**.

**Business Day.** Any day other than a Saturday, a Sunday, Good Friday, the day after Thanksgiving, or a day on which commercial banks in New York or California are required or authorized to be closed.

**Closing Costs.** All **(a)** ordinary and customary costs in connection with the Unison HomeOwner Agreement transaction or any subsequent sale or other transfer of the Property or any assignment or exercise of the Option related to such transfer, including, without limitation, recording fees and costs, reconveyance fees, Escrow fees, title insurance fees or fees incurred in obtaining the **Confirmation Of Title** elected by Investor, transfer taxes and documentary transfer taxes, and **(b)** federal, state or local taxes (excluding income taxes) arising, incurred or owed in connection with **(i)** Investor's exercise or sale of the Option, **(ii)** a sale of the Property or a Special Termination **(iii)** any related closing thereof; or **(iv)** any related Escrow. However, the term "Closing Costs" shall not include costs that are owed or incurred by a third party other than Investor in connection with the Property Purchase or a sale of the Property to a third party.

**Confirmation Of Title.** Confirmation of good and marketable title in and to the Property in fee simple and free of any liens or encumbrances of whatever character, subject only to the Permitted Encumbrances, to be provided, in Investor's Permitted Discretion, in the form either of a policy of title insurance issued to, or for the benefit of, Investor or Investor's assignee at the time that the Unison HomeOwner Agreement is entered into and insuring Investor's or Investor's assignee's rights under the



© 2017, Unison 

Unison HomeOwner Agreement or of a written title report, abstract of title or other title search documentation reflecting, to Investor's satisfaction, confirmation of good and marketable title to Investor's undivided fractional interest in the Property.

**Deferred Maintenance Adjustment.** An amount equal to Investor's commercially reasonable estimate of the dollar amount of any deferred maintenance or diminution in Property value caused by conditions or defects which either were known or should have been known by Owner as of the Effective Date, or which occurred or developed during the Term, as further described in **Section 8.4**, as determined by Investor in connection with any of the computations to be made under the Unison HomeOwner Agreement.

**Effective Date.** Is defined in the first sentence of the Unison HomeOwner Option Agreement and **Section 1.1** of the Unison HomeOwner Covenant Agreement.

**Effective Sale Price.** The monetary amount for which the Property is to be sold or transferred by Owner or Investor, as applicable, to an Third Party Buyer, as adjusted, as set forth below. The Effective Sale Price shall be the sum of all amounts set forth or that would otherwise be set forth in Section 400 of the HUD-1 Form (or any successor form) prepared by an Escrow Holder (which shall include the fair market value of any non-cash consideration received by, or for the benefit of, Owner and/or Investor in connection with the sale of the Property). Investor may elect to review the sales contract, and if Investor, through the exercise of its reasonable discretion, determines that the fair market value of any non-cash consideration is not properly reflected in the aforementioned Section 400, make a good faith reasonable determination of the value of any non-cash consideration to be received by Owner and/or Investor and include it in the calculation of Effective Sale Price. The calculation of the Effective Sale Price shall not include any deduction for any: **(a)** Closing Costs; **(b)** liens on the Property; **(c)** outstanding taxes; **(d)** Sales Commissions; **(e)** Appraisal Expenses; **(f)** loans secured by the Property; **(g)** credits made by Seller to closing costs; and/or **(h)** amounts payable to Investor hereunder.

**Ending Agreed Value.** Is defined in **Section 10.3.**

**Escrow.** A transaction settlement, typically consisting of an exchange and disbursement of consideration, costs, and proceeds, and documentation and recording of clear title to the Property, using the services of an Escrow Holder.

**Escrow Holder.** A title company reasonably acceptable to Investor or any neutral third party Escrow agent, settlement agent, title agent or attorney closing firm that closes or settles any transaction contemplated hereunder.

**Event Of Default.** Is defined in **Article Seven.**

**Exempted Owner Assignment.** Is defined in **Section 9.6(b)**.

**Exercise Event.** An event giving rise to the Investor's contractual right to exercise the Option under the Unison HomeOwner Agreement, including sale or transfer of the Property by Owner, death of the Last Surviving Owner; expiration of the Unison HomeOwner Agreement Term; material and uncured Event of Default; or acceptance by Owner of an offer of Option exercise and Orderly Sale.

**Expiration Date.** The day immediately preceding the thirtieth (30th) anniversary of the Effective Date, subject to automatic extension under **Sections 3.3, 4.3(b)** and **5.3(b)** of the Unison HomeOwner Covenant Agreement.

**Hazardous Materials.** Is defined in **Section 8.18.**

**Hypothetical Value.** Is defined in **Section 8.3(b)(ii)(A).**

**Intrafamily Transaction.** A purchase, sale or transfer of the Property proposed between Owner and any family member of Owner by blood or marital relation.

**Investor.** Is defined in **Section 1** of the Unison HomeOwner Option Agreement and **Section 1.1** of the Unison HomeOwner Covenant Agreement.

**Investor Bid Amount.** The liquidated amount of the Investor bid to be made in connection with any foreclosure sale of the Property.

**Investor Condemnation Credit.** Is defined in **Section 8.17(b).**

**Investor Interest.** The Investor Proceeds (if any) plus Unpaid Owner Obligations (if any).



© 2017, Unison

**Investor Percentage.** The undivided percentage interest in and to the Property set forth in the Unison HomeOwner Option Agreement which Investor has the option to purchase and Owner has agreed to sell under the Unison HomeOwner Agreement.

**Investor Proceeds.** The Ending Agreed Value (as adjusted if applicable), multiplied by the Investor Percentage, minus the Unison Purchase Price Balance.

**Investor's Rights.** All interests and rights that Investor has or may have with regard to the Property (matured or unmatured, contingent or non-contingent, present or prospective) by virtue of the Option, under the Unison HomeOwner Agreement, or any other document executed by Owner in connection therewith, whether the Option has or has not been exercised.

**Irrevocable Limited Power Of Attorney.** A notarized Irrevocable Limited Power Of Attorney executed by Owner substantially in the form annexed hereto as Exhibit A, empowering Investor (although only a co-owner of the Property) exclusively to market, advertise, sell and transfer title to one hundred percent (100%) of the Property, including Owner's interest therein, if and when Investor and Owner have elected to pursue an Orderly Sale.

**Last Surviving Owner.** The last surviving Person who appears as a signatory to the Unison HomeOwner Agreement (or any mutually executed written addendum thereto).

**Maximum Authorized Debt.** The maximum principal amount of total indebtedness secured by any lien on the Property that Owner is permitted to incur under the Unison HomeOwner Agreement, which amount is specified in **Section 8** of the Unison HomeOwner Option Agreement. In the case of an open-end line of credit, the unused portion of any committed line of credit shall be considered principal indebtedness for purposes of determining whether the total indebtedness exceeds the Maximum Authorized Debt.

**Natural Person.** An individual, as opposed to a corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government, or any agency or political subdivision of any of the foregoing

**Negative Remodeling Adjustment.** Is defined in **Section 8.3(e)** and **Section 10.3**.

**Net Condemnation Proceeds.** Is defined in **Section 8.17(a)**.

**Non-Owner Occupant.** Any and all adult co-occupants of the Property when those co-occupant(s), whether spouses, domestic partners, family members, or others, are not on official record title to the Property and are not signatories to the Unison HomeOwner Agreement Transaction Documents.

**Non-Owner Occupant Disclosure.** The **"Notice and Acknowledgment Regarding Spouses, Partners and Co-Occupants Who Are Not Signatories to the Unison HomeOwner Agreement"** substantially in the form annexed hereto as Exhibit B.

**Notice Of Intention To Sell.** The written notice given by Owner to Investor under **Section 3.2(a)** of Owner's decision to market, sell or transfer the Property at least 45 days (or within a commercially reasonable time) prior to the closing of the sale.

**Option.** The right of Investor, pursuant to the Unison HomeOwner Agreement to acquire an undivided percentage interest in and to the Property in exchange for the Unison Investment Payment, the future payment of the Unison Purchase Price Balance, and such other consideration as is set forth in the Unison HomeOwner Agreement.

**Option Exercise Notice.** A notice given in the manner prescribed by **Section 3** of the Unison HomeOwner Option Agreement, constituting Option exercise by Investor.

**Orderly Sale.** Is defined in **Section 7.4**.

**Original Agreed Value.** The value of the Property determined by Investor and agreed to by Owner as of the Effective Date, as specified in **Sections 4** and **10** of the Unison HomeOwner Option Agreement.

**Owner.** All of the Persons, individually and collectively, who appear on the record title to the Property as holding fee simple title to one hundred percent (100%) of the Property as of the Effective Date. "Owner" shall be defined as including **"Owner's Estate"** following the death of the Last Surviving Owner whenever such definition is reasonable or necessary to effectuate the intent and purposes of the Unison HomeOwner Agreement, including, without limitation, as applicable in **Articles Two, Three, Six, Seven, Eight, Nine** and **Ten** of the Unison HomeOwner Covenant Agreement.

**Owner's Estate.** Collectively, the heirs, beneficiaries and/or assignees of Owner charged with control, maintenance and disposition of the Property following the death of the Last Surviving Owner.



© 2017, Unison 

**Permitted Discretion.** Investor's sole and absolute discretion, exercised in good faith, for any reason.

**Permitted Encumbrances.** All licenses, easements, equitable servitudes, public bond obligations, and other conditions, covenants, restrictions and rights to which the Property is subject at the time the Unison HomeOwner Agreement becomes effective: **(i)** that are stated as exceptions on the Confirmation Of Title, or **(ii)** to which Investor has expressly agreed in writing that the Property will remain subject following any exercise of the Option by Investor. "Permitted Encumbrances" do not include any Senior Loans, Senior Liens, or any other liens that secure the payment of any loans or the performance of any obligations owed to any creditor.

**Permitted Sale.** A Third Party Sale by Owner which fully complies with **Article Three** or is otherwise expressly consented to in writing by Investor.

**Permitted Senior Lien.** A perfected lien upon the Property securing a Permitted Senior Loan that is senior to the lien of the Unison HomeOwner Security Instrument, obtained in connection with, or that was approved in writing by Investor upon Investor's execution of the Unison HomeOwner Agreement.

**Permitted Senior Loan.** An obligation secured by a Permitted Senior Lien, including, without limitation, any and all principal, interest, and expenses.

**Person.** An individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government, or any agency or political subdivision of any of the foregoing.

**Principal Residence.** Is defined in **Section 8.8(a)**.

**Prohibited Use.** Is defined in **Section 8.8(b)**.

**Property.** The residential real property that is the subject of the Unison HomeOwner Agreement, the legal description of which is set forth as Exhibit A to the Unison HomeOwner Option Agreement. The Property shall include only the real property described in that Exhibit A and the improvements and fixtures appurtenant to that real property, and not any other personal property of Owner.

**Protective Advances.** Any advances made by Investor that are the primary responsibility of Owner under the Unison HomeOwner Agreement but are made by Investor for purposes of protecting the Investor Percentage and Investor's Rights, as more completely described in **Section 8.11**.

**Remodeling Adjustment**. The adjustment, defined in **Section 8.3**, and calculated pursuant to **Section 8.5**, that takes into account the increase or decrease in market value attributable to certain material modifications and/or Prohibited Uses of the Property by Owner during the Term of the Unison HomeOwner Agreement.

**Revocable Trust.** A revocable trust, revocable living trust, *inter vivos* trust, revocable family trust or similar trust established in accordance with the laws of any state.

**Revocable Trust Rider.** A rider to the Unison HomeOwner Security Instrument required to be executed by Owner in the event Owner elects to purchase the Property in the name of a revocable trust.

**Right Of First Refusal.** The right of Owner under **Section 7.4(f)** to purchase the Property on the same terms the Property is proposed to be sold to a third party in an Orderly Sale.

**Sale By Owner Transaction.** A proposed sale of the Property conducted either without a public listing of the Property on the open market or where the terms and conditions of the sale have been principally negotiated by Owner without agency representation.

**Sales Commissions.** All broker fees, sales commissions, finder fees and all other fees and costs owed to any broker, real estate agent or finder and incurred in connection with a sale or transfer of the Property or any interest in the Property.

**Senior Liens.** Liens on the Property that are perfected prior to or otherwise have priority over the lien created by the Unison HomeOwner Security Instrument and which are approved by Investor, as so secured.

**Senior Loans.** Loans or other obligations that are secured by Senior Liens.

**Solicited Sale Value.** If within ninety (90) days prior to or following the closing of a Special Termination under **Section 6.2** Owner or Investor receives, or has pending, a written offer for the purchase of the Property, the Solicited Sale Value shall equal



© 2017, Unison 

the gross amount of such offer, with no deduction or adjustment for any costs that Owner may incur if a sale of the Property were to be completed pursuant to such offer.

**Special Damages For Failure To Insure.** Are defined in **Section 8.16(f)**.

**Special Termination.** Is defined in **Section 6.2**.

**Special Termination Price.** Is defined in **Section 6.2**.

**Term.** The term of the Unison HomeOwner Agreement, commencing on the Effective Date and expiring on the Expiration Date, and as may be automatically extended under **Sections 3.3, 4.3(b)** and **5.3(b)** of the Unison HomeOwner Covenant Agreement.

**Termination.** Any non-exercise termination of the Option prior to the expiration of the Term.

**Third Party Buyer.** The Person that purchases, or proposes to purchase, the Property in a Third Party Sale. This Person may be Investor.

**Third Party Sale.** A sale of all, or of an interest in, the Property under the Unison HomeOwner Agreement. Any Third Party Sale by Owner must also be a Permitted Sale.

**Transaction Documents.** The Unison HomeOwner Option Agreement, the Unison HomeOwner Covenant Agreement, the Unison HomeOwner Recorded Memorandum, the Unison HomeOwner Security Instrument and any and all mutually executed riders, amendments, exhibits or supplements thereto.

**Trustor(s).** The Person or Persons designated as the "trustor" or "settlor" of a Revocable Trust in its formation documents.

**Trustee(s).** The Person or Persons designated as the "trustee" of a Revocable Trust in its formation documents and any subsequent amendments, and any successor trustees under such Revocable Trust.

**Unison HomeOwner Agreement.** The Unison HomeOwner Option Agreement, Unison HomeOwner Covenant Agreement, Unison HomeOwner Recorded Memorandum, and Unison HomeOwner Security Instrument, and riders thereto, executed by and between Owner and Investor, together with all exhibits, schedules, attachments, and all amendments, supplements, and addenda now or hereafter executed by the parties.

**Unison HomeOwner Covenant Agreement.** This Unison HomeOwner Covenant Agreement executed by and between Owner and Investor.

**Unison Investment Payment.** The portion of the Unison Purchase Price paid to Owner for the Option in advance, at the commencement of the Unison HomeOwner Agreement Term.

**Unison HomeOwner Option Agreement.** The Unison HomeOwner Option Agreement executed by and between Owner and Investor by which Owner grants the Option to Investor.

**Unison Purchase Price.** The total amount Investor has agreed to pay or credit for Investor's purchase of an undivided percentage interest in and to the Property as set forth (or adjusted) under **Sections 1** and **10** of the Unison HomeOwner Option Agreement, as distinguished from the price which a future buyer may pay to purchase the Property.

**Unison Purchase Price Balance.** The Unison Purchase Price minus the Unison Investment Payment previously given to Owner, as set forth in **Sections 1** and **10** of the Unison HomeOwner Option Agreement, and subject to reduction under **Sections 7.3(d) and 10.2** of the Unison HomeOwner Covenant Agreement.

**Unison HomeOwner Recorded Memorandum.** The memorandum, entered into by Investor and Owner concurrently with the Unison HomeOwner Agreement, which shall be recorded in the public records evidencing: **(a)** the provisions of the Unison HomeOwner Agreement running with the land; and **(b)** the Option.

**Unison HomeOwner Security Instrument.** A deed of trust or mortgage, and security agreement, together with any riders thereto, given by Owner concurrently with this Unison HomeOwner Covenant Agreement, and the Unison HomeOwner Option Agreement, securing the Owner's performance under the Unison HomeOwner Agreement by a lien on Owner's entire interest in the Property, which shall be recorded in the public records and which forms a part of the Unison HomeOwner Agreement.

**Unpaid Owner Obligations.** Is defined in **Section 3.3**.



© 2017, Unison 

**Exhibit A**

**IRREVOCABLE LIMITED POWER OF ATTORNEY**

**TO BE EXECUTED AND GRANTED BY OWNER TO INVESTOR UPON MUTUAL AGREEMENT TO PURSUE ORDERLY SALE [MAY DIFFER FROM STATE TO STATE]**

**Irrevocable Limited Power of Attorney Coupled with an Interest. Pursuant to the terms of the Unison HomeOwner Agreement ("Unison HomeOwner Agreement") entered into by and between as of ("Effective Date"), and subsequent agreement to pursue the remedy of Orderly Sale under Section 7.4 of the Unison HomeOwner Covenant Agreement, Owner is executing this notarized Power of Attorney designating Investor and its successors and assignees as its true and lawful agents and attorneys-in-fact (with full power of substitution) in Owner's name and on Owner's behalf (in any and all capacities) for the sole and limited purpose of authorizing and empowering Investor exclusively (although only a co-owner of the Property) to market, advertise, sell and transfer title to one hundred percent (100%) of the Property, including Owner's interest therein. Accordingly, Investor or its successor or assignee and the other parties designated above as attorneys-in-fact, shall have the exclusive power and authority to do all acts and to execute any and all documents, instruments and agreements as such agents and attorneys-in-fact deem necessary or advisable:**

1. **to solicit buyers for the entire Property and offers for a sale of the entire Property;**

2. **to advertise the entire Property for sale on reasonable and customary terms and conditions for a price that is reasonable in view of the then market conditions;**

3. **to sell the entire Property and transfer Owner's entire interest in, and title to, the Property on usual and customary terms and conditions, the proceeds of which shall be allocated to Owner and Investor as provided in the Unison HomeOwner Agreement; and**

4. **to encumber the Property by obtaining loans secured by liens on the Property, in order to raise those funds reasonably required to improve, repair and prepare the Property for sale at a competitive price in its market.**

**The undersigned hereby acknowledge that this power of attorney is coupled with an interest in the Property pursuant to the Unison HomeOwner Agreement and that, as a result, in addition to any consequences under law, this power is irrevocable and will survive the undersigned's death or incompetence. All acts that the attorneys-in-fact shall lawfully do, or cause to be done, under the authority of this Power of Attorney are hereby expressly approved, ratified and confirmed.**

**This Power of Attorney is a durable power of attorney and shall remain in force despite any Owner's subsequent incapacity or death.**

**In the event this Power of Attorney, or any portion thereof, is held to be invalid or stayed or enjoined by a court of competent jurisdiction, then such provision or portion thereof shall be considered separately and apart from every other provision of the Unison HomeOwner Agreement for the purpose of determining the legal enforceability of every such other provision, and Owner agrees to execute and deliver to Investor a replacement Power of Attorney acceptable to the investor in its reasonable discretion.**

**Owner and Investor agree that if Investor is not allowed to exercise its rights under this Power of Attorney the damages to Investor would be irreparable and extremely difficult to estimate, making money damages or any remedy at law inadequate. Thus, in addition to any other rights and remedies available to it in law, equity or otherwise, Investor shall be entitled to specific performance of the provisions of this instrument.**

**From time to time in the future as long as the Unison HomeOwner Agreement has not, or is not, terminated, Owner shall, at Investor's request, which shall be at Investor's Permitted Discretion, execute such additional or replacement powers of attorney as Investor may deem necessary identifying such other Investor officers as Owner's attorneys-in-fact as Investor deems reasonably necessary for purposes enumerated herein.**

**THIS POWER OF ATTORNEY SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL SUCH TIME AS THE UNISON HOMEOWNER AGREEMENT TERMINATES OR IS TERMINATED. Owner hereby ratifies and affirms all that such attorney-in-fact, or any substitute or substitutes, may do by virtue of the power conveyed hereby.**

**EXHIBIT ONLY – DO NOT SIGN** ______________ **DATE:** ______________
**Signature**

______________
**Print Name**

**EXHIBIT ONLY – DO NOT SIGN** ______________ **DATE:** ______________
**Signature**

______________
**Print Name**



© 2017, Unison

**ACKNOWLEDGMENT**

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

State of ______________________________ )
)
County of ______________________________ )

On ____________________, 20__, before me, ______________________________ (insert name and title of the officer) personally appeared ____________________________________________, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ______________ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ________________________ (Seal)



© 2017, Unison

**Exhibit B**

## NOTICE AND ACKNOWLEDGMENT REGARDING SPOUSES, PARTNERS AND CO-OCCUPANTS

## WHO ARE NOT SIGNATORIES TO THE UNISON HOMEOWNER AGREEMENT

Unison HomeOwner Agreement ID Number:

This Notice and Acknowledgement Form ("**Form**") contains important disclosures about the rights and liabilities of spouses, domestic partners, family members and other co-occupants of a Property ("**Property**") subject to a **Unison HomeOwner Agreement** who are not signatories to the Unison HomeOwner Agreement (collectively referred to as "**Non-Owner Occupant(s)**"). Please READ IT CAREFULLY. This Form must be signed by all homeowners entering into and executing a Unison HomeOwner Agreement ("**Unison Signatory(ies)**") and by all Non-Owner Occupants. Any owner executing a Unison HomeOwner Agreement ("**Owner**") is responsible for ensuring that a complete and accurate version of this Form is returned to Unison Agreement Corp. ("**Unison**") with the signatures of all Non-Owner Occupants as a prerequisite to entering into the Unison HomeOwner Agreement.

The rights of a Non-Owner Occupant to occupy or retain possession of the Property following the death of the Last Surviving Owner who is a party to the Unison HomeOwner Agreement, Option exercise, or an Owner Event Of Default under the Unison HomeOwner Agreement, may be significantly affected by the operation of the Unison HomeOwner Agreement. This is because the Unison HomeOwner Agreement is an option agreement which gives Unison the right to exercise its option and purchase an undivided percentage interest ("**Investor Percentage**") in the Property upon certain triggering events. *Two such triggering events are the death of the Last Surviving Owner, or an Owner Event Of Default, regardless of whether Non-Owner Occupants are occupying the Property at that time.* A Non-Owner Occupant of a Property subject to a Unison HomeOwner Agreement will be required to settle Unison's option rights even if the Non-Owner Occupant inherits the Property as the heir, beneficiary or survivor of an Owner. Depending on the appreciation of the Property during the term of the Unison HomeOwner Agreement, the amount required to settle Unison's option rights may be substantial. In addition, following an Event of Default (including default by Non-Owner Occupants), Unison may be entitled to exercise its recorded security interest and/or compel the sale of the Property, resulting in a Non-Owner Occupant losing possession and/or ownership thereof.

Unison cannot know who occupies the Property as a principal residence if those persons are not named on title. Unison must and will rely on the Owner to supply this information accurately.

The responsibility for notifying Unison of any change in the status of Non-Owner Occupants is also a continuing obligation of all Owners throughout the Term of the Unison HomeOwner Agreement. All Owners are responsible for returning a complete and accurate amended Form to Unison with the signatures of all Non-Owner Occupants, both at inception of the Unison HomeOwner Agreement, and in the event that any new Non-Owner Occupant not signatory to the Unison HomeOwner Agreement commences to occupy the Property as his or her principal residence, or in the event a non-adult occupant of the Property attains the age of 18, at any time during the Term.

In the event that a Unison Signatory wishes to add another person onto the title to the Property after entering into the Unison HomeOwner Agreement, he or she must execute the complete set of Unison HomeOwner Agreement legal documents and meet all then-current Unison HomeOwner Agreement education requirements. Unless and until these requirements are met, the individual will remain and must be identified to Unison as a Non-Owner Occupant of the Property subject to the option and contractual rights of Unison as above described.

All Owners acknowledge that they have read and understand this Form, and that they have been advised by Unison to consult independent legal counsel and estate planning professionals to ascertain the legal effects of the Unison HomeOwner Agreement on future possession and occupancy of the Property.



© 2017, Unison 

☐ I represent and warrant that there are no Non-Owner Occupants living in my Property.

Acknowledged and agreed:

| Owner: | Owner: |
| --- | --- |
| **EXHIBIT ONLY – DO NOT SIGN** | **EXHIBIT ONLY – DO NOT SIGN** |
| Date signed: ____________________ | Date signed: ____________________ |

☐ I represent and warrant that I have presented this form to and discussed its contents with all Non-Owner Occupants living in my Property. The names and signatures of all Non-Owner Occupants and their relation to me appear below.

Acknowledged and agreed:

| Owner: | Owner: |
| --- | --- |
| **EXHIBIT ONLY – DO NOT SIGN** | **EXHIBIT ONLY – DO NOT SIGN** |
| Date signed: ____________________ | Date signed: ____________________ |
| Non-Owner Occupant 1: | Non-Owner Occupant 2: |
| **EXHIBIT ONLY – DO NOT SIGN** | **EXHIBIT ONLY – DO NOT SIGN** |
| Print name: ____________________ | Print name: ____________________ |
| Relation to Owner: ____________________ | Relation to Owner: ____________________ |
| Non-Owner Occupant 3: | Non-Owner Occupant 4: |
| **EXHIBIT ONLY – DO NOT SIGN** | **EXHIBIT ONLY – DO NOT SIGN** |
| Print name: ____________________ | Print name: ____________________ |
| Relation to Owner: ____________________ | Relation to Owner: ____________________ |



© 2017, Unison

**Exhibit C**

**Asset Administration Fee Schedule**

There will be no fees charged for asset administration services.



© 2017, Unison

PLEASE COMPLETE THIS INFORMATION

RECORDING REQUESTED BY:
Vantage Point Title, Inc.

AND WHEN RECORDED MAIL TO:
Vantage Point Title, Inc.
25400 US Hwy 19 N, Ste 135
Clearwater, FL 33763
VPT File #: CA496141
VPC File #: VPC36171

DOC# 2019-0095255
Mar 18, 2019 12:57 PM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES: $208.00 (SB2 Atkins: $150.00)
PCOR: N/A
PAGES: 11

**MEMORANDUM OF UNISON HOMEOWNER AGREEMENT**
(Please fill in document title(s) on this line)

BORROWER NAME: Joshua Christopher Parker

BORROWER ADDRESS: 6081 Roselle Meadows Trail, San Diego, CA 92130

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Additional recording fee applies)

**Prepared by, recording requested by, and when recorded mail to:**

Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA 94126-6800

Unison HomeOwner Agreement ID Number:
FRX-128092

## MEMORANDUM OF UNISON HOMEOWNER AGREEMENT

This **MEMORANDUM OF UNISON HOMEOWNER AGREEMENT** ("**Unison HomeOwner Recorded Memorandum**") is entered into as of 02/19/2019 ("**Effective Date**") by and between JOSHUA CHRISTOPHER PARKER AN UNMARRIED MAN (individually or collectively "**Owner**") and Unison Agreement Corp., a Delaware corporation, and its successors and assignees ("**Benefited Party**"), whose address is 650 California Street, Suite 1800, San Francisco, CA 94108.

### MEMORANDUM OF UNISON HOMEOWNER AGREEMENT

Owner hereby declares that Owner has entered into that certain Unison HomeOwner Agreement ("**Unison HomeOwner Agreement**") with Benefited Party, as of the Effective Date, pursuant to which Owner grants and conveys to Benefited Party the option to purchase an undivided percentage interest in that certain real property (the "**Property**") described in attached **SCHEDULE A** ("**Option**") and pursuant to which Owner has made certain covenants and promises to, or for the benefit of, Benefited Party in connection with the Property, all as more particularly described and on the terms and conditions stated in the Unison HomeOwner Agreement. The percentage interest shall equal the Investor Percentage as specified in the Unison HomeOwner Option Agreement. The Option is irrevocable by Owner. The term of the Option shall commence on the Effective Date and shall expire at 11:59 p.m., Pacific Time, on the day immediately preceding the thirtieth (30th) anniversary of the Effective Date ("**Expiration Date**") (subject to certain extensions as set forth in the Unison HomeOwner Agreement). The terms of the Unison HomeOwner Agreement are hereby incorporated into this Unison HomeOwner Recorded Memorandum by this reference.

### MEMORANDUM OF COVENANTS RUNNING WITH THE LAND

This Unison HomeOwner Recorded Memorandum identifies the covenants and promises set forth in the Unison HomeOwner Agreement that run with the land and will be binding upon any party who acquires Owner's interest in the Property so long as the Unison HomeOwner Agreement has not expired or been terminated. The Unison HomeOwner Agreement covenants are deemed to be covenants running with the land within the meaning of Section 1460 of the California Civil Code so as to give it the broadest possible application, and include, without limitation:



© 2018, Unison

a. **Section 8.2** of the Unison HomeOwner Covenant Agreement which, among other things, requires Owner to maintain and repair the Property and to ensure that use of the Property complies with all applicable state, federal and local laws and regulations.

b. **Section 8.16** of the Unison HomeOwner Covenant Agreement which, among other things, requires Owner to maintain insurance on the Property against certain hazards.

c. **Section 8.10** of the Unison HomeOwner Covenant Agreement which, among other things, requires Owner to pay all taxes and assessments accruing on the Property.

d. **Section 8.8** of the Unison HomeOwner Covenant Agreement which, among other things, requires Owner to occupy the Property as Owner's principal residence and prohibits use of the Property for commercial or other non-residential purposes.

e. **Section 8.9** of the Unison HomeOwner Covenant Agreement which, among other things, restricts the ability of Owner to increase the amount of debt to third parties secured by liens on the Property beyond the Maximum Authorized Debt specified in the Unison HomeOwner Agreement, and requires Owner to keep the Property free of liens prohibited under the terms of the Unison HomeOwner Agreement or not otherwise approved by Benefited Party.

f. **Article Three** of the Unison HomeOwner Covenant Agreement which, among other things, restricts the right of Owner to transfer the Property other than as expressly permitted under the terms of the Unison HomeOwner Agreement.

[This space is intentionally left blank.]

RELEASE

This Unison HomeOwner Recorded Memorandum shall remain in full force and effect until released by a written termination or quitclaim deed executed and notarized by Benefited Party and recorded in the real property records for the county where the Property is located, or until extinguished by operation of law.

[Signatures appear on the following page.]



© 2018, **Unison**

READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH BENEFITED PARTY, INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE, ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS UNISON HOMEOWNER RECORDED MEMORANDUM, THE OTHER TRANSACTION DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND BENEFITED PARTY AS OF THE EFFECTIVE DATE.

IN WITNESS WHEREOF, the undersigned Benefited Party and Owner have each executed this Unison HomeOwner Recorded Memorandum as of the date set forth above.

**BENEFITED PARTY:**

Unison Agreement Corp., a Delaware corporation

By: [signature]

Name: Ismael Casas, Jr.

Title: Vice President

Date signed: 02/19/2019

**OWNER:**

By: Signed In Counterpart
Joshua Christopher Parker

Date signed: __________

By: __________

Date signed: __________

By: __________

Date signed: __________

By: __________

Date signed: __________

**Property Address:**

6081 Roselle Meadows Trl

San Diego, CA 92130



© 2018, Unison

READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH BENEFITED PARTY, INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE, ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS UNISON HOMEOWNER RECORDED MEMORANDUM, THE OTHER TRANSACTION DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND BENEFITED PARTY AS OF THE EFFECTIVE DATE.

IN WITNESS WHEREOF, the undersigned Benefited Party and Owner have each executed this Unison HomeOwner Recorded Memorandum as of the date set forth above.

**BENEFITED PARTY:**

Unison Agreement Corp., a Delaware corporation

By: Signed In Counterpart

Name: Ismael Casas, Jr.

Title: Vice President

Date signed: ______________________

**OWNER:**

By: [signature]
Joshua Christopher Parker

Date signed: 2/20/19

By: ______________________
Date signed: ______________________

By: ______________________
Date signed: ______________________

By: ______________________
Date signed: ______________________

**Property Address:**

6081 Roselle Meadows Trl

San Diego, CA 92130



© 2018, Unison

**BENEFITED PARTY'S ACKNOWLEDGMENT**

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

STATE OF CALIFORNIA)
) ss.
COUNTY OF SAN FRANCISCO)

On ___________________, 20____, before me ______________________________________, Notary Public, personally appeared ______________________________________________ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal. SEE "ATTACHED"

Signature

___________________________________ (seal)



© 2018, Unison 

# BENEFITED PARTY'S ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of San Francisco )

On February 19, 2019 before me, Amy M Marsili, Notary Public
(insert name and title of the officer)

personally appeared Ismael Casas Jr,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

AMY M. MARSILI
COMM. #2218169
NOTARY PUBLIC-CALIFORNIA
MARIN COUNTY
My Comm. Expires Oct. 14, 2021

WITNESS my hand and official seal.

Signature Amy M. Marisli (Seal)

Page 4

## OWNERS' ACKNOWLEDGMENT

**[Notary Acknowledgment(s) must be attached.]**

SEE "ATTACHED"



© 2018, **Unison**

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of: **California**

County of: **San Diego**

On 2/20/19 before me, **Frank L. Cannizzaro** Notary Public,

personally appeared, Joshua Christopher Parker

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is / are subscribed to the within instrument and acknowledged to me that he / she / they executed the same in his / her / their authorized capacity(ies), and that by his / her / their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

FRANK L. CANNIZZARO
COMM. # 2207077
NOTARY PUBLIC - CALIFORNIA
SAN DIEGO COUNTY
COMM. EXPIRES AUG. 22, 2021

NOTARY PUBLIC SIGNATURE
Frank L Cannizzaro

Memorandum of Union Honorma Agreement

Document Title

Page 8

## SCHEDULE A

## LEGAL DESCRIPTION

That certain real property situated in the City of San Diego, County of SAN DIEGO, State of California, described as follows:

See attached Exhibit "A" for legal description

APN/Tax ID Number/Parcel Identification Number: 305-161-27-00

[end of legal description]



© 2018, **Unison**

# EXHIBIT "A"

Real property in the City of San Diego, County of San Diego, State of California, described as follows:

PARCEL 1:

LOT 103 OF PACIFIC HIGHLANDS RANCH UNIT NO. 5.

THE FEE SIMPLE TITLE TO LOT 103 OF PACIFIC HIGHLANDS RANCH UNIT NO. 5 LOCATED IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 14754, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, CALIFORNIA ON MARCH 19, 2004.

PARCEL 2:

A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OVER THE PRIVATE DRIVES, STREETS, ALLEYS AND COMMON AREA OF THE ABOVE-REFERENCED TRACT MAP, AS PROVIDED FOR IN AND SUBJECT TO THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS, AND RESTRICTIONS FOR WEST PORTICO COMMUNITY ASSOCIATION RECORDED AUGUST 2, 2005 AS INSTRUMENT NO. 2005-0657428, IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, CALIFORNIA.

EXCEPT ALL OIL, ASPHALTUM, PETROLEUM, NATURAL GAS AND OTHER HYDROCARBONS AND ANY OTHER VALUABLE MINERAL SUBSTANCES AND PRODUCTS, AND ALL OTHER MINERALS, WHETHER OR NOT OF THE SAME CHARACTER HEREINBEFORE GENERALLY DESCRIBED, IN OR UNDER SAID LAND AND LYING AND BEING AT A VERTICAL DEPTH OF 500 OR MORE FEET BELOW THE PRESENT NATURAL SURFACE OF THE GROUND, BUT WITHOUT RIGHT OF ENTRY ON THE SURFACE OR WITHIN A VERTICAL DEPTH OF 500 FEET BELOW THE PRESENT SURFACE OF THE GROUND.

PARCEL 3:

AN EXCLUSIVE EASEMENT OVER AND UPON THAT PORTION OF LOT 104 OF SAID MAP, AS DEPICTED AND SHOWN ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART THEREOF, FOR THE PURPOSES DEFINED IN ARTICLE IX OF THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS HEREIN REFERRED TO. THIS EASEMENT IS APPURTENANT TO AND FOR THE USE AND BENEFIT OF THE OWNER(S) OF LOT 103 AND THEIR SUCCESSORS. THE OWNER OF PARCEL 1 SHALL BE RESPONSIBLE FOR ALL MAINTENANCE, REPAIR AND COSTS OF THE SIDE YARD EASEMENT CONVEYED IN THIS PARCEL 3.

APN: 305-161-27-00

PLEASE COMPLETE THIS INFORMATION

RECORDING REQUESTED BY:
Vantage Point Title, Inc.

AND WHEN RECORDED MAIL TO:
Vantage Point Title, Inc.
25400 US Hwy 19 N, Ste 135
Clearwater, FL 33763
VPT File #: CA496141
VPC File #: VPC36171

DOC# 2019-0095256

Mar 18, 2019 12:57 PM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES: $157.00 (SB2 Atkins: $75.00)
PCOR: N/A
PAGES: 18

## UNISON HOMEOWNER DEED OF TRUST AND SECURITY AGREEMENT

(Please fill in document title(s) on this line)

The document to which this page is affixed and made a part of is exempt from the fee imposed by the Building Homes & Jobs Act (SB 2-2017) (GC 27388.1)

Reason for exemption:

- ☐ Not related to real property - GC 27388.1 (a) (1)
- ☐ Recorded concurrently "in connection with" a transfer subject to the imposition of Documentary Transfer Tax - GC 27388.1 (a) (2)
- ☐ Transfer of real property that is a residential dwelling to an owner-occupier *or* recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier - GC 27388.1 (a) (2)
- ☑ Maximum $225.00 fee per transaction reached (presented concurrently and are related to the same parties and same property) - GC 27388.1 (a) (1)

BORROWER NAME: Joshua Christopher Parker

BORROWER ADDRESS: 6081 Roselle Meadows Trail, San Diego, CA 92130

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Additional recording fee applies)

**Prepared by, recording requested by, and when recorded mail to:**

Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA 94126-6800

Unison HomeOwner Agreement ID Number:
FRX-128092 CA496141

## UNISON HOMEOWNER DEED OF TRUST AND SECURITY AGREEMENT

**NOTICE: THIS DEED OF TRUST CONTAINS A SUBORDINATION CLAUSE WHICH MAY RESULT IN BENEFICIARY'S SECURITY OR OTHER INTEREST IN THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE LIEN OF SOME OTHER OR LATER SECURITY INSTRUMENT.**

This **SUBORDINATED HOMEOWNER DEED OF TRUST AND SECURITY AGREEMENT,** together with riders hereto ("**Unison HomeOwner Security Instrument**"), is made as of 02/19/2019 "**Effective Date**"), among JOSHUA CHRISTOPHER PARKER AN UNMARRIED MAN (individually or collectively "**Trustor**"), and American Title Inc. ("**Trustee**"), whose address is 11010 Burdette St PO BOX 641010, Omaha, NE 68164 and Unison Agreement Corp., a Delaware corporation, and its successors and assignees ("**Beneficiary**"), whose address is 650 California Street, Suite 1800, San Francisco, CA 94108. Capitalized terms used in this Unison HomeOwner Security Instrument shall have the meanings specified in this Unison HomeOwner Security Instrument, or if not defined herein, in that certain Unison HomeOwner Covenant Agreement ("**Unison HomeOwner Covenant Agreement**"), Unison HomeOwner Option Agreement ("**Unison HomeOwner Option Agreement**") and that certain Memorandum Of Unison HomeOwner Agreement ("**Unison HomeOwner Recorded Memorandum**"), which documents, together with this Unison HomeOwner Security Instrument, are collectively termed the "**Unison HomeOwner Agreement**" executed by Trustor and Beneficiary concurrently herewith.

### 1. Grant In Trust.

TRUSTOR HEREBY IRREVOCABLY grants, transfers and assigns to Trustee, and its successors and assignees, in trust, with power of sale, all of that property ("**Real Property**") described in **SCHEDULE A** attached hereto and made a part hereof.

Together with all improvements, replacements and additions now or hereafter erected on the Real Property and all easements, appurtenances and fixtures now or hereafter a part of the Real Property. (The fixtures, improvements and the Real Property are collectively referred to as the "**Property**.")



Owner's Initials: JCP /_____/_____/_____

© 2017, Unison

Together with all rents, issues, profits and proceeds, including without limitation insurance and condemnation proceeds, from the Real Property, subject, however, to the right, power and authority given to and conferred upon Beneficiary below to collect and apply such rents, issues and profits.

Trustor warrants that he/she/they is/are lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Trustor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**2.** **Secured Obligations.** Trustor makes the grant, transfer and assignment set forth in the "Grant In Trust" Section above for the purpose of securing:

**a.** Trustor's performance, and Beneficiary's rights, under the Unison HomeOwner Agreement;

**b.** the performance and payment of the obligations of Trustor under the Unison HomeOwner Agreement, including:

**(i)** payment of all **Protective Advances**, including any unpaid interest and other fees and charges associated with such Protective Advances, owed to Beneficiary under the Unison HomeOwner Agreement;

**(ii)** payment of all **Asset Administration Fees** incurred by or owed to Beneficiary under the Unison HomeOwner Agreement;

**(iii)** payment of all insurance proceeds owed to Beneficiary pursuant to **Sections 8.16(e) and (f)** of the Unison HomeOwner Covenant Agreement;

**(iv)** payment of all condemnation proceeds owed to Beneficiary pursuant to **Section 8.17** of the Unison HomeOwner Covenant Agreement;

**(v)** performance of those obligations to Beneficiary specified in the Unison HomeOwner Agreement pursuant to **Articles Three, Four, Five, Eight and Nine** of the Unison HomeOwner Covenant Agreement, including, without limitation, payment of the Investor Interest under the Unison HomeOwner Agreement; and

**(vi)** performance of the obligations of Trustor under the Unison HomeOwner Covenant Agreement regarding Beneficiary's right as a co-owner to sell the Property following exercise of the **Option** and during **Orderly Sale**.

**c.** the performance of the obligations of Trustor contained in this Unison HomeOwner Security Instrument or incorporated by reference;



Owner's Initials: JC /______/______/______

© 2017, Unison

**d.** any expenditures made by Beneficiary pursuant to, or under, this Unison HomeOwner Security Instrument; and

**e.** payment of all fees and expenses (including, as allowed by applicable law, court and other dispute resolution costs, attorneys' and experts' fees and costs, and fees and disbursements of in-house counsel (collectively "**Attorneys' Fees**")) incurred by Beneficiary in the enforcement and collection of the obligations listed above and the protection of Beneficiary's rights related thereto, whether such fees are incurred in any state, federal, appellate, or bankruptcy court or otherwise and whether or not litigation or arbitration is commenced. Attorneys' Fees shall include, Attorneys' Fees incurred in any state, federal, appellate, or bankruptcy court, and in any bankruptcy case or insolvency proceeding, of any kind in any way related to this Unison HomeOwner Security Instrument, to the interpretation or enforcement of the parties' rights under this Unison HomeOwner Security Instrument, or to the Property.

The foregoing obligations are referred to collectively as the "**Obligations.**"

**f.** Trustor shall not be obligated to repay any part of the **Unison Investment Payment** (as such term is defined in Schedule A to the Unison HomeOwner Covenant Agreement); and therefore, such item shall not be included within the Obligations. The foregoing shall not, however, in any way limit any payment calculated and agreed by Trustor to be paid pursuant to the Unison HomeOwner Agreement, according to the calculation of **Investor Proceeds** and **Investor Interest** (as defined in the Unison HomeOwner Agreement), including, without limitation, any such calculation in connection with a **Special Termination** as defined in **Section 6.2** of the Unison HomeOwner Covenant Agreement.

**3. Uniform Commercial Code Security Agreement And Fixture Filing.** This Unison HomeOwner Security Instrument also is intended to be and shall constitute a security agreement under the California Uniform Commercial Code for any items of personal property that constitute fixtures or are specified as part of the Property and that under applicable law may be subject to a security interest under the California Uniform Commercial Code. Trustor hereby grants to Beneficiary a security interest in those items to secure the performance and payment of the Obligations.

**a.** Trustor agrees that Beneficiary may file either this Unison HomeOwner Security Instrument, or a copy of it, or a UCC-1 Financing Statement in the real estate records or other appropriate index and/or in the Office of the Secretary of State of the State of California, as a financing statement for any of the items specified above as part of the Property.

**b.** This Unison HomeOwner Security Instrument constitutes a financing statement filed as a fixture filing pursuant to Sections 9502(c) and 9514 of the California Uniform Commercial Code, and any similar or successor provisions.

**c.** Beneficiary may file such extensions, renewals, amendments and releases as are appropriate to reflect the status of its security interest.



Owner's Initials: JEP / ______ / ______ / ______

© 2017, Unison

**d.** Trustor shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Beneficiary may reasonably require.

**e.** On any default hereunder, Beneficiary shall have the remedies of a secured party under the California Uniform Commercial Code and may also invoke the remedies in **Section 7** below. In exercising any of these remedies, Beneficiary may proceed against the items of Real Property, fixtures or improvements separately or together and in any order whatsoever without in any way affecting the availability of Beneficiary's remedies under the California Uniform Commercial Code or the remedies in **Section 7** below.

**4.** **Assignment Of Leases And Rents.** As additional security for the Obligations, Trustor hereby irrevocably, absolutely and unconditionally assigns to Beneficiary all of Trustor's right, title and interest in and to all existing and future leases, subleases and licenses relating to the use, occupancy or enjoyment of all or any part of the Property and all rents, income, revenues, profits, proceeds and earnings now or hereafter payable with respect to the ownership, use or occupancy of the Property (collectively the "**Rents**"):

**a.** Trustor hereby gives to, and confers upon, Beneficiary the right, power and authority, during the continuance of this Unison HomeOwner Security Instrument, to collect the Rents, reserving unto Trustor the right, prior to any default by Trustor in payment of the Obligations secured hereby or in performance of any agreement hereunder, to collect and retain such Rents, as they become due and payable.

**b.** Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the Obligations secured hereby, enter upon and take possession of the Property or any part of it, in its own name sue for or otherwise collect such Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including Attorneys' Fees to the Obligations secured hereby, and in such order as Beneficiary may determine.

**c.** The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application of such rents, issues and profits pursuant to this Unison HomeOwner Security Instrument, shall not cure or waive any default or notice of default under this Unison HomeOwner Security Instrument or invalidate any act done pursuant to such notice.

**d.** Nothing in this section shall permit Trustor to lease or rent the Property in contravention of any provision of the Unison HomeOwner Agreement; nor shall anything in this section modify any provision in the Unison HomeOwner Agreement relating to the use, lease or occupancy of the Property.



Owner's Initials: JLP / ____ / ____ / ____

© 2017, Unison

**5.** **Covenants Of Trustor Regarding The Property.** Trustor hereby agrees as follows:

**a.** To appear in and defend any action or proceeding purporting to affect the security of this Unison HomeOwner Security Instrument or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses of Trustee and Beneficiary (including cost of evidence of title and Attorneys' Fees) incurred: **(i)** in any state, federal, appellate, or bankruptcy court, in any action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Unison HomeOwner Security Instrument or to collect the Obligations or to protect Beneficiary's rights under this Unison HomeOwner Security Instrument; and/or **(ii)** in connection with the enforcement of any provisions of this Unison HomeOwner Security Instrument or in connection with foreclosure upon the collateral granted under this Unison HomeOwner Security Instrument (whether or not suit is filed).

**b.** To pay: at least ten (10) days before delinquency all taxes and assessments affecting the Property; and all encumbrances, charges and liens, with interest, on the Property (or any part of the Property), which are prior or could obtain priority to the lien or to the rights granted under this Unison HomeOwner Security Instrument, and all costs, fees and expenses of this Unison HomeOwner Security Instrument.

**(i)** If Trustor fails to make any payment or to do any act as provided in this Unison HomeOwner Security Instrument, Beneficiary or Trustee may (but shall not be obligated to) make the payment or do the act in the required manner and to the extent deemed necessary by Beneficiary or Trustee to protect the security for this Unison HomeOwner Security Instrument, which payments and related expenses (including Attorneys' Fees) shall also be secured by this Unison HomeOwner Security Instrument.

**(ii)** Such performance by Beneficiary or Trustee shall not require notice to, or demand on, Trustor and shall not release Trustor from any obligation under this Unison HomeOwner Security Instrument.

**(iii)** Beneficiary or Trustee shall have the following related rights and powers: **(A)** to enter upon the Property for the foregoing purposes, **(B)** to appear in and defend any action or proceeding purporting to affect the Property or the rights or powers of Beneficiary or Trustee under this Unison HomeOwner Security Instrument, **(C)** to pay, purchase, contest or compromise any encumbrance, charge, or lien that in the judgment of Beneficiary or Trustee appears to be prior or superior to this Unison HomeOwner Security Instrument, and **(D)** to employ counsel, and to pay such counsel necessary expenses and costs, including Attorneys' Fees.

**c.** To pay immediately upon demand all sums expended by Beneficiary or Trustee pursuant to this Unison HomeOwner Security Instrument; and to pay interest on any of the foregoing amounts demanded by Beneficiary or Trustee at the rate specified in Section 3289



Owner's Initials: JCP / ______ / ______ / ______

© 2017, **Unison**

of the California Civil Code (or other applicable law) from the date of such demand, not to exceed the maximum rate allowed by law at the time of such demand.

6. **Power Of Attorney.** Trustor hereby irrevocably appoints Beneficiary as Trustor's attorney-in-fact (such agency being coupled with an interest), and as such attorney-in-fact Beneficiary may, after providing notice to Trustor pursuant to the Unison HomeOwner Agreement and the Unison HomeOwner Recorded Memorandum, without the obligation to do so, in Beneficiary's name, or in the name of Trustor, prepare, execute and file or record financing statements, continuation statements, applications for registration and like documents necessary to create, perfect or preserve any of Beneficiary's security interests and rights in or to any of the Property, and, upon a default under this Unison HomeOwner Security Instrument, take any other action required of Trustor; provided, however, that Beneficiary as such attorney-in-fact shall be accountable only for such funds as are actually received by Beneficiary.

7. **Default And Foreclosure And Power Of Sale.** Upon default by Trustor in the performance of or upon breach by Trustor of any of the rights and Obligations that are secured by this Unison HomeOwner Security Instrument as specified above, Beneficiary may declare all performance and sums secured by this Unison HomeOwner Security Instrument immediately due by delivery to Trustee and to Trustor of written declaration of default. Beneficiary shall give notice of default to Trustor prior to acceleration following Trustor's breach of any covenant or agreement in this Unison HomeOwner Security Instrument. The notice shall specify: **(a)** the default; **(b)** the action required to cure the default; **(c)** a date, not less than 30 days from the date the notice is given to Trustor, by which the default must be cured; and **(d)** that failure to cure the default on or before the date specified in the notice may result in acceleration of the performance secured by this Unison HomeOwner Security Instrument and sale of the Property. The notice shall further inform Trustor of the right to cure after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Trustor to acceleration and sale. If the default is not cured on or before the date specified in the notice, Beneficiary at its option may require immediate performance in full of all obligations secured by this Unison HomeOwner Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Beneficiary shall be entitled to collect all expenses incurred in pursuing the remedies provided herein, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Beneficiary invokes the power of sale, Beneficiary shall execute or cause Trustee to execute a written notice of Beneficiary's election to cause the Property to be sold as prescribed by applicable law. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Beneficiary or Trustee shall mail copies of the notice as prescribed by applicable law to Trustor and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. Beneficiary also shall deposit with Trustee this Unison HomeOwner Security Instrument, the Unison HomeOwner Agreement, and all documents evidencing any expenditures and damages secured by this Unison HomeOwner Security Instrument.



Owner's Initials: ___/___/___/___

© 2017, Unison

After the time required by applicable law, Trustee, without demand on Trustor, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale.

Trustee shall deliver to the purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of their truthfulness. Any person, including Trustor, Trustee, or Beneficiary as defined in this Unison HomeOwner Security Instrument, may purchase at such sale.

**a.** After deducting all costs, fees and expenses (including Attorneys' Fees) of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: to Beneficiary, all sums expended and performance due under the terms of this Unison HomeOwner Security Instrument, not then performed or repaid, with accrued interest, if any, at the amount allowed by law in effect on the Effective Date of this Unison HomeOwner Security Instrument; to Beneficiary, all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**b.** Notice provided to Trustor under this Unison HomeOwner Security Instrument shall be to the address specified in this Unison HomeOwner Security Instrument unless otherwise required by applicable law.

**c.** Exercise of Beneficiary's remedies under this Unison HomeOwner Security Agreement shall be in compliance with applicable law.

**8.** **Liquidated Damages.** Liquidated Damages means an amount equal to the sum of:

**a.** the **Investor Proceeds**, as calculated according to **Article 10 ("Calculations")** of the Unison HomeOwner Covenant Agreement;

**b.** in connection with Owner's failure to make any monetary payment, the sum of all monetary obligations (including, without limitation, all **Unpaid Owner Obligations**) owed to Investor by Owner under the Unison HomeOwner Agreement; and

**c.** any and all amounts, properly chargeable to Owner as necessary to satisfy Owner's obligations under the Unison HomeOwner Agreement with respect to Owner's mortgage, tax and insurance obligations on the Property, including late fees, reinstatement fees and other penalties.

**9.** **Late Performance.** By accepting performance of any obligation after its due date, Beneficiary does not waive its right either to require prompt performance when due of all other obligations or to declare default for such failure to perform.

10. **Trustee's Powers**. At any time or from time to time, without liability therefor upon written request of Beneficiary and presentation of this Unison HomeOwner Security Instrument, and without affecting the personal liability of any person for the performance of the Unison HomeOwner Agreement secured hereby, Trustee may: **(a)** reconvey any part of the Property; **(b)** consent to the making of any map or plat of the Property; **(c)** join in granting any easement thereon; and **(d)** join in any extension agreement or any agreement subordinating the lien or charge of this Unison HomeOwner Security Instrument.

11. **Substitution of Trustee**. Beneficiary, or any successor in ownership of the Obligations, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named or acting under this Unison HomeOwner Security Instrument, which instrument, when executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from Trustee's predecessor, succeed to all its title, estate, rights, powers and duties. Such instrument must contain the name of the original Trustor, Trustee and Beneficiary under this Unison HomeOwner Security Instrument, the book and page where this Unison HomeOwner Security Instrument is recorded, and the name and address of the new Trustee(s).

12. **Trustee's Compensation**. Trustor shall pay Trustee's fees and reimburse Trustee for expenses in the administration of this Trust, including Attorneys' Fees. Trustor shall pay to Beneficiary reasonable compensation for services rendered concerning this Unison HomeOwner Security Instrument, including without limitation any statement of amounts owing under any obligations.

13. **Full Reconveyance**. Upon written request of Beneficiary stating that all obligations have been performed or paid, and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held under this Unison HomeOwner Security Instrument. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such recitals. The grantee in such reconveyance may be described as "**the person or persons legally entitled thereto**."

14. **Subordination**. This Unison HomeOwner Security Instrument is subordinate to and junior to the Unison HomeOwner Recorded Memorandum which affects the Property and which is executed by Trustor as "**Owner**" as of the same date as this Unison HomeOwner Security Instrument. Upon any foreclosure of this Unison HomeOwner Security Instrument by the Beneficiary, despite such foreclosure, the Unison HomeOwner Recorded Memorandum will remain in full force and effect (until released pursuant to its terms) and binding upon any person who now or hereafter obtains an interest in the Property; and the Unison HomeOwner Agreement will remain in full force and effect and binding upon Trustor, and any other person who may agree to be bound by such documents.

15. **Successors**. This Unison HomeOwner Security Instrument applies to, inures to the benefit of, and binds all parties to this Unison HomeOwner Security Instrument, their heirs,



Owner's Initials: JCP / ______ / ______ / ______

© 2017, Unison

legatees, devisees, administrators, executors, successors, and assignees. The term "**Beneficiary**" shall include any successor or assignee of Beneficiary's rights in the Unison HomeOwner Agreement and in this Unison HomeOwner Security Instrument, whether or not named as Beneficiary in this Unison HomeOwner Security Instrument. In this Unison HomeOwner Security Instrument, whenever the context so requires, the masculine gender includes the feminine and/or the neuter, and the singular number includes the plural.

**16. Joint and Several Liability.** If more than one person signs this Unison HomeOwner Security Instrument as Trustor, the obligations of each signatory shall be joint and several.

**17. Multiple Owners.** If there are multiple Trustors of the Property:

**a.** this Unison HomeOwner Security Instrument must be signed by each such Trustor;

**b.** all rights and powers specified for Trustor in this Unison HomeOwner Security Instrument must be approved and exercised unanimously by all such multiple Trustors;

**c.** all such multiple Trustors shall be jointly and severally liable for all liabilities and obligations specified for Trustor under this Unison HomeOwner Security Instrument;

**d.** notice required to be given by, or to, Trustor will be deemed adequately given if given by, or to, any of Trustors using the contact information set forth in this Unison HomeOwner Security Instrument; and

**e.** Beneficiary may treat any notice received from any one Trustor as notice from all Trustors.

**18. Revocable Trust.** If any Trustor is/are the trustee(s) of a **Revocable Trust** (as defined in Schedule A to the Unison HomeOwner Covenant Agreement):

**a.** all trustees and all trustors of the Revocable Trust must sign this Unison HomeOwner Security Instrument in their capacities as individuals and as trustees and/or trustors of the Revocable Trust, and each trustee and trustor of the Revocable Trust who signs this Unison HomeOwner Security Instrument hereby represents and warrants that all trustees and trustors of the Revocable Trust have been disclosed to Beneficiary;

**b.** any trustee of the Revocable Trust who is also a trustor of the Revocable Trust need only sign this Unison HomeOwner Security Instrument once for it to be binding on such person both as trustee and as trustor of the Revocable Trust;



Owner's Initials: JEP / ______ / ______ / ______

© 2017, Unison

**c.** all rights and powers specified for, and all actions required of, Trustor in this Unison HomeOwner Security Instrument must be approved and exercised unanimously by all trustees of the Revocable Trust;

**d.** all trustees and all trustors of the Revocable Trust, in their capacities as individuals, shall be jointly and severally liable with Trustor for all liabilities and obligations specified for Trustor under this Unison HomeOwner Security Instrument;

**e.** all representations and warranties by Trustor in this Unison HomeOwner Security Instrument are made by all trustees of the Revocable Trust on behalf of the Revocable Trust and by all trustees and all trustors of the Revocable Trust in their capacities as individuals;

**f.** notice required to be given by, or to, any Trustor will be deemed adequately given if given by, or to, any of the trustees of the Revocable Trust using the contact information set forth in this Unison HomeOwner Security Instrument; and

**g.** Beneficiary may treat any notice received from any one trustee of the Revocable Trust as notice from all trustees of the Revocable Trust and from Trustor.

**19. Acceptance by Trustee.** Trustee accepts this Trust when this Unison HomeOwner Security Instrument, duly executed and acknowledged, is made a public record as provided by law.

**20. Incorporation by Reference.** **SCHEDULE A** to this Unison HomeOwner Security Instrument is hereby incorporated by this reference.

**21. Extent of Lien.** The lien granted under this Unison HomeOwner Security Instrument shall encumber Trustor's entire interest in the Property, notwithstanding the fact that the Unison HomeOwner Agreement relates to only a fractional interest in the Property.

**22. No Merger.** So long as any of the obligations under the Unison HomeOwner Agreement remains outstanding and undischarged, unless Beneficiary otherwise consents in writing, the fee estate of Trustor in the Property or any part thereof (including the estate of Beneficiary after exercising the Option) will not merge, by operation of law or otherwise, with any other estate in the Property or any part of it, but will always remain separate and distinct, notwithstanding the union of the fee estate and such other estate in Beneficiary or in any other Person.

**Do not lose or destroy this Unison HomeOwner Security Instrument or the Unison HomeOwner Agreement that it secures. All must be delivered to Trustee for cancellation before reconveyance will be made.**

[Signatures appear on the following page.]



Owner's Initials: JCP / ______ / ______ / ______

© 2017, Unison

READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH BENEFICIARY, INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE, ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS UNISON HOMEOWNER SECURITY INSTRUMENT, THE UNISON HOMEOWNER AGREEMENT AND TRANSACTION DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND BENEFICIARY AS OF THE EFFECTIVE DATE.

The undersigned Trustor requests that a copy of any Notice of Default and any Notice of Sale under this Unison HomeOwner Security Instrument be mailed to Trustor at the address set forth below.

IN WITNESS WHEREOF, each undersigned Trustor has executed this Unison HomeOwner Security Instrument as of the date set forth above.

Trustor Address:

6081 Roselle Meadows Trl
San Diego, CA 92130

By: Joshua Christopher Parker
Joshua Christopher Parker

2/20/2019
Date Signed

By: ______________________________

______________________________
Date Signed

By: ______________________________

______________________________
Date Signed

By: ______________________________

______________________________
Date Signed



© 2017, **Unison** 

**ACKNOWLEDGMENT**

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

STATE OF CALIFORNIA)
) ss.
COUNTY OF San Diego )

On 2/20, 2019, before me Frank L. Cannizzaro, Notary Public, personally appeared Joshua Christopher Parker who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ______________________ (Seal)
Frank L Cannizzaro

FRANK L. CANNIZZARO
COMM. # 2207077
NOTARY PUBLIC - CALIFORNIA
SAN DIEGO COUNTY
COMM. EXPIRES AUG. 22, 2021



© 2017, Unison Form 401 HO-CA (rev. 1/31/2017)

## SCHEDULE A

## LEGAL DESCRIPTION

That certain real property situated in the City of San Diego, County of SAN DIEGO, State of California, described as follows:
See attached Exhibit "A" for legal description
APN: 305-161-27-00

[end of legal description]



Owner's Initials: JC/____/____/____

© 2017, Unison

# EXHIBIT "A"

Real property in the City of San Diego, County of San Diego, State of California, described as follows:

PARCEL 1:

LOT 103 OF PACIFIC HIGHLANDS RANCH UNIT NO. 5.

THE FEE SIMPLE TITLE TO LOT 103 OF PACIFIC HIGHLANDS RANCH UNIT NO. 5 LOCATED IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 14754, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, CALIFORNIA ON MARCH 19, 2004.

PARCEL 2:

A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OVER THE PRIVATE DRIVES, STREETS, ALLEYS AND COMMON AREA OF THE ABOVE-REFERENCED TRACT MAP, AS PROVIDED FOR IN AND SUBJECT TO THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS, AND RESTRICTIONS FOR WEST PORTICO COMMUNITY ASSOCIATION RECORDED AUGUST 2, 2005 AS INSTRUMENT NO. 2005-0657428, IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, CALIFORNIA.

EXCEPT ALL OIL, ASPHALTUM, PETROLEUM, NATURAL GAS AND OTHER HYDROCARBONS AND ANY OTHER VALUABLE MINERAL SUBSTANCES AND PRODUCTS, AND ALL OTHER MINERALS, WHETHER OR NOT OF THE SAME CHARACTER HEREINBEFORE GENERALLY DESCRIBED, IN OR UNDER SAID LAND AND LYING AND BEING AT A VERTICAL DEPTH OF 500 OR MORE FEET BELOW THE PRESENT NATURAL SURFACE OF THE GROUND, BUT WITHOUT RIGHT OF ENTRY ON THE SURFACE OR WITHIN A VERTICAL DEPTH OF 500 FEET BELOW THE PRESENT SURFACE OF THE GROUND.

PARCEL 3:

AN EXCLUSIVE EASEMENT OVER AND UPON THAT PORTION OF LOT 104 OF SAID MAP, AS DEPICTED AND SHOWN ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART THEREOF, FOR THE PURPOSES DEFINED IN ARTICLE IX OF THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS HEREIN REFERRED TO. THIS EASEMENT IS APPURTENANT TO AND FOR THE USE AND BENEFIT OF THE OWNER(S) OF LOT 103 AND THEIR SUCCESSORS. THE OWNER OF PARCEL 1 SHALL BE RESPONSIBLE FOR ALL MAINTENANCE, REPAIR AND COSTS OF THE SIDE YARD EASEMENT CONVEYED IN THIS PARCEL 3.

APN: 305-161-27-00

Unison HomeOwner Agreement ID Number: FRX-128092

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 02/19/2019 ("**Effective Date**") and is incorporated into and shall be deemed to amend and supplement the Unison HomeOwner Security Instrument (the "**Security Instrument**") of the same date, given by the undersigned Owner (the "**Owner**") to secure Owner's obligations under that certain Unison HomeOwner Agreement made by and between Owner and Unison Agreement Corp., its successors and assigns ("**Investor**") of the same date and covering the Property described in the Security Instrument and located at:

6081 Roselle Meadows Trl, San Diego, CA 92130
[Property Address]

The property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in ______________________________________________________________ ______________________________________________ (the "**Declaration**"). The Property is a part of a planned unit development known as

Pacific Highlands Ranch
[Name of Planned Unit Development]

(the "**PUD**"). The Property also includes Owner's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "**Owners Association**") and the uses, benefits and proceeds of Owner's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Owner and Investor further covenant and agree as follows:

A. **PUD Obligations.** Owner shall perform all of Owner's obligations under the PUD's **Constituent Documents**. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Owner shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. **Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Investor and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Investor requires insurance, then: Owner's obligation under the Unison HomeOwner Agreement to maintain property insurance coverage on the Property is deemed satisfied to the extent that the

Owner's Initials: [initials] /_____/_____/_____

© 2017, **Unison** 

required coverage is provided by the Owners Association policy.

What Investor requires as a condition of this waiver can change during the term of the Unison HomeOwner Agreement.

Owner shall give Investor prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Owner are hereby assigned and shall be paid to Investor. Investor shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Owner.

C. **Public Liability Insurance.** Owner shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Investor.

D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Owner in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Investor. Such proceeds shall be applied by Investor as provided in the Unison HomeOwner Agreement (Unison HomeOwner Covenant Agreement Section 8.17).

E. **Investor's Prior Consent.** Owner shall not, except after notice to Investor and with Investor's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is not for the express benefit of Investor; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Investor.

F. **Remedies.** If Owner does not pay PUD dues and assessments when due, then Investor may pay them. Any amounts disbursed by Investor under this paragraph F shall become Protective Advances made by Investor on behalf of Owner as defined under and subject to the terms of the Unison HomeOwner Agreement and shall be secured by the Security Instrument.

BY SIGNING BELOW, Owner accepts and agrees to the terms and covenants contained in this PUD Rider.

**OWNER(S):**

Owner's Initials: [initials] /_____/_____/_____

By: ______________________________
Joshua Christopher Parker

2/10/19
______________________________
Date Signed

By: ______________________________

______________________________
Date Signed

By: ______________________________

______________________________
Date Signed

By: ______________________________

______________________________
Date Signed

Owner's Initials: JCP/_____/_____/_____



APR 1 1 2019

DOC# 2019-0095257

Mar 18, 2019 12:57 PM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES: $88.00 (SB2 Atkins: $0.00)
PCOR: N/A
PAGES: 6

PLEASE COMPLETE THIS INFORMATION

RECORDING REQUESTED BY:
Vantage Point Title, Inc.

AND WHEN RECORDED MAIL TO:
Vantage Point Title, Inc.
25400 US Hwy 19 N, Ste 135
Clearwater, FL 33763
VPT File #: CA496141
VPC File #: VPC36171

## ASSIGNMENT OF UNISON HOMEOWNER AGREEMENT

(Please fill in document title(s) on this line)

The document to which this page is affixed and made a part of is exempt from the fee imposed by the Building Homes & Jobs Act (SB 2-2017) (GC 27388.1)

Reason for exemption:

☐ Not related to real property - GC 27388.1 (a) (1)

☐ Recorded concurrently "in connection with" a transfer subject to the imposition of Documentary Transfer Tax - GC 27388.1 (a) (2)

☐ Transfer of real property that is a residential dwelling to an owner-occupier *or* recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier - GC 27388.1 (a) (2)

☑ Maximum $225.00 fee per transaction reached (presented concurrently and are related to the same parties and same property) - GC 27388.1 (a) (1)

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Additional recording fee applies)

**Prepared by,**
**recording requested by, and**
**when recorded mail to:**

Unison Agreement Corp.
P.O. Box 26800
San Francisco, CA 94126-6800

Unison HomeOwner Agreement ID Number:
FRX-128092

## Assignment of Unison HomeOwner Agreement

Unison Agreement Corp., a Delaware corporation, as "Assignor," hereby assigns for good and valuable consideration to **Odin New Horizon Real Estate Fund LP**, a Delaware limited partnership as "Assignee," all of Assignor's rights, title, interests and obligations to and under: (i) that certain Unison HomeOwner Option Agreement of even date herewith made by and between Assignor and JOSHUA CHRISTOPHER PARKER AN UNMARRIED MAN (individually or collectively, the "Homeowner"); (ii) that certain Unison HomeOwner Covenant Agreement of even date herewith made by and between Assignor and Homeowner; (iii) that certain Memorandum of Agreement made by and between Assignor and Homeowner and being recorded concurrently and on the same date as this Memorandum of Assignment; and (iv) that certain Unison Subordinated Deed of Trust and Security Agreement made by Homeowner as "Trustor" in favor of Assignor as "Beneficiary" naming American Title Inc., as "Trustee" and being recorded concurrently and on the same date as this Memorandum of Assignment; which relate to, run with and encumber the real property described in Exhibit A ("Property").

IN WITNESS WHEREOF the undersigned Assignor has executed this instrument as of 02/19/2019.

Unison Agreement Corp., a Delaware corporation

By: ______________________

Name: Ismael Casas, Jr.

Title: Vice President
650 California Street, Suite 1800
San Francisco, CA 94108

### ACKNOWLEDGMENT



© 2017, Unison

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

STATE OF CALIFORNIA)
) ss.
COUNTY OF SAN FRANCISCO )

On__________________, 20____, before me ________________________________________,
Notary Public, personally appeared ________________________________________
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

SEE "ATTACHED"

____________________________________

(seal)



© 2017, Unison

## BENEFITED PARTY'S ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of San Francisco )

On February 19, 2019 before me, Amy M Marsili, Notary Public
(insert name and title of the officer)

personally appeared Ismael Casas Jr,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

AMY M. MARSILI
COMM. #2218169
NOTARY PUBLIC-CALIFORNIA
MARIN COUNTY
My Comm. Expires Oct. 14, 2021

Signature [signature]
Amy M. Marsili

(Seal)

# EXHIBIT A

## LEGAL DESCRIPTION

That certain real property situated in the City of San Diego, County of SAN DIEGO, State of California, described as follows:

See attached Exhibit "A" for legal description

APN/Tax Parcel ID: 305-161-27-00

[end of legal description]



© 2017, Unison

# EXHIBIT "A"

Real property in the City of San Diego, County of San Diego, State of California, described as follows:

PARCEL 1:

LOT 103 OF PACIFIC HIGHLANDS RANCH UNIT NO. 5.

THE FEE SIMPLE TITLE TO LOT 103 OF PACIFIC HIGHLANDS RANCH UNIT NO. 5 LOCATED IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 14754, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, CALIFORNIA ON MARCH 19, 2004.

PARCEL 2:

A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OVER THE PRIVATE DRIVES, STREETS, ALLEYS AND COMMON AREA OF THE ABOVE-REFERENCED TRACT MAP, AS PROVIDED FOR IN AND SUBJECT TO THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS, AND RESTRICTIONS FOR WEST PORTICO COMMUNITY ASSOCIATION RECORDED AUGUST 2, 2005 AS INSTRUMENT NO. 2005-0657428, IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, CALIFORNIA.

EXCEPT ALL OIL, ASPHALTUM, PETROLEUM, NATURAL GAS AND OTHER HYDROCARBONS AND ANY OTHER VALUABLE MINERAL SUBSTANCES AND PRODUCTS, AND ALL OTHER MINERALS, WHETHER OR NOT OF THE SAME CHARACTER HEREINBEFORE GENERALLY DESCRIBED, IN OR UNDER SAID LAND AND LYING AND BEING AT A VERTICAL DEPTH OF 500 OR MORE FEET BELOW THE PRESENT NATURAL SURFACE OF THE GROUND, BUT WITHOUT RIGHT OF ENTRY ON THE SURFACE OR WITHIN A VERTICAL DEPTH OF 500 FEET BELOW THE PRESENT SURFACE OF THE GROUND.

PARCEL 3:

AN EXCLUSIVE EASEMENT OVER AND UPON THAT PORTION OF LOT 104 OF SAID MAP, AS DEPICTED AND SHOWN ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART THEREOF, FOR THE PURPOSES DEFINED IN ARTICLE IX OF THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS HEREIN REFERRED TO. THIS EASEMENT IS APPURTENANT TO AND FOR THE USE AND BENEFIT OF THE OWNER(S) OF LOT 103 AND THEIR SUCCESSORS. THE OWNER OF PARCEL 1 SHALL BE RESPONSIBLE FOR ALL MAINTENANCE, REPAIR AND COSTS OF THE SIDE YARD EASEMENT CONVEYED IN THIS PARCEL 3.

APN: 305-161-27-00



APR 1 1 2019

# Exhibit B

**LEGAL DESCRIPTION**

Real property in the City of San Diego, County of San Diego, State of California, described as follows:

PARCEL 1:

LOT 103 OF PACIFIC HIGHLANDS RANCH UNIT NO. 5.

THE FEE SIMPLE TITLE TO LOT 103 OF PACIFIC HIGHLANDS RANCH UNIT NO. 5 LOCATED IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 14754, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, CALIFORNIA ON MARCH 19, 2004.

PARCEL 2:

A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OVER THE PRIVATE DRIVES, STREETS, ALLEYS AND COMMON AREA OF THE ABOVE-REFERENCED TRACT MAP, AS PROVIDED FOR IN AND SUBJECT TO THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS, AND RESTRICTIONS FOR WEST PORTICO COMMUNITY ASSOCIATION RECORDED AUGUST 2, 2005 AS INSTRUMENT NO. 2005-0657428, IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, CALIFORNIA.

EXCEPT ALL OIL, ASPHALTUM, PETROLEUM, NATURAL GAS AND OTHER HYDROCARBONS AND ANY OTHER VALUABLE MINERAL SUBSTANCES AND PRODUCTS, AND ALL OTHER MINERALS, WHETHER OR NOT OF THE SAME CHARACTER HEREINBEFORE GENERALLY DESCRIBED, IN OR UNDER SAID LAND AND LYING AND BEING AT A VERTICAL DEPTH OF 500 OR MORE FEET BELOW THE PRESENT NATURAL SURFACE OF THE GROUND, BUT WITHOUT RIGHT OF ENTRY ON THE SURFACE OR WITHIN A VERTICAL DEPTH OF 500 FEET BELOW THE PRESENT SURFACE OF THE GROUND.

PARCEL 3:

AN EXCLUSIVE EASEMENT OVER AND UPON THAT PORTION OF LOT 104 OF SAID MAP, AS DEPICTED AND SHOWN ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART THEREOF, FOR THE PURPOSES DEFINED IN ARTICLE IX OF THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS HEREIN REFERRED TO. THIS EASEMENT IS APPURTENANT TO AND FOR THE USE AND BENEFIT OF THE OWNER(S) OF LOT 103 AND THEIR SUCCESSORS. THE OWNER OF PARCEL 1 SHALL BE RESPONSIBLE FOR ALL MAINTENANCE, REPAIR AND COSTS OF THE SIDE YARD EASEMENT CONVEYED IN THIS PARCEL 3.

APN: 305-161-27-00

# Exhibit C

CALIFORNIA ASSOCIATION OF REALTORS®

# DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP

**(As required by the Civil Code)**
**(C.A.R. Form AD, Revised 8/24)**

COLDWELL BANKER REALTY

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code §§ 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:

(a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
(b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of §§ 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully.**

**Note: Real estate broker commissions are not set by law and are fully negotiable.**

**I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant *Shang-Yi Chiang* ***Shang-Yi Chiang*** Date 10/31/2024

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant *Victoria Chiang* ***Victoria Chiang*** Date 10/31/2024

Agent ***Coldwell Banker Realty*** DRE Lic. # ***00616212***
Real Estate Broker (Firm)

By *Daron Borst* ***Daron Borst*** DRE Lic. # ***02145726*** Date 10/31/2024
(Salesperson or Broker-Associate, if any)

**2079.13**. As used in this section and §§ 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with § 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with § 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes a vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with § 1940) of Title 5, (3) a mobilehome, as defined in § 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in § 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of § 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in § 18007 of the Health and Safety Code, or a mobilehome as defined in § 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in § 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Single-family residential property" or "single-family residential real property" means any of the following: (1) Real property improved with one to four dwelling units, including a leasehold exceeding one year's duration. (2) A unit in a residential stock cooperative, condominium, or planned unit development. (3) A mobilehome or manufactured home when offered for sale or sold through a real estate broker pursuant to § 10131.6 of the Business and Professions Code. **(m)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of § 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(n)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(o)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.
**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in § 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in § 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.
**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to § 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
**2079.16** Reproduced on Page 1 of this AD form.
**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
CONFIRMATION: **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm ____________ DO NOT COMPLETE. SAMPLE ONLY ____________ License Number ____________

Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)

Seller's Agent ____________ DO NOT COMPLETE. SAMPLE ONLY ____________ License Number ____________

Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

Buyer's Brokerage Firm ____________ DO NOT COMPLETE. SAMPLE ONLY ____________ License Number ____________

Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)

Buyer's Agent ____________ DO NOT COMPLETE. SAMPLE ONLY ____________ License Number ____________

Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by § 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
**2079.18** (Repealed pursuant to AB-1289)
**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of § 2079.14 and § 2079.17 are complied with.
**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

CALIFORNIA ASSOCIATION OF REALTORS®

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

(C.A.R. FORM RPA, Revised 7/24)

COLDWELL BANKER REALTY

Date Prepared: *October 30, 2024*

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** *Shang-Yi Chiang, Victoria Chiang* ("Buyer").
   B. **THE PROPERTY** to be acquired is *6081 Roselle Meadows Trail*, situated in *San Diego* (City), *San Diego* (County), California, *92130* (Zip Code), Assessor's Parcel No(s). *3051612700* ("Property").
   **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**
   C. **THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.**
   D. Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.
2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationship" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.
   **Seller's Brokerage Firm** ______ License Number ______
   Is the broker of (check one): [X] the Seller; or [ ] both the Buyer and Seller (Dual Agent).
   Seller's Agent *Self Represented* License Number ______
   Is (check one): [X] the Seller's Agent. (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).
   **Buyer's Brokerage Firm** *Coldwell Banker Realty* License Number *00616212*
   Is the broker of (check one): [X] the Buyer; or [ ] both the Buyer and Seller (Dual Agent).
   **Buyer's Agent** *Daron Borst* License Number *02145726*
   Is (check one): [X] the Buyer's Agent (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).
   C. [ ] More than one Brokerage represents [ ] Seller, [ ] Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).
   D. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
3. **TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 17 pages. The Parties are advised to read all 17 pages.

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| A | 5, 5B (cash) | **Purchase Price** | $ *1,960,000.00* | [X] All Cash |
| B | | **Close Of Escrow (COE)** | [X] *14* Days after Acceptance<br>OR on [ ] ______ (date) | |
| C | 33A | **Expiration of Offer** | 3 calendar days after all Buyer Signature(s) or *November 1, 2024* (date), at 5PM or ____ [ ] AM/ [ ] PM | |
| D(1) | 5A(1) | **Initial Deposit Amount** | $ *58,800.00* ( *3.00* % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or ____) business days after Acceptance by wire transfer<br>**OR** [ ] ______ |
| D(2) | 5A(2) | [ ] **Increased Deposit (Money placed into escrow after the initial deposit. Use form DID at time increased deposit is made.)** | $ ______ (____% of purchase price) (% number above is for calculation purposes and is not a contractual term) | Upon removal of all contingencies<br>**OR** [ ] ______ (date)<br>**OR** [ ] ______ |
| E(1) | 5C(1) | **Loan Amount(s):** First<br>Interest Rate<br>Points<br>If FHA or VA checked, Deliver list of lender required repairs | $ ______ (____% of purchase price)<br>Fixed rate or [ ] Initial adjustable rate<br>• not to exceed ____%<br>• Buyer to pay up to ____ points to obtain the rate above<br>17 (or ____) Days after Acceptance | Conventional or, if checked,<br>[ ] FHA (Forms FVAC/HID attached)<br>[ ] VA (Form FVAC attached)<br>[ ] Seller Financing<br>[ ] Other:<br>______ |
| E(2) | 5C(2) | Additional Financed Amount<br>Interest Rate<br>Points | $ ______ (____% of purchase price)<br>Fixed rate or [ ] Initial adjustable rate<br>• not to exceed ____%<br>• Buyer to pay up to ____ points to obtain rate above | Conventional or, if checked,<br>[ ] Seller Financing<br>[ ] Other:<br>______ |
| E(3) | 7A | **Occupancy Type** | Primary, or if checked, [X] Secondary [ ] Investment | |
| F | 5D | **Balance of Down Payment** | $ *1,901,200.00* | |
| | | **PURCHASE PRICE TOTAL** | $ *1,960,000.00* | |

© 2024, California Association of REALTORS®, Inc.



Coldwell Banker Realty - Encinitas, 1472 Encinitas Blvd Encinitas CA 92024 Phone: (858)208-3368 Fax: 6081 Roselle
Daron Borst
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| G(1) | 5E | **Seller Credit, if any, to Buyer** | ☐ $ __________ (______% of purchase price) (% number above is for calculation purposes and is not a contractual term) | Seller credit to be applied to closing costs OR ☐ Other: ____________ |
| G(2) | **ADDITIONAL FINANCE TERMS:** ____________ | | | |
| G(3) | 18 | ☒ **Seller agrees to pay the obligation of Buyer to compensate Buyer's Broker under a separate agreement** (C.A.R. Form SPBB attached). | | |
| H(1) | 5B | **Verification of All Cash** (sufficient funds) | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(2) | 6A | **Verification of Down Payment and Closing Costs** | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(3) | 6B | **Verification of Loan Application** | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |
| **I** | **Intentionally Left Blank** | | | |
| J | 16 | **Final Verification of Condition** | 5 (or _____) Days prior to COE | |
| K | 23 | **Assignment Request** | 17 (or _____) Days after Acceptance | |
| **L** | | **CONTINGENCIES** | **TIME TO REMOVE CONTINGENCIES** | **CONTINGENCY REMOVED** |
| L(1) | 8A | **Loan(s)** | 17 (or _____) Days after Acceptance | ☒ No loan contingency |
| L(2) | 8B | **Appraisal:** Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $ ____________ | 17 (or _____) Days after Acceptance | ☒ No appraisal contingency<br>Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | **Investigation of Property** | 17 (or *10*) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY:<br>Any contingency in L(1)-L(8) may be removed or waived by checking the applicable box above or attaching a Contingency Removal (C.A.R. Form CR-B) and checking the applicable box therein. Removal or Waiver at time of offer is against Agent advice. See **paragraph 8I.**<br>☐ **CR-B attached** |
| | | **Informational Access to Property**<br>Buyer's right to access the Property for informational purposes is **NOT** a contingency, does **NOT** create cancellation rights, and applies even if contingencies are removed. | 17 (or _____) Days after Acceptance | |
| L(4) | 8D | **Insurance** | 17 (or *10*) Days after Acceptance | |
| L(5) | 8E, 14A | **Review of Seller Documents** | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(6) | 8F, 13A | **Preliminary ("Title") Report** | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(7) | 8G, 11L | **Common Interest Disclosures** Per Civil Code § 4525 or Agreement | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(8) | 8H, 9B(6) | **Review of leased or liened items** (E.g. solar panels or propane tanks) | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(9) | 8K | **Sale of Buyer's Property** Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ **C.A.R. Form COP attached** | | |
| **M** | | **Possession** | **Time for Performance** | **Additional Terms** |
| M(1) | | **Time of Possession** | Upon notice of recordation, OR ☐ 6 PM or _____ ☐ AM/ ☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7D | **Seller Occupied or Vacant units** | COE date or, if checked below,<br>☐ _____ days after COE (29 or fewer days)<br>☐ _____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | 4A, 7A | **Occupied units by tenants or anyone other than the Seller** | ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) attached | Seller shall disclose if occupied by anyone other than Seller, and attach TOPA in a counter offer if not part of Buyer's offer. |
| **N** | | **Documents/Fees/Compliance** | **Time for Performance** | |
| N(1) | 14A | Seller Delivery of Documents | 7 (or _____) Days after Acceptance | |
| N(2) | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or _____) Days after Delivery | |
| N(3) | 11L(2) | Time to pay fees for ordering HOA Documents | 3 (or _____) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or _____) Days after Acceptance | |
| N(5) | 32 | Evidence of representative authority | 3 Days after Acceptance | |
| **O** | **Intentionally Left Blank** | | | |

| P | Items Included and Excluded | | | |
|---|---|---|---|---|
| P(1) | 9 | **Items Included - All items specified in Paragraph 9B are included and the following, if checked:** | | |
| | | [X] Stove(s), oven(s), stove/oven combo(s);<br>[X] Refrigerator(s);<br>[ ] Wine Refrigerator(s);<br>[X] Washer(s);<br>[X] Dryer(s);<br>[X] Dishwasher(s);<br>[X] Microwave(s);<br>**Additional Items Included:**<br>[X] *Window Coverings* | [ ] Video doorbell(s);<br>[ ] Security camera equipment;<br>[ ] Security system(s)/alarm(s), other than separate video doorbell and camera equipment;<br>[ ] Smart home control devices;<br>[ ] Wall mounted brackets for video or audio equipment;<br>[X] *Ceiling Fans*<br>[ ] | [ ] Above-ground pool(s) / [ ] spa(s);<br>[X] Bathroom mirrors, unless excluded below;<br>[ ] Electric car charging systems and stations;<br>[ ] Potted trees/shrubs;<br>[ ]<br>[ ] |
| P(2) | | **Excluded Items:**<br>[ ] ; | [ ] ; | [ ] ; |

| Q | Allocation of Costs | | | |
|---|---|---|---|---|
| | **Paragraph #** | **Item Description** | **Who Pays** (if Both is checked, cost to be split equally unless Otherwise Agreed) | **Additional Terms** |
| Q(1) | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | [ ] Buyer [X] Seller [ ] Both<br>[X] Provided by: *Seller's Choice* | [X] Environmental<br>[ ] Other |
| Q(2) | | Optional Wildfire Disclosure Report | [ ] Buyer [X] Seller [ ] Both<br>Provided by: *Seller's Choice* | |
| Q(3) | | (A) *Termite* Report<br>(B) *Physical Inspection* Report | [ ] Buyer [X] Seller [ ] Both *Seller's Choice*<br>[X] Buyer [ ] Seller [ ] Both *Buyer's Choice* | |
| Q(4) | 10B(1) | Smoke alarms, CO detectors, water heater bracing | [ ] Buyer [X] Seller [ ] Both | |
| Q(5) | 10A<br>10B(2) | Government Required Point of Sale **inspections, reports** | [ ] Buyer [X] Seller [ ] Both *if applicable* | |
| Q(6) | 10B(2) | Government Required Point of Sale **corrective/remedial actions** | [ ] Buyer [X] Seller [ ] Both *if applicable* | |
| Q(7) | 19B | Escrow Fee | [ ] Buyer [ ] Seller [ ] Both<br>Escrow Holder: *West Coast Escrow - Hennie Bishop* | [X] Each to pay their own fees |
| Q(8) | 13 | Owner's title insurance policy | [ ] Buyer [X] Seller [ ] Both<br>Title Co. (If different from Escrow Holder): *Equity Title - Christy Cimino* | |
| Q(9) | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| Q(10) | | County transfer tax, fees | [ ] Buyer [X] Seller [ ] Both | |
| Q(11) | | City transfer tax, fees | [ ] Buyer [X] Seller [ ] Both | |
| Q(12) | 11L(2) | HOA fee for preparing disclosures | Seller | |
| Q(13) | | HOA certification fee | Buyer | |
| Q(14) | | HOA transfer fees | [ ] Buyer [X] Seller [ ] Both *if applicable* | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee. Applies if separately billed or itemized with cost in transfer fee. |
| Q(15) | | Private transfer fees | Seller, or if checked, [ ] Buyer [ ] Both | |
| Q(16) | | fees or costs | [ ] Buyer [ ] Seller [ ] Both | |
| Q(17) | | fees or costs | [ ] Buyer [ ] Seller [ ] Both | |
| Q(18) | 10C | Home warranty plan chosen by Buyer. Coverage includes, but is not limited to: *American Home Shield Complete (Systems, Appliances, Roof)* | [ ] Buyer [X] Seller [ ] Both<br>Issued by: *American Home Shield - Buyer's Agent to Order*<br>[ ] Buyer waives home warranty plan | If Seller or Both checked, Seller's cost not to exceed $ *795.00*. |
| R | **OTHER TERMS:** | | | |

4. **PROPERTY ADDENDA AND ADVISORIES:** (check all that apply)

A. **PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
- ☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
- ☐ Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)
- ☐ Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)
- ☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
- ☐ Mixed Use Purchase Addendum (C.A.R. Form MU-PA) ☐ Other ______

B. **OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☐ Addendum # ______ (C.A.R. Form ADM)
- ☐ Short Sale Addendum (C.A.R. Form SSA)
- ☐ Back Up Offer Addendum (C.A.R. Form BUO)
- ☐ Court Confirmation Addendum (C.A.R. Form CCA)
- ☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
- ☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA)
- ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
- ☐ Other ______
- ☐ Other ______

C. **BUYER AND SELLER ADVISORIES: (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)**
- ☒ Buyer's Investigation Advisory (C.A.R. Form BIA)
- ☒ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
- ☒ Wire Fraud Advisory (C.A.R. Form WFA)
- ☒ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA) (Parties may also receive a privacy disclosure from their own Agent.)
- ☐ Wildfire Disaster Advisory (C.A.R. Form WFDA)
- ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
- ☐ Trust Advisory (C.A.R. Form TA)
- ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
- ☐ REO Advisory (C.A.R. Form REO)
- ☐ Probate Advisory (C.A.R. Form PA)
- ☐ Other ______
- ☐ Other ______

5. **ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.

A. **DEPOSIT:**

(1) **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.

(2) **INCREASED DEPOSIT:** Increased deposit specified in **paragraph 3D(2)** is to be delivered to Escrow Holder in the same manner as the Initial Deposit. If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount by signing a new liquidated damages clause (C.A.R. Form DID) at the time the increased deposit is delivered to Escrow Holder.

(3) **RETENTION OF DEPOSIT: Paragraph 26, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney: (i) Before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code; and (ii) Regarding possible liability and remedies if Buyer fails to deliver the deposit.**

B. **ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.

C. **LOAN(S):**

(1) **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1)**.

(2) **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2)**.

(3) **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.

(4) **FHA/VA: If FHA or VA is checked in paragraph 3E(1),** a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. Buyer shall, within the time specified in **paragraph 3E(1),** Deliver to Seller written notice (C.A.R. Form RR or AEA) **(i)** of any lender requirements that Buyer requests Seller to pay for or otherwise correct or **(ii)** that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing, Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.

D. **BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

E. **LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

6. **ADDITIONAL FINANCING TERMS:**

A. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B**.

B. **VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

Initial

**C. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (**paragraph 3B**) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**7. CLOSING AND POSSESSION:**

**A. OCCUPANCY:** If Buyer intends to occupy as a primary or secondary residence (see **paragraph 3E(3)**), and unless Otherwise Agreed, such as in C.A.R. Form TOPA: **(i)** the unit Buyer intends to occupy shall be vacant at the time possession is delivered to Buyer, and **(ii)** if the Property contains more than one unit, within **3 Days** after Acceptance Buyer shall give Seller written notice of which unit Buyer intends to occupy. Occupancy may impact available financing. **Seller shall disclose to Buyer if occupied by tenants or persons other than Seller, and attach C.A.R. Form TOPA in a counter offer if not part of Buyer's offer.**

**B. CONDITION OF PROPERTY ON CLOSING:**
Unless Otherwise Agreed: **(i)** the Property shall be delivered "**As-Is**" in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; **(iii)** Except as specified in **paragraph 9C**, Seller is not responsible to repair any holes left after the removal of any wall hangings (such as pictures and mirrors), brackets, nails or other fastening devices; and **(iv)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.

**C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**

**D. SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed: The Parties are advised to **(i)** consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and **(ii)** consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties. Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

**E. At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.

**F.** Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**8. CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**

**A. LOAN(S):**

(1) This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR-B form**, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**

(2) Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Insurance contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Insurance contingency but not the loan contingency.

(3) Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, unless Otherwise Agreed.

(4) If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

(5) **NO LOAN CONTINGENCY:** If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**B. APPRAISAL:**

(1) This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR-B form**, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.

(2) **NO APPRAISAL CONTINGENCY:** If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.

(3) Fair Appraisal Act: See **paragraph 29** for additional information.

**C. INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property. See **paragraph 12.**

**D. INSURANCE:** This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's assessment of the availability and approval of the cost for any insurance policy desired under this Agreement.

**E. REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's review and approval of Seller's documents required in **paragraph 14A**.

**F. TITLE:**

(1) This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.

(2) Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

**G. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in **paragraph 3L(7)**, contingent upon Buyer's review and approval of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11L** ("CI Disclosures").

**H. BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY:** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(8)**, a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(8)**, refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.

**I. REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency.** If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. **If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

**J. REMOVAL OF CONTINGENCY OR CANCELLATION:**

(1) **For any contingency specified in paragraph 3L, 8, or elsewhere, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.**

(2) For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after Delivery of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.

(3) If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

**K. SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(9)**.

**9. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.

**B. ITEMS INCLUDED IN SALE:**

(1) All EXISTING fixtures and fittings that are attached to the Property;

(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window) and any associated hardware and rods, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool heaters, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P, if currently existing at the time of Acceptance.**

**Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P(2)** or excluded by Seller in a counter offer.

(3) Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.

(4) Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.

(5) Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Seller shall de-list any devices from any personal accounts and shall cooperate with any transfer of services to Buyer. Buyer is advised to change all passwords and ensure the security of any smart home features.

(6) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller, within the time specified in **paragraph 3N(1),** shall **(i)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and (ii) Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.

(7) Seller represents that all items included in the purchase price, unless Otherwise Agreed, **(i)** are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6)**, and **(ii)** are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

**C. ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2); (ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

**10. ALLOCATION OF COSTS:**

**A. INSPECTIONS, REPORTS, TESTS AND CERTIFICATES: Paragraphs 3Q(1), (2), (3), and (5)** only determines who is to pay for the inspection, report, test, certificate or service mentioned; **it does not determine who is to pay for any work recommended or identified in any such document. Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).** Any reports in these paragraphs shall be Delivered in the time specified in **paragraph 3N(1).**

**B. GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**

(1) **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4)**. If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.

(2) **POINT OF SALE REQUIREMENTS:**

(A) Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by the Party specified in **paragraphs 3Q(5) and 3Q(6)**. Unless Parties Otherwise Agree to another time period, any such repair, shall be completed prior to final verification of Property. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.

(B) Buyer shall be provided, within the time specified in **paragraph 3N(1)**, unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

(3) **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.

(4) **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.

**C. HOME WARRANTY:**

(1) Buyer shall choose the home warranty plan and any optional coverages. Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18)**. Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer and their cost.

(2) **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

**11. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

**A. TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).

(2) The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.

(3) Seller shall, within the time specified in **paragraph 3N(1)**, provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; **(ii)** if exempt from the obligation to provide a TDS, complete an Exempt Seller Disclosure (C.A.R. Form ESD) by answering all questions and Signing and Delivering a Copy to Buyer.

(4) In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.**

**B. LEAD DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").

(2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

**C. HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: **(i)** a home hardening disclosure required by law; and **(ii)** a statement of features of which the Seller is aware that may make the home vulnerable to wildfire and flying embers; and **(iii)** a final inspection report regarding compliance with defensible space requirements if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

**D. DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer **(i)** a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and **(ii)** an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

**E. WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1)**, **11B**, **11C**, and **11D** are prohibited by Law.

**F. RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(5)** OR **5 Days** after Delivery of any disclosures specified in paragraphs **11A**, **B**, **C** or **D**, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

**G. TERMINATION RIGHTS:**

(1) **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A**, **B**, **C**, or **D**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.

(2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11F**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

**H. WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(i)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**I. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov**. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**J. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/**. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**L. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).

(2) If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR): **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**M. SOLAR POWER SYSTEMS:** For properties with any solar panels or solar power systems, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all known information about the solar panels or solar power system. Seller shall use the Solar Advisory and Questionnaire (C.A.R. Form SOLAR).

**N. BALCONIES, EXTERIOR STAIRWAYS AND OTHER ELEVATED ELEMENTS:** For properties with any building containing 3 or more dwelling units with elevated balconies, stairways or other elements, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer the Wooden Balcony and Stairs Addendum (C.A.R. Form WBSA) and comply with its terms.

**O. KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact insurer to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.** Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

**B.** Buyer Investigations include, but are not limited to:

(1) Inspections regarding any physical attributes of the Property or items connected to the Property, such as:

(A) A general home inspection.

(B) An inspection for lead-based paint and other lead-based paint hazards.

(C) An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).

(D) Any other specific inspections of the physical condition of the land and improvements.

(2) Investigation of any other matter affecting the Property, other than those that are specified as separate contingencies. Buyer Investigations do not include, among other things, an assessment of the availability and cost of general homeowner's insurance, flood insurance, and fire insurance. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.

**C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling through stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, **(i)** by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3)** or **3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

**E. Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall**: (i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

**A.** Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

**B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

**C.** Seller shall within **7 Days** after request, give Escrow Holder necessary information to clear title.

**D.** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**E.** If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

F. Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

G. Buyer shall receive a "ALTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between a ALTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR-B, CR-S or CC).**

A. **SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in **paragraphs 7A, 9B(6), 10, 11A, 11B, 11C, 11D, 11H, 11K, 11L, 11M, 11N, 11O, 13A, 13D, and 32.**

B. **BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**

(1) Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, Reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11**.

(2) Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.

(3) Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR-B or CC). Buyer is advised not to remove contingencies related to review of documents until after the documents have been Delivered. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11G**.

(4) **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of contingency is Delivered to Seller before Seller cancels, Seller may not cancel this Agreement based on that contingency pursuant to **paragraph 14C(1)**.

C. **SELLER RIGHT TO CANCEL:**

(1) **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3)**; **(iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); (iv) Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A**; **(v)** Deliver a letter as required by **paragraph 6B**; **(vi)** In writing assume or accept leases or liens specified in **paragraph 8H**; **(vii)** Return Statutory and Other Disclosures as required by **paragraph 11F**; **(viii)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13E**; **(ix)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraph 26**; **(x)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 32**; or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.

(3) **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

D. **BUYER RIGHT TO CANCEL:**

(1) **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.

(2) **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.

(3) **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in **paragraph 8**, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

Initial

E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: (i) be in writing; (ii) be Signed by the applicable Buyer or Seller; and (iii) give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, except for Close of Escrow which shall be Delivered under the terms of **paragraph 14G**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void. However, if the notice is for multiple items, the notice shall be valid for all contingencies and contractual actions for which the Delivery of the notice is within the time permitted in the Agreement and void as to the others. Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

F. **EFFECT OF REMOVAL OF CONTINGENCIES:**

(1) **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of Reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for the non-delivery of any Reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

(2) **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: **(i)** satisfied themselves regarding such contingency, **(ii)** elected to proceed with the transaction; and **(iii)** given up any right to cancel this Agreement based on such contingency.

G. **DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: **(i)** be Signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.

H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less **(i)** fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and **(ii)** any escrow fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. **A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

15. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

16. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to **paragraph 7B**; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

17. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments to third parties, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

18. **BROKERS AND AGENTS:**

A. **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer. If Seller agrees to pay the obligation of Buyer to compensate Buyer's Broker (see **paragraph 3G(3)**), Seller shall be entitled to a copy of the written portion of the compensation agreement between Buyer and Buyer's Broker identifying the compensation to be paid. See C.A.R. Form SPBB for further information.

**B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

**A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11H, 11L(2), 13 (except 13D), 14H, 17, 18A, 19, 23, 25, 31, 32, 33,** and **34.** If a Copy of the separate compensation agreement(s) provided for in **paragraph 18A** is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

**B.** Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2)**. Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3**, **8**, **10**, **11**, or elsewhere in this Agreement.

**C.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance**. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11H**, Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11H**.

**D.** Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A**. If a Copy of the separate compensation agreement(s) is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). Escrow Holder shall provide to Buyer and Seller, either jointly or separately, a closing statement or other written documentation showing the amount of compensation paid to, respectively, Buyer's Broker and Seller's Broker. Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A**, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

**E.** Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

**F.** Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraphs 5A(1) and 5A(2)**. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**G.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**20. SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**21. MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

**22. ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 27A.**

**23. ASSIGNMENT/NOMINATION:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B**. Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K**, Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA). Parties shall provide any assignment agreement to Escrow Holder within **1 Day** after the assignment. Any nomination by Buyer shall be subject to the same procedures, requirements, and terms as an assignment as specified in this paragraph.

**24. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**25. DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

**A. "Acceptance"** means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

**B. "Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B**.

**C. "Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

**D. "As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

**E. "Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.

**F. "C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

**G. "Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

**H. "Copy"** means copy by any means including photocopy, facsimile and electronic.

**I. Counting Days** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or Legal Holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or Legal Holiday ("Allowable Performance Day"), and ending at 11:59 pm. "Legal Holiday" shall mean any holiday or optional bank holiday under Civil Code §§ 7 and 7.1, any holiday under Government Code § 6700. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed or any day that the lender or Escrow Holder under this Agreement is closed, the COE shall occur on the next day the Recorder's office in that County, the lender, and the Escrow Holder is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.

**J. "Day" or "Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

**K. "Deliver", "Delivered" or "Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means (i) a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other). A document, or as applicable link to a document, shall be deemed to be "in possession" if it is located in the inbox for the applicable Party or Authorized Agent; or (ii) an Electronic Copy of the document, or as applicable, link to the document, has been sent to the designated electronic delivery address specified in the Real Estate Broker Section, unless Otherwise Agreed in C.A.R. Form DEDA. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party (C.A.R. Form DEDA). Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.

**L. "Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Unless Otherwise Agreed, Buyer and Seller agree to the use of Electronic Signatures. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

**M. "Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

**N. "Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 33** or **paragraph 34.**

**O. "Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

**P. "Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

**Q. "Sign" or "Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

**26. LIQUIDATED DAMAGES** (By initialing in the space below, you are agreeing to Liquidated Damages)**:**
**If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).**

**Buyer's Initials** SC / _______ **Seller's Initials** [initial] / _______

**27. MEDIATION:**

**A.** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for Consumers **(www.consumermediation.org)** or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent.** Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

**B. ADDITIONAL MEDIATION TERMS: (i) Exclusions from this mediation agreement are specified in paragraph 28B; (ii) The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 28C; and (iii) Agent's rights and obligations are further specified in paragraph 28D. These terms apply even if the Arbitration of Disputes paragraph is not initialed.**

**28. ARBITRATION OF DISPUTES:**

**A. The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.**

**B. EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.**

**C. PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, provided the filing party concurrent with, or immediately after such filing makes a request to the court for a stay of litigation pending any applicable mediation or arbitration proceeding; or (iii) the filing of a mechanic's lien.**

**D. AGENTS: Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.**

**E. "NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

**Buyer's Initials** SC / VC **Seller's Initials** _______ / _______

**29. FAIR APPRAISAL ACT NOTICE:**

**A.** Any appraisal of the property is required to be unbiased, objective, and not influenced by improper or illegal considerations, including, but not limited to, any of the following: race, color, religion (including religious dress, grooming practices, or both), gender (including, but not limited to, pregnancy, childbirth, breastfeeding, and related conditions, and gender identity and gender expression), sexual orientation, marital status, medical condition, military or veteran status, national origin (including language use and possession of a driver's license issued to persons unable to provide their presence in the United States is authorized under federal law), source of income, ancestry, disability (mental and physical, including, but not limited to, HIV/AIDS status, cancer diagnosis, and genetic characteristics), genetic information, or age.

**B.** If a buyer or seller believes that the appraisal has been influenced by any of the above factors, the seller or buyer can report this information to the lender or mortgage broker that retained the appraiser and may also file a complaint with the Bureau of Real Estate Appraisers at https://www2.brea.ca.gov/complaint/ or call (916) 552-9000 for further information on how to file a complaint.

**30. TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. **If at least one but not all Parties initial, a counter offer is required until agreement is reached.** Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By Signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

**31. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller**.

**32. LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraphs 33** or **34** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer (i) represents that the entity for which that person is acting already exists and is in good standing to do business in California and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days** after Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK**

**PROCEED TO NEXT PAGE**

**33. OFFER**

**A. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. **Seller has no obligation to respond to an offer made.**

**B.** ☐ **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

(1) One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.
(2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 32** for additional terms.
(3) The name(s) of the Legally Authorized Signer(s) is/are: ____________, ____________.
(4) A. If a trust, identify Buyer as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust).
B. If Property is sold under the jurisdiction of a probate court, identify Buyer as executor or administrator, or by a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).
(5) The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): ____________________.

**C.** The RPA has 17 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D. BUYER SIGNATURE(S):**
(Signature) By, AuthentiSIGN Shang-Yi Chiang **Date:** 10/31/2024
Printed name of BUYER: ***Shang-Yi Chiang***
☐ Printed Name of Legally Authorized Signer: ____________ Title, if applicable, ____________
(Signature) By, AuthentiSIGN Victoria Chiang **Date:** 10/31/2024
Printed name of BUYER: ***Victoria Chiang***
☐ Printed Name of Legally Authorized Signer: ____________ Title, if applicable, ____________
☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**34. ACCEPTANCE**

**A. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.
**Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.**
Seller shall return and include the entire agreement with any response.
☒ **Seller Counter Offer** (C.A.R. Form SCO or SMCO)
☐ **Back-Up Offer Addendum** (C.A.R. Form BUO)

**B.** ☐ **ENTITY SELLERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

(1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.
(2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 32** for additional terms.
(3) The name(s) of the Legally Authorized Signer(s) is/are: ____________, ____________.
(4) A. If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co - trustee or Doe Revocable Family Trust).
B. If Property is sold under the jurisdiction of a probate court, identify Seller as executor or administrator, or by a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).
(5) The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): ____________________.

**C.** The RPA has 17 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D. SELLER SIGNATURE(S):** Signed by: C Parker
(Signature) By, BD48B7ACB870407 **Date:** 11/2/2024
Printed name of SELLER: ***Joshua Parker***
☐ Printed Name of Legally Authorized Signer: ____________ Title, if applicable, ____________
(Signature) By, ____________ **Date:** ____________
Printed name of SELLER: ____________
☐ Printed Name of Legally Authorized Signer: ____________ Title, if applicable, ____________
☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

| |
|---|
| **OFFER NOT ACCEPTED:** ______/______ No Counter Offer is being made. This offer was not accepted by Seller __________ (date)<br>Seller's Initials |

**REAL ESTATE BROKERS SECTION**

1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
4. **Agents' Signatures and designated electronic delivery address:**

**A.** Buyer's Brokerage Firm *Coldwell Banker Realty* DRE Lic. # *00616212*
By Daron Borst *Daron Borst* DRE Lic. # *02145726* Date 10/31/2024
By ______ DRE Lic. # ______ Date ______
Address *1472 Encinitas Blvd* City *Encinitas* State *CA* Zip *92024*
Email *daron@theborstgroup.com* Phone # *(858)208-3368*
☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.
**Designated Electronic Delivery Address(es): Email above or** ______
☐ **Attached DEDA:** If Parties elect to have an alternative Delivery method, such method may be indicated on C.A.R. Form DEDA.

**B.** Seller's Brokerage Firm ______ DRE Lic. # ______
By *Self Represented* DRE Lic. # ______ Date ______
By ______ DRE Lic. # ______ Date ______
Address ______ City ______ State ____ Zip ______
Email *joshcparker@gmail.com* Phone # *(858)775-0103*
☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.
**Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent): Email above or** ______
☐ **Attached DEDA:** If Parties elect to have an alternative Delivery method, such method may be indicated on C.A.R. Form DEDA.

Buyer's Initials SC / VC Seller's Initials JP / ______

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ ______), Counter Offer numbers ______ and ______, and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised by ______ that the date of Acceptance of the Agreement is ______
Escrow Holder ______ Escrow # ______
By ______ Date ______
Address ______
Phone/Fax/E-mail ______
Escrow Holder has the following license number # ______
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

**PRESENTATION OF OFFER:** ______/______ Seller's Brokerage Firm presented this offer to Seller on ______ (date).
Agent or Seller Initials

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.
Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*
EQUAL HOUSING OPPORTUNITY

CALIFORNIA ASSOCIATION OF REALTORS®

# BUYER'S INVESTIGATION ADVISORY

(C.A.R. Form BIA, Revised 12/21)

COLDWELL BANKER REALTY

Property Address *6081 Roselle Meadows Trail, San Diego, CA 92130*

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.
2. **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.
3. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**
   A. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.
   B. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.
   C. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.
   D. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.
   E. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.
   F. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).
   G. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.
   H. **FIRE, HAZARD, AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.
   I. **BUILDING PERMITS, ZONING, GOVERNMENTAL REQUIREMENTS, AND ADDRESS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. Postal/mailing address and zip code may not accurately reflect the city which has jurisdiction over the property.
   J. **RENTAL PROPERTY RESTRICTIONS:** The State, some counties, and some cities impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.
   K. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

© 2021, California Association of REALTORS®, Inc.



Coldwell Banker Realty - Encinitas, 1472 Encinitas Blvd Encinitas CA 92024 Phone: (858)208-3368 Fax: 6081 Roselle
Daron Borst Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

**L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer AuthentiSIGN Shang-Yi Chiang ***Shang-Yi Chiang*** Date 10/31/2024

Buyer AuthentiSIGN Victoria Chiang ***Victoria Chiang*** Date 10/31/2024

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

EQUAL HOUSING OPPORTUNITY

CALIFORNIA ASSOCIATION OF REALTORS®

# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER - DISCLOSURE AND CONSENT

**(C.A.R. Form PRBS, Revised 12/21)**

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

Seller (Signed by: Josh C Parker, BD48B7ACB870407...) ***Joshua Parker*** Date 11/2/2024

Seller ______ Date ______

Buyer (AuthentiSIGN: Shang-Yi Chiang) ***Shang-Yi Chiang*** Date 10/31/2024

Buyer (AuthentiSIGN: Victoria Chiang) ***Victoria Chiang*** Date 10/31/2024

Buyer's Brokerage Firm ***Coldwell Banker Realty*** DRE Lic # ***00616212***

By (AuthentiSIGN: Daron Borst) DRE Lic # ***02145726*** Date 10/31/2024

***Daron Borst***

Seller's Brokerage Firm ______ DRE Lic # ______

By ______ DRE Lic # ______ Date ______

***Self Represented***

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

EQUAL HOUSING OPPORTUNITY

CALIFORNIA ASSOCIATION OF REALTORS®

# FAIR HOUSING AND DISCRIMINATION ADVISORY

(C.A.R. Form FHDA, Revised 6/23)

COLDWELL BANKER REALTY

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   - **A.** FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   - **B.** CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§ 12900-12996,12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   - **C.** CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   - **D.** AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   - **E.** OTHER FAIR HOUSING LAWS: § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION: Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.**
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| | | | | |
|---|---|---|---|---|
| Race | Color | Ancestry | National Origin | Religion |
| Age | Sex, Sexual Orientation | Gender, Gender Identity, Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any arbitrary characteristic |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   - **A.** California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   - **B.** Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR § 2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION**: NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.
   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords/Housing Providers
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers
8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   - **A.** Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of **(i)** actual or unconscious bias, and **(ii)** potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   - **B.** Refusing to rent **(i)** an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or **(ii)** a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   - **A.** Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   - **B.** Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   - **C.** "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   - **D.** Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2023, California Association of REALTORS®, Inc.

Docusign Envelope ID: D8FD17B0-4311-4A45-A912-38D321C139CC

E. Inquiring about protected characteristics (such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);
F. Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;
G. Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);
H. Denying a home loan or homeowner's insurance;
I. Offering inferior terms, conditions, privileges, facilities or services;
J. Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;
K. Harassing a person;
L. Taking an adverse action based on protected characteristics;
M. Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a tenant who uses a wheelchair to install, at their expense, a ramp over front or rear steps, or refusing to allow a tenant with a disability from installing, at their own expense, grab bars in a shower or bathtub);
N. Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):
 (i) Failing to allow that person to keep the service animal or emotional support animal in rental property,
 (ii) Charging that person higher rent or increased security deposit, or
 (iii) Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;
O. Retaliating for asserting rights under fair housing laws.

**10. EXAMPLES OF POSITIVE PRACTICES:**
A. Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.
B. Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.
C. Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.
D. Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").
E. Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

**11. FAIR HOUSING RESOURCES**: If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.
A. Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**
B. State: **https://calcivilrights.ca.gov/housing/**
C. Local: local Fair Housing Council office (non-profit, free service)
D. DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**
E. Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster**.
F. Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

**12. LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**
A. Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;
B. An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;
C. An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;
D. An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and
E. Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC*, 666 F.3d 1216 (2019).
F. Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

**Buyer/Tenant and Seller/Housing Provider have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.**

Buyer/Tenant Shang-Yi Chiang *Shang-Yi Chiang* Date 10/31/2024
Buyer/Tenant Victoria Chiang *Victoria Chiang* Date 10/31/2024
Seller/Housing Provider Signed by: Josh C Parker BD48B7ACB870407... *Joshua Parker* Date 11/2/2024
Seller/Housing Provider ______ Date ______

© 2023, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com 6081 Roselle

CALIFORNIA ASSOCIATION OF REALTORS®

COLDWELL BANKER REALTY

# BUYER HOMEOWNERS' INSURANCE ADVISORY

**(C.A.R. Form BHIA, 6/24)**

1. **IMPORTANCE OF OBTAINING PROPERTY INSURANCE:** If the property you are purchasing is destroyed or damaged due to natural disaster or accident or some other event, insurance may be available to help with the cost of repair or rebuilding. In the absence of property insurance, the homeowner would be responsible for the full expense. If the property is purchased with a loan, or refinanced, the lender will require an insurance policy protecting its interest. Insurance policies can cover damage due to one or more of the following: fire, flood, earthquake and other causes. The policy or an insurance broker should be consulted to determine when coverage applies and whether a supplement or rider can be purchased to provide additional coverage or if a separate policy is necessary.

2. **PROPERTY INSURANCE AND PURCHASE CONTRACT TERMS:** Your real estate purchase contract may contain a contingency that gives you the right to legally cancel the agreement within a specified time if you are unable to obtain or afford property insurance. This cancellation right may be a specific contingency pertaining to insurance or may be part of an overall investigation contingency. If buyer waives or removes the applicable contingency before determining the availability and cost of property insurance, buyer is acting against the advice of broker. Additionally, if the property is part of an HOA, lenders may require and buyers will want to know that the HOA has adequate insurance to cover the areas for which the HOA is responsible.

3. **CALIFORNIA'S PROPERTY INSURANCE MARKET:** Some insurance carriers in California have stopped issuing new property insurance policies and others are limiting the number and location of new policies, due to rising replacement costs and an increase in natural disasters. These changes may affect both the availability and cost of insurance. However, over 50 insurance carriers are admitted to sell property insurance in California so it may be possible to obtain insurance even if some carriers will not write a new policy covering the property you intend to buy. An insurance broker may also be able to find a non-admitted insurance carrier offering to insure the property you intend to buy. Because locating an affordable insurance policy could take time and effort, buyers are advised to make all insurance inquiries as early in the home buying process as possible.

4. **INSURANCE CONDITIONS:** Many insurance carriers impose physical condition standards before issuing a policy, or reserve the right to cancel policies even after they are issued, if certain minimum standards are not confirmed in an inspection or otherwise. Physical conditions standards could include, but are not limited to, prohibition of "knob and tube" electrical wiring, requirements related to piping/plumbing materials, standards related to the age and/or quality of the roof or foundation, minimal safety standards related to handrails, tripping hazards, and defensible space requirements.

5. **RESOURCES:** The California Department of Insurance (DOI) maintains a website addressing Residential Home insurance. Resources on this State government webpage include: **(i)** Top Ten tips for Finding Residential Insurance; **(ii)** Residential Insurance Company Contact List; **(iii)** Home Insurance Finder; and **(iv)** information on other insurance issues. The webpage also includes information on how to contact the DOI, and suggestions on what to do if you cannot find insurance. The webpage and link to other documents is located at https://www.insurance.ca.gov/01-consumers/105-type/5-residential/index.cfm.

6. **BROKER RECOMMENDATION:** Buyer is advised to explore available property insurance options early in the home buying process and to consult with a qualified insurance professional of buyer's choosing to understand insurance availability and cost prior to removal of any related contingencies. Real estate brokers do not have expertise in this area.

**By signing below, Buyer acknowledges that Buyer has read, understands, and has received a copy of this Buyer Homeowners' Insurance Advisory.**

Buyer *Shang-Yi Chiang* (AuthentiSIGN) ***Shang-Yi Chiang*** Date 10/31/2024

Buyer *Victoria Chiang* (AuthentiSIGN) ***Victoria Chiang*** Date 10/31/2024

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

EQUAL HOUSING OPPORTUNITY

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

CALIFORNIA ASSOCIATION OF REALTORS®

# WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY

(C.A.R. Form WFA, Revised 12/21)

COLDWELL BANKER REALTY

Property Address: *6081 Roselle Meadows Trail, San Diego, CA 92130* ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

**ACCORDINGLY, YOU ARE ADVISED:**

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

Buyer/Tenant (AuthentiSIGN) Shang-Yi Chiang *Shang-Yi Chiang* Date 10/31/2024

Buyer/Tenant (AuthentiSIGN) Victoria Chiang *Victoria Chiang* Date 10/31/2024

Seller/Landlord (Signed by:) Josh C Parker BD48B7ACB870407... *Joshua Parker* Date 11/2/2024

Seller/Landlord ______ Date ______

©2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

EQUAL HOUSING OPPORTUNITY



Coldwell Banker Realty - Encinitas, 1472 Encinitas Blvd Encinitas CA 92024 Phone: (858)208-3368 Fax: 6081 Roselle
Daron Borst Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

CALIFORNIA ASSOCIATION OF REALTORS®

# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE

**(C.A.R. Form CCPA, Revised 12/22)**

COLDWELL BANKER REALTY

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA"), as amended by California voters in 2020, grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you. PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, the right to know what PI is sold or shared and to whom, the right to request that the business correct or delete your PI, the right to "opt out" or stop the transfer of your PI to others, and the right to limit the use of certain PI which is considered "sensitive." You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Moreover, businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa). Additionally, the California Privacy Protection Agency is authorized to promulgate regulations which may further clarify requirements of the CCPA (cppa.ca.gov/regulations/).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

Buyer/Seller/Landlord/Tenant AuthentiSIGN Shang-Yi Chiang Date 10/31/2024
Shang-Yi Chiang

Buyer/Seller/Landlord/Tenant AuthentiSIGN Victoria Chiang Date 10/31/2024
Victoria Chiang

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

EQUAL HOUSING OPPORTUNITY



Coldwell Banker Realty - Encinitas, 1472 Encinitas Blvd Encinitas CA 92024 Phone: (858)208-3368 Fax: 6081 Roselle
Daron Borst Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

# Exhibit D

Lawyers Title

2535 Townsgate Rd, Suite 107
Westlake Village, CA 91361
Phone: 805-446-6465 / Fax: 818-394-4825

Joshua Christopher Parker
6081 Roselle Meadows Trail
San Diego, CA 92130

**Date:** November 20, 2024
**Escrow No.:** LEWL2400332-JS
**Buyer(s):** ShangYi Chiang and Victoria Chiang
**Seller(s):** Joshua Christopher Parker
**Property:** 6081 Roselle Meadows Trail
San Diego, CA 92130

Please be advised that we have the right to resign as Escrow Holder pursuant to our general provisions. This is our notice to you that Lawyers Title Company is resigning as Escrow Holder on the above referenced transaction.

**RIGHT OF RESIGNATION**

Escrow Holder has the right to resign upon written notice delivered to the principals herein. If such right is exercised, all funds and documents shall be returned to the party who deposited them and Escrow Holder shall have no liability hereunder.

Therefore, on November 21, 2024, all documents and funds will be returned as noted above. In addition, our family of title insurance underwriters decline to insure the property referenced in this transaction.

Sincerely,

James Stott
Escrow Officer
JStott@ltic.com

cc: Emmett Dalton / Dalton Real Estate

# Exhibit E

Gmail

Josh Parker <joshcparker@gmail.com>

## {encrypt} RE: Purchase Agreement Set - 6081 Roselle Meadows Trail / File FRX-128092

**Stott, James** <jstott@ltic.com> Mon, Nov 18, 2024 at 6:09 PM
To: Unison Home Partnership Team <homepartners@unisonim.com>
Cc: Emmett Dalton <emmettdalton10@gmail.com>, Unnamed Contact <joshcparker@gmail.com>

This message was sent securely using Zix®

Good afternoon. Attached are return wire instructions to Lawyers Title if needed.



Lawyers Title

**James Stott**
*Senior Escrow Officer - Residential / Relocation / New Construction*

o. 805.446.6465
f. 818.394.4825
e. jstott@ltic.com / teamjames@ltic.com

2535 Townsgate Rd., Suite 107
Westlake Village, CA 91361
lawyersvc.com

DOI No. 5920-4

---

**From:** Emmett Dalton <emmettdalton10@gmail.com>
**Sent:** Friday, November 15, 2024 7:12 AM
**To:** Stott, James <jstott@ltic.com>
**Cc:** Unison Home Partnership Team <homepartners@unisonim.com>; Unnamed Contact <joshcparker@gmail.com>
**Subject:** Fw: Purchase Agreement Set - 6081 Roselle Meadows Trail

James

See attached from Anavin at Unison

# Exhibit F

CALIFORNIA ASSOCIATION OF REALTORS®

# CANCELLATION OF CONTRACT, DISPOSITION OF DEPOSIT AND CANCELLATION OF ESCROW

**(C.A.R. Form CC, Revised 6/24)**

COLDWELL BANKER REALTY

In accordance with the terms and conditions of the Purchase Agreement, OR ☐ Other ______ ("Agreement"), dated *10/30/2024*, including all amendments and related documents, on property known as *6081 Roselle Meadows Trail, San Diego, CA 92130* ("Property"), between *Shang-Yi Chiang, Victoria Chiang* ("Buyer") and *Joshua Parker* ("Seller"). Buyer and Seller are referred to as the "Parties."

**ADVISORY AND INSTRUCTIONS:** The Party cancelling the Agreement is required to act in good faith. Disputes over cancellation and deposit can be complex legal issues and can be expensive to resolve. **Agents are not qualified to provide any opinion on who is entitled to the deposited funds or whether a cancellation was made in good faith. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

The party cancelling the Agreement, and not the Agent, needs to determine if a cancellation right applies. Cancellation must be exercised in good faith and in accordance with the rights and procedures within the Agreement, including any applicable Notice to Perform or Demand to Close Escrow. Section 1 allows for either a one-party cancellation (see **paragraph 1A**), or for a proposed mutual cancellation which becomes effective upon a mutual execution of Section 2 (see **paragraph 1B**).

If there is an open escrow, Escrow Holder will need mutual agreement and instructions from both Parties regarding the deposit and cancelling of escrow. If the Parties agree on the release of the deposit, then the Parties can exercise a mutual instruction with full release in **paragraph 2C** below. If the Parties are cancelling the Agreement but are disputing the deposit, then the Partial Release section can be used in **paragraph 2D.**

Parties are advised to consult with a qualified California real estate attorney regarding potential damages and remedies, including, but not limited to, retaining the deposit, seeking other monetary damages, and pursuing specific performance. Any dispute will have to be resolved in the manner specified in the Agreement.

---

**Both paragraphs 1 and 2 are escrow instructions to Escrow Holder. Cancellation under paragraph 1A, requires the signature of either Buyer or Seller, but not both. Paragraphs 1B and 2 require the signatures of both parties to be effective.**

1. **CANCELLATION OF CONTRACT:**
   A. **One-party cancellation: This paragraph is used to cancel the Agreement by Buyer or Seller. Its terms apply whether or not both Parties agree to disposition of the deposit and cancellation of escrow in paragraph 2 below.**

   The ☒ Buyer or ☐ Seller Signing below cancel(s) the Agreement for the following reason:
   (1) ☐ As permitted by the good faith exercise of paragraph(s) ______ of the Agreement.
   (2) ☐ Buyer has failed to remove the applicable contingency or take the applicable contractual action after being given a Notice to Buyer to Perform (C.A.R. Form NBP).
   (3) ☐ Seller has failed to remove the applicable contingency or take the applicable contractual action after being given a Notice to Seller to Perform (C.A.R. Form NSP).
   (4) ☐ The other Party has failed to close escrow after being given a Demand to Close Escrow (C.A.R. Form DCE).
   (5) ☒ Other *Seller has failed to reach agreement with lien holder, Unison, impeding the continuation of escrow*.

   B. ☐ **Proposed mutual cancellation:** The Buyer or Seller Signing below proposes a mutual cancellation of the Agreement. The cancellation is only effective if agreement is reached and both Parties Sign in **paragraph 2** below as follows. This Proposed mutual cancellation **(i)** may be withdrawn by the Party initiating it any time prior to agreement by the other party in **paragraph 2** below, and **(ii)** shall be deemed revoked unless by 5:00 PM on the third Day after it is Signed by the initiating Party in **paragraph 1** (or by ____ ☐ AM/☐ PM on ______ date) it is Signed by the other Party in **paragraph 2** and a Copy of this completed form is Delivered to the initiating Party.

*Shang-Yi Chiang* Shang-Yi Chiang — 12/04/24
Buyer's or Seller's Signature (party cancelling the contract) — Date

*Victoria Chiang* Victoria Chiang — 12/04/24
Buyer's or Seller's Signature (party cancelling the contract) — Date

*****SIGN IN THIS SECTION SOLELY FOR CANCELLATION OF CONTRACT. PROCEED TO PAGE 2 FOR DISPOSITION OF DEPOSIT AND CANCELLATION OF ESCROW.*****

© 2024, California Association of REALTORS®, Inc.

**2. DISPOSITION OF DEPOSIT and CANCELLATION OF ESCROW**

**A. PURPOSE OF PARAGRAPH 2: This paragraph is used to instruct Escrow Holder (i) to cancel the escrow for the purchase/sale or other designated transaction for the Property and (ii) what to do with the deposit. Any cancellation of contract pursuant to paragraph 1A, remains in effect even if both Parties to the Agreement do not sign below.**

**B. RELEASE OF FUNDS NOT AUTOMATIC:** Release of funds by Escrow Holder (pursuant to paragraph 2) requires mutually Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A party may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

**C. FULL RELEASE AND DISPOSITION OF DEPOSIT (Select one of the options in C, or complete D, but not both.):** Buyer and Seller cancel escrow # ______________ with ______________________________________ . The parties **(i)** mutually release each other from any obligation to buy, sell or exchange the Property under the Agreement; **(ii)** mutually release each other from all other claims, actions and demands that each may have against the other(s) by reason of the Agreement; and **(iii)** intend that all other rights and obligations arising out of the Agreement are null and void.

(1) ☐ Seller authorizes release of Buyer's deposit to Buyer, less Buyer's fees and costs **(i)** already incurred, and **(ii)** agreed in the contract to be paid through escrow (including any escrow fee). ☐ If checked, Seller agrees to pay for Buyer out-of-pocket expenses for inspection reports and appraisal fees as specified in the Agreement. Buyer shall Deliver receipts for such expenses to Escrow Holder.

OR (2) ☐ Buyer authorizes release of Buyer's deposit to Seller, less Seller's fees and costs **(i)** already incurred, and **(ii)** agreed in the contract to be paid through escrow (including any escrow fee). Pursuant to a properly executed liquidated damages clause, Buyer's authorization of release of deposit to Seller is limited to no more than 3% of the purchase price, if the Property is a dwelling with no more than four units, one of which Buyer intended to occupy. Any additional deposit shall be returned to Buyer.

OR (3) ☐ Buyer authorizes release of $__________ from Buyer's deposit to Seller. The balance to be returned to Buyer. Each Party to pay for their own unpaid contractual fees and costs **(i)** already incurred and **(ii)** agreed in the contract to be paid through escrow (including any escrow fee). Such fees and costs shall be deducted from the amount specified above.

OR (4) ☐ There is no deposit in escrow. Each Party to pay for their own unpaid contractual fees and costs, if any, **(i)** already incurred, and **(ii)** agreed in the contract to be paid through escrow (including any escrow fee).

**D.** ☒ **PARTIAL RELEASE AND RESERVATION OF RIGHTS:** Buyer and Seller cancel escrow # ***02-240907-RB*** with ***Corinthian Title Company*** The Parties:

(1) Mutually release each other from any obligation to buy, sell or exchange the Property under the Agreement;

(2) Reserve all rights and retain any obligations they have toward each other under the Agreement, except for the obligation, as applicable, to buy, sell, or exchange the Property; and

(3) Authorize Escrow Holder or ☐ ______________________________ to hold any deposit until receiving subsequent mutual instructions, judicial decision or arbitration award, or ☒ there is no deposit in escrow.

Buyer *Shang-Yi Chiang* ***Shang-Yi Chiang*** Date 12/04/2024

Buyer *Victoria Chiang* ***Victoria Chiang*** Date 12/04/2024

Seller ______________________ ***Joshua Parker*** Date ____________

Seller ______________________ Date ____________

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

EQUAL HOUSING OPPORTUNITY



DB

# Exhibit G

Gmail Josh Parker <joshcparker@gmail.com>

## RE: FW: Update & Communications

1 message

**Roxanne Balone** <roxanne.balone@corinthiantitle.com> Wed, Dec 4, 2024 at 3:12 PM
To: Josh Parker <joshcparker@gmail.com>, Alexander Gershen <agershen@scalefirm.com>
Cc: Emmett Dalton <emmettdalton10@gmail.com>, Team Teri <teamteri@corinthiantitle.com>, Home Partners <homepartners@unison.com>, Jamie Wells <jamie.wells@scalefirm.com>

*Buyers have Cancelled!*

*Josh Please executed cancellation instructions*

*Good Luck to everyboday!*




**Roxanne Balone**

CORINTHIAN
TITLE COMPANY, INC.

16787 Bernardo Center Drive, Suite 4

San Diego Ca 92128

PH: 858/926-3700

FX: 858/923-2207

Roxanne.balone@corinthiantitle.com

YOU DON'T HAVE TO BE AMAZING TO START - YOU HAVE TO START, SO YOU CAN BE AMAZING!

**CAUTION: EMAIL FRAUD CONTAINING INCORRECT WIRE INSTRUCTIONS. If you receive an email requesting you to wire funds to escrow, CALL YOUR ESCROW OFFICER IMMEDIATELY to verify the information prior to sending funds.**

# Exhibit H

# Outgoing Wire Detail

| | | | |
|---|---|---|---|
| **File:** | VPC36171 | **System ID:** | 4142980 |
| **Date:** | 02/22/2019 | | |
| **User:** | ResWare Server | | |
| **Transactee:** | Josh Parker | | |
| **Amount:** | ($170,698.00) | | |
| **Confirmation #:** | 190222 147714 | | |
| **Receiving Bank:** | WELLS FARGO BANK | **Sending Bank:** | Wells Fargo Bank N.A. |
| **Receiving ABA:** | 122000247 | **Sending ABA:** | 063107513 |
| **Receiving Account:** | 8857356888 | **Sending Account:** | 2000047551976 |
| **For Credit Of:** | Joshua Parker | | |
| **Memo:** | | | |
| **Note:** | Joshua Parker<br>VPC36171 | | |

Gmail Josh Parker <joshcparker@gmail.com>

# Re: Purchase Agreement Set

1 message

**homepartners@unisonim.com** <homepartners@unisonim.com> Tue, Nov 19, 2024 at 10:17 AM
To: "joshcparker@gmail.com" <joshcparker@gmail.com>
Cc: "joshcparker@gmail.com" <joshcparker@gmail.com>

Good morning, Josh!

The Exhibit will not be necessary to complete as that is just an example. A payoff demand letter has been passed along to your title company to disburse funds to terminate your agreement.

As for the special termination, that value is only utilized at time of termination. In this instance, you are undergoing a property sale so the sales price is being utilized as the special termination case was conducted in 2023 and no longer reflecting the current market.

As for your funds at origination, it was confirmed that it was delivered via wire. Please see attached.

Thank you,

**Anavin Mounivong**
Sr. Relationship Management Associate

Unison Home Ownership Investors

650 California St. Suite 1800

San Francisco, CA 94108

http://www.unison.com

--------------- Original Message ---------------
**From:** Josh Parker [joshcparker@gmail.com]
**Sent:** 11/18/2024 3:47 PM
**To:** teamjames@ltic.com; joshcparker@gmail.com; homepartners@unisonim.com
**Cc:** emmettdalton10@gmail.com
**Subject:** Re: Purchase Agreement Set

Hello Mr. Mounivong,

This email is sent in the interest of closing immediately. Thank you for your quick replies. Buyer funds are in escrow. They expect immediate close.

***It is my understanding that if we agree on an amount the details are not important and all this ends when you email a revised demand with that number to escrow***

In the interest of time you can call me on the phone 858-775-0103
with any additional staff on the line and we can hopefully agree on a number and get you paid.

If you would prefer to exercise your option, that is done per the contract. ***Currently you are due no money because you have not exercised your option.***

You will need to obtain wiring instructions from escrow.

Here is how your exercise your option as a reminder

1) Submit a letter per the contract and attached exhibit
2) Make a payment into escrow

Unfortunately you may not be aware that a special termination was granted at the home value of $1,551,000.
See attached your case number "CASE#00080788" by Robert Carbone who you are familiar with

Further I did not receive the payment you claim at the start of the contract.

We both bet on a winning horse! Plenty of room to negotiate and cash out our tickets.

Here is the contract requirement as a reminder for exercising your option:

**3. Manner Of Option Exercise.**

Upon the occurrence of any Exercise Event, Investor (or Investor's agent, servicer, **Asset Administrator**, or other designee) may exercise the Option by transmission of a written statement either substantially in the form of **Exhibit B** hereto, or which otherwise evidences Investor's intent to purchase its undivided percentage interest in and to the Property and settle the Unison HomeOwner Agreement ("**Option Exercise Notice**"). Transmission of the Option Exercise Notice will constitute exercise of the Option when sent to any of the following **Persons**: **(a)** Owner, either at the address of the Property, or at the electronic mail address given for notices below; **(b)** any **Escrow Holder** engaged in processing a sale or transfer of the Property; **(c)** any real estate agent or broker engaged by Owner in processing a sale or transfer of the Property; **(d)** any heir(s), representative, or executor of the Last Surviving Owner ("**Owner's Estate**"); or **(e)** any other Person Owner has designated during the Term as authorized to receive notices under the Unison HomeOwner Agreement.

Lets move on!

Josh Parker

On Fri, Nov 15, 2024 at 9:04?AM homepartners@unisonim.com <homepartners@unisonim.com> wrote:

> Hello, all!
>
> Please see attached payoff demand and unexecuted lien release documents for review. Once approved, please provide a shipping label so that we may send the executed lien release documents for recording!
>
> Thank you,
>
> **Anavin Mounivong**
> Sr. Relationship Management Associate
>
> Unison Home Ownership Investors
>
> 650 California St. Suite 1800
>
> San Francisco, CA 94108
>
> http://www.unison.com

--------------- Original Message ---------------
**From:** Emmett Dalton [emmettdalton10@gmail.com]
**Sent:** 11/13/2024 12:17 PM
**To:** homepartners@unisonim.com
**Cc:** joshcparker@gmail.com
**Subject:** Re: Purchase Agreement Set

Anavin

Yes, indeed.

We are shooting for 11/18/24 if all goes as planned.

Thanks

Emmett

> **----- Original Message -----**
> **From:** <homepartners@unisonim.com>
> **To:** <emmettdalton10@gmail.com>
> **Cc:** <joshcparker@gmail.com>
> **Sent:** 11/13/2024 12:13:58 PM
> **Subject:** Re: Purchase Agreement Set
>
> ---
>
> Thank you for sending that along! I'll pass this along to my underwriting team for review. To confirm, we have an estimated close date of November 18th, is that correct?
>
> **Anavin Mounivong**
> Sr. Relationship Management Associate
>
> Unison Home Ownership Investors
>
> 650 California St. Suite 1800
>
> San Francisco, CA 94108
>
> http://www.unison.com
>
> --------------- Original Message ---------------
> **From:** Emmett Dalton [emmettdalton10@gmail.com]
> **Sent:** 11/13/2024 12:10 PM
> **To:** homepartners@unisonim.com
> **Cc:** joshcparker@gmail.com
> **Subject:** Re: Purchase Agreement Set

Anavin

See link below

This represents:

1 mile radius around subject property.
2100-2600 Sqft properties
SFR's only

https://portal.onehome.com/en-US/properties?token=eyJPU04iOiJDUk1MU00iLCJ0eXBlIj
oiMCIsInNldGlkIjoiODcyODUxNjM2Iiwic2V0a2V5IjoiNDI3IiwiZW1haWwiOiJzdXBwb3J0QHNvY2FsZmxhdGZl
ZS5jb20iLCJyZXNvdXJjZWlkIjowLCJhZ2VudGlkIjo2MDYxNTQsIlZpZXdNb2RlIjoiMSJ9&SMS=0

Note the market times for the first 2 Actives in the list, they are dead in the water with 97 and 174 days on the market respectively.

Thanks

Emmett

**----- Original Message -----**
**From:** <homepartners@unisonim.com>
**To:** <emmettdalton10@gmail.com>
**Cc:** <joshcparker@gmail.com>
**Sent:** 11/13/2024 11:57:05 AM
**Subject:** Re: Purchase Agreement Set

---

Thank you for that insight! Do you also happen to have your CMAs for us to review?

**Anavin Mounivong**
Sr. Relationship Management Associate

Unison Home Ownership Investors

650 California St. Suite 1800

San Francisco, CA 94108

http://www.unison.com

--------------- Original Message ---------------
**From:** Emmett Dalton [emmettdalton10@gmail.com]
**Sent:** 11/13/2024 10:28 AM
**To:** joshcparker@gmail.com; homepartners@unisonim.com
**Subject:** Re: Purchase Agreement Set

Dear Anavin,

I am the Broker representing Joshua Parker for the sale of 6081 Roselle Meadows Trail.

The property was listed for sale in the MLS 9/25/24.

After a dismal 30 days on the market with only 2 showings the price was dropped to it's current list price $2,095,014 on 10/30/24.

This price drop generated a lot of showings especially during multiple Open Houses but still no offers until suddenly a very well qualified buyer came along with an all cash offer.

The offer consists of a fast 14 day escrow, all cash, no appraisal contingency and of course no loan contingency.

After over 40 days on the market with no offers and heading into the Holiday season which is always slow we realized that the market has spoken and this was clearly the deal to go Escrow with.

Additionally, we will not be offering any credits or concessions for any "wish lists/requests for repairs" that the buyer may ask for as part of their inspection process as that is already figured into the price.

Let me know if you have further questions.

Regards,

Emmett Dalton

DaltonRealEstate.com
SoCalFlatFee.com
MLSJet.com
CaliforniaMLSAccess.com
FlatFeeBroker.com
FSBOConsultants.com

**760 459 7989**
**714 584 8453**
**949 371 9671**
**818 527 6132**
**805 496 6132**

**#00959147**

**Since 1987**
Personally involved in over 7000 Transactions.

HOURS
**Mon-Fri. 7am-5pm**
**Sat. 8am-11am**
**Sun. 8am-10am**

**----- Original Message -----**
**From:** <homepartners@unisonim.com>

**To:** <joshcparker@gmail.com>
**Cc:** <joshcparker@gmail.com>, <teamjames@ltic.com>, <emmettdalton10@gmail.com>
**Sent:** 11/13/2024 8:28:09 AM

thread::p3_jQ7yieOeha1kutPDa3Qs::

The content of this email is intended for the person or entity to which it is addressed only. This email may contain confidential information. If you are not the person to whom this message is addressed, be aware that any use, reproduction, or distribution of this message is strictly prohibited. If you received this in error, please contact the sender and immediately delete this email and any attachments.

**OutgoingWireDetail_11-19-2024_11-1.pdf**
5K

# Exhibit I

Lawyers Title

# SUBSTITUTE FORM 1099-S

Proceeds from Real Estate Transactions as required by the Internal Revenue Service

*You are required by law to provide Lawyers Title Company with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law.*

Branch Address
Lawyers Title Company
2535 Townsgate Rd, Suite 107
Westlake Village, CA 91361
County Ventura

This is important tax information and is being furnished to the Internal Revenue Service, as required by section 1521 of the Tax Reform Act of 1986. If you are required to file a return, a negligence penalty or other sanction will be imposed if this income is taxable and the IRS determines that it has not been reported.

**Escrow No.:** LEWL2400332-JS

**Date of closing:** ______________________

**PROPERTY ADDRESS OR LEGAL DESCRIPTION**

6081 Roselle Meadows Trail, San Diego CA 92130

Assessor's Parcel Number (APN) - 305-161-27-00

**PROCEEDS FOR THIS SALE WENT TO:** (MULTIPLE SELLERS - Use one form for each seller. Treat a couple that files a joint tax return as one seller unless requested otherwise, then separate forms must be used.)

1. ______________________
Sellers Name (First, MI, Last or Entity Name)

2. ______________________
Spouse or Personal Representative

______________________
Federal Tax ID# for this seller
(List only the Tax ID# for the seller listed on Line 1, spouse Tax ID# not required. Executor/Trustee should not list their name as the seller unless they are going to report the proceeds on their personal income tax return. Disregarded entities should provide the name and Tax ID# of the responsible person/entity.)

**TOTAL CONSIDERATION**

$__________ Total Consideration
__________ % Percentage of ownership for this seller
$__________ GROSS Allocated Proceeds
(Total consideration multiplied by percentage of ownership)

☐ Exchange (If checked)

$__________ Tax Credit to Seller (Real property tax credits to seller contained in the 400 series of the HUD-1 or comparable closing statement form).

**MAILING ADDRESS AFTER CLOSE:**

______________________

______________________

☐ Check here if the address is outside of the U.S.A.

☐ Check here if you are a foreign person per IRS regulations (nonresident alien, foreign partnership, foreign estate, or foreign trust). Do not sign below.

Under penalties of perjury, I certify that I am a U.S. person or U.S. resident alien and the number shown on this statement is my correct taxpayer identification number.

______________________ ______________________
Transferor's Signature Date

______________________ ______________________
Spouse Date

**Retain for 4 years**

TAXABLE YEAR **2024** **Real Estate Withholding Statement** CALIFORNIA FORM **593**

AMENDED: ● ☐

Escrow or Exchange No. LEWL2400332

## Part I Remitter Information ● ☑ REEP ☐ Qualified Intermediary ☐ Buyer/Transferee ☐ Other

| | | | |
|---|---|---|---|
| Business name<br>Lawyers Title Company | | | ☑FEIN ☐CA Corp no. ☐CA SOS file no.<br>90-0976550 |
| First name | Initial | Last name | SSN or ITIN |
| Address (apt./ste., room, PO box, or PMB no.)<br>2535 Townsgate Rd, Suite 107 | | | |
| City (If you have a foreign address, see instructions.)<br>Westlake Village | State<br>CA | ZIP code<br>91361 | Telephone number<br>805-446-6465 |

## Part II Seller/Transferor Information

If a grantor or nongrantor trust, check the box that applies. ● ☐ Grantor ☐ Nongrantor Trust

| | | | |
|---|---|---|---|
| First name/Grantor | Initial | Last name/Grantor | SSN or ITIN |
| Spouse's/RDP's first name (if jointly owned) | Initial | Last name | Spouse's/RDP's SSN or ITIN (if jointly owned) |
| Business/Nongrantor Trust name (if applicable) | | | ☐FEIN ☐CA Corp no. ☐CA SOS file no. |
| Address (apt./ste., room, PO box, or PMB no.) | | | |
| City (If you have a foreign address, see instructions.) | State | ZIP code | Telephone number |
| Property address (provide street address, parcel number, and county)<br>6081 Roselle Meadows Trail, San Diego, CA 92130,305-161-27-00, San Diego County | | | Ownership percentage<br>. % |

## Part III Certifications which fully exempt the sale from withholding (See instructions)

**Determine whether you qualify for a full withholding exemption. Check all boxes that apply to the property being sold or transferred.**

⦿ **1.** ☐ The property qualifies as the seller's (or decedent's, if sold by the decedent's estate or trust) principal residence under Internal Revenue Code (IRC) Section 121.

⦿ **2.** ☐ The seller (or decedent, if sold by the decedent's estate or trust) last used the property as the seller's (decedent's) principal residence under IRC 121 without regard to the two-year time period.

⦿ **3.** ☐ The seller has a loss or zero gain for California income tax purposes on this sale. Complete Part VI, Computation on Side 2.

⦿ **4.** ☐ The property is compulsorily or involuntarily converted, and the seller intends to acquire property that will qualify for nonrecognition of gain under IRC Section 1033.

⦿ **5.** ☐ The transfer qualifies for nonrecognition treatment under IRC Section 351 (property transferred to a corporation controlled by the transferor) or IRC Section 721 (property contributed to a partnership in exchange for a partnership interest).

⦿ **6.** ☐ The seller is a corporation (or a limited liability company (LLC) classified as a corporation for federal and California income tax purposes) that is either qualified through the California Secretary of State or has a permanent place of business in California.

⦿ **7.** ☐ The seller is a California partnership or qualified to do business in California (or an LLC that is classified as a partnership for federal and California income tax purposes that is not a single member LLC that is disregarded for federal and California income tax purposes).

⦿ **8.** ☐ The seller is a tax-exempt entity under California or federal law.

⦿ **9.** ☐ The seller is an insurance company, individual retirement account, qualified pension/profit sharing plan, or charitable remainder trust.

If you checked one or more boxes in line 1 through line 9, withholding is not required. **Do not** complete Part IV. Go to Side 3, complete the perjury statement and sign. Provide Sides 1-3 to the remitter before the close of escrow or exchange transaction to submit to the Franchise Tax Board.

## Part IV Certifications that may partially or fully exempt the sale from withholding or if no exemptions apply (See instructions)

**Determine whether you qualify for a full, partial, or no withholding exemption. Check all boxes that apply to the property being sold or transferred.**

⦿ **10.** ☐ The transfer qualifies as either a simultaneous or deferred like-kind exchange under IRC Section 1031. See instructions for Form 593, Part IV.

⦿ **11.** ☐ The transfer of this property is an installment sale where the buyer must withhold on the principal portion of each installment payment. Copy of the promissory note is attached at the close of escrow. Complete Part V, Buyer/Transferee Information on Side 2. Withholding may be required.

⦿ **12.** ☐ **No exemptions apply.** Check this box if the exemptions in Part III or Part IV, line 10 and line 11, do not apply. Remitter must complete Part VII, Escrow or Exchange Information, on Side 3 for amounts to withhold. Withholding is required.

Escrow or Exchange No.
LEWL2400332

| Remitter name | SSN, ITIN, FEIN, CA corp no., or CA SOS file no. |
|---|---|
| Lawyers Title Company | 90-0976550 |

## Part V Buyer/Transferee Information

**Complete this part if you checked box 11 in Part IV for an installment agreement.**

| First name/Grantor | Initial | Last name/Grantor | SSN or ITIN |
|---|---|---|---|
| Spouse's/RDP's first name (if jointly purchased) | Initial | Last name | Spouse's/RDP's SSN or ITIN |

| Business/Nongrantor Trust name (if applicable) | ☐FEIN ☐CA Corp no. ☐CA SOS file no. |
|---|---|

| Address (apt./ste., room, PO box, or PMB no.) |
|---|

| City (If you have a foreign address, see instructions.) | State | ZIP code | Telephone number |
|---|---|---|---|

| Principal Amount of Promissory Note | Installment Amount | Interest Rate | Repayment Period |
|---|---|---|---|
| . | . | . % | Number of months |

### Buyer's/Transferee's Acknowledgment to Withhold

**Read the "Buyer/Transferee" information below.**

I acknowledge that I am required to withhold on the principal portion of each installment payment to the seller/transferor for the above shown California real property either at the rate of 3 1/3% (.0333) or the Alternative Withholding Calculation, as specified by the seller/transferor on Form 593, Real Estate Withholding Statement, of the principal portion of each installment payment. I will complete Form 593 for the principal portion of each installment payment and send one copy of each to the Franchise Tax Board (FTB) along with Form 593-V, Payment Voucher for Real Estate Withholding, the withholding payment, and give one copy of Form 593 to the seller/transferor. I will send each withholding payment to the FTB by the 20th day of the month following the month of the installment payment. If the terms of the installment sale, promissory note, or payment schedule change, I will promptly inform the FTB. I understand that the FTB may review relevant escrow documents to ensure withholding compliance. I also understand that I am subject to withholding penalties if I do not withhold on the principal portion of each installment payment and do not send the withholding along with Form 593 to the FTB by the due date, or if I do not send one copy of Form 593 to the seller/transferor by the due date. **Go to Side 3, complete the perjury statement and sign.**

## Part VI Computation

**Complete this part if you checked and certified box 3 in Part III, or to calculate an alternative withholding calculation amount.**

13. **Selling price** ............ ⊙ 13 ________
14. Selling expenses ............ 14 ________
15. **Amount realized.** Subtract line 14 from line 13 ............ 15 ________
16. Enter the price you paid to purchase the property (see instructions, How to Figure Your Basis.) ............ 16 ________
17. Seller/Transferor-paid points ............ 17 ________
18. Depreciation ............ 18 ________
19. Other decreases to basis ............ 19 ________
20. Total decreases to basis. Add line 17 through line 19 ............ 20 ________
21. Subtract line 20 from line 16 ............ 21 ________
22. Cost of additions and improvements ............ ⊙ 22 ________
23. Other increases to basis ............ ⊙ 23 ________
24. Total increases to basis. Add line 22 and line 23 ............ 24 ________
25. **Adjusted basis.** Add line 21 and line 24 ............ ⊙ 25 ________
26. Enter any suspended passive activity losses from this property ............ 26 ________
27. Add line 25 and line 26 ............ 27 ________
28. **Estimated gain or loss on sale.** Subtract line 27 from line 15 and enter the amount here. If you have a loss or zero gain, skip lines 29 and 30. Certify on Side 3. Withholding is not required. If you have a gain, go to line 29 to calculate your withholding ............ 28 ________

Escrow or Exchange No.
LEWL2400332

| Remitter name | SSN, ITIN, FEIN, CA corp no., or CA SOS file no. |
| --- | --- |
| Lawyers Title Company | 90-0976550 |

**29. Alternative withholding calculation amount.** Check the applicable box for the filing type.

☐ Individual 12.3% ☐ Corporation 8.84% ☐ Bank and Financial Corporation 10.84% ☐ Trust 12.3%
☐ Non-California Partnership 12.3% ☐ S Corporation 13.8% ☐ Financial S Corporation 15.8%

Multiply the amount on line 28 by the tax rate for the filing type selected above and enter the amount here. This is the alternative withholding calculation amount. If you elect the alternative withholding calculation amount, then check the appropriate box on line 36, Boxes B-H, and enter the amount on line 37 .......... 29 ______

**30. Sales price withholding amount.** Multiply the selling price on line 13 by 3 1/3% (.0333). This is the sales price withholding amount. If you select the **sales price withholding amount,** check box A on line 36 below and enter the amount on line 37 .......... 30 ______

## Part VII Escrow or Exchange Information

31. Escrow or Exchange Number .......... ● 31 LEWL2400332

32. Date of Transfer, Exchange Completion, Failed Exchange, or Installment Payment .......... (mm/dd/yyyy) ● 32 ______

33. Sales Price, Failed Exchange, or Boot Amount $______ x Ownership Percentage ______ . ______ % ● 33 ______

34. Amount that should have been withheld in a **cash poor transaction** .......... ■ 34 ______ . ______

35. Type of Transaction (Check One Only): ●

**A** ☐ Conventional Sale/Transfer **C** ☐ Boot **E** ☐ Cash Poor
**B** ☐ Installment Sale Payment **D** ☐ Failed Exchange

36. Withholding Calculation (Check One Only): ●

**Sales Price Method**

**A** ☐ 3 1/3% (.0333) x Sales Price, Boot, or Installment Sale Payment

**Alternative Withholding Calculation Election**

**B** ☐ Individual 12.3% x Gain on Sale **F** ☐ S Corporation 13.8% x Gain on Sale
**C** ☐ Non-California Partnership 12.3% x Gain on Sale **G** ☐ Financial S Corporation 15.8% x Gain on Sale
**D** ☐ Corporation 8.84% x Gain on Sale **H** ☐ Trust 12.3% x Gain on Sale
**E** ☐ Bank and Financial Corp. 10.84% x Gain on Sale

37. Amount Withheld from this Seller/Transferor .......... ■ 37 ______ . ______

**Title and escrow persons, and exchange accommodators are not authorized to provide legal or accounting advice for purposes of determining withholding amounts. Transferors are strongly encouraged to consult with a competent tax professional for this purpose.**

Our privacy notice can be found in annual tax booklets or online. Go to **ftb.ca.gov/privacy** to learn about our privacy policy statement, or go to **ftb.ca.gov/forms** and search for **1131** to locate FTB 1131 EN-SP, Franchise Tax Board Privacy Notice on Collection. To request this notice by mail, call 800.338.0505 and enter form code **948** when instructed.

**Perjury Statement**

Under penalties of perjury, I hereby certify that the information provided above is, to the best of my knowledge, true and correct. I further certify that:

Check the applicable box(s):

☐ The sale is fully exempt from withholding as indicated by a check mark(s) in Part III.
☐ The sale is fully or partially exempt from withholding as indicated by a check mark(s) in Part IV, box 10 or 11.
☐ The seller has elected the Alternative Withholding Calculation as indicated by a check mark in Part VII, line 36 (B-H).
☐ The buyer/transferee understands and accepts the withholding requirements as stated on the Buyer's/Transferee's Acknowledgment to Withhold in Part V. The buyer/transferee should only check this box when involved in an installment sale.
☐ The Remitter (Qualified Intermediary) acknowledges this is a cash poor transaction as indicated by a check mark in Part VII, line 35, box E.

| | | |
| --- | --- | --- |
| **Sign Here** | Seller's/Transferor's signature<br>X | Date |
| It is unlawful to forge a spouse's/RDP's signature. | Seller's/Transferor's spouse's/RDP's signature<br>X | Date |
| | Buyer's/Transferee's signature<br>X | Date |
| | Buyer's/Transferee's spouse's/RDP's signature<br>X | Date |
| | **Remitter's name and Title/Escrow business name**<br>Lawyers Title Company | **Telephone Number**<br>805-446-6465 |

# Exhibit J

unison

November 15, 2024

Re: Joshua Christopher Parker
File Number: FRX-128092
6081 Roselle Meadows Trl
San Diego, CA 92130

Dear Payoff Team,

The following will constitute the demand for payoff of the above referenced Unison HomeOwner Agreement:

Payment in the following amount

***Eight Hundred Thirty Nine Thousand One Hundred Twenty Five Dollars and Zero Cents ($839,125.00 )***

must be received by no later than December 15, 2024 and shall be made by wire in accordance with the attached Wiring Instructions.

**WE DO NOT ACCEPT PHYSICAL CHECKS.**

Upon full payment of the referenced demand and receipt of funds you will be authorized to record the following documents:

- Quitclaim Deed
- Substitution of Trustee and Full Reconveyance

The responsibility to pay all charges, amounts, costs, expenses and taxes, if any, in connection with recording of these documents is to the homeowner.

Please contact us at (800) 330-5800 for any questions relating to this matter.

Sincerely yours,

Odin New Horizon Real Estate Fund LP
By: Odin New Horizon General Partner LLC, its General Partner

**Please see the attached addendum for a breakdown of the payoff amount*

unison

Payoff Calculation Addendum

## Agreement Terms

| | |
|---|---|
| Original Agreed Value | $1,015,000.00 |
| Investor Percentage | 70.000 % |
| Purchase Price | $710,500.00 |
| Original Investment Price | $177,625.00 |
| Purchase Price Balance | $532,875.00 |

## Property Sale Calculator

| | |
|---|---|
| Value: Sale Price Used | $1,960,000.00 |
| Remodeling Adjustment | $0.00 |
| Early Termination Adjustment | $0.00 |
| Deferred Maintenance Adjustment | $0.00 |
| OAV Floor? | |
| OAV Floor Adjustment | $0.00 |
| Ending Agreed Value | $1,960,000.00 |
| Investor Percentage | 70.000 % |
| Investor Share | $1,372,000.00 |
| Purchase Price Balance | $532,875.00 |
| **Total Amount Due** | **$839,125.00** |

Unison Investment Management
650 California Street, Suite 1800
San Francisco, CA 94108

# Unison Trust 2021-1
Unison Trust 2021-1
Wiring Instructions
To JPMorgan Chase Bank, N.A.

---

| | |
|---|---|
| PAY TO BANK: | **JPMorgan Chase Bank, N.A.** |
| ABA / ROUTING #: | **021000021** |
| ACCOUNT #: | **783050583** |
| BENEFICIARY: | **Unison Trust 2021-1**<br>**Unison Trust 2021-1** |
| REFERENCE TO BENEFICIARY: | **FRX-128092*** ** |
| SWIFT CODE: | **CHASUS33** |

***** Please include Reference to Beneficiary in wire instructions *****

---

PREPARED BY: UNISON
Anavin Mounivong
650 California St, Suite 1800
San Francisco, CA 94108

RECORDING REQUESTED BY:
WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO:

**Joshua Christopher Parker**
6081 Roselle Meadows Trl
San Diego, CA
92130

FILE NO.: FRX-128092
APN.: 305-161-27-00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

***Note: This filing is exempt from recordation taxes under CA. R&T Code §11911 to CA lien releases.***

# QUITCLAIM DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s):
DOCUMENTARY TRANSFER TAX is: $0.00 CITY TAX $0.00

○ Monument Preservation Fee is:
☐ computed on full value of property conveyed, or
○ computed on full value less value of liens or encumbrances remaining at time of sale.
○ Unincorporated area: City of:

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Odin New Horizon Real Estate Fund LP, a Delaware limited partnership ("Grantor"), hereby remises, releases and forever quitclaims to JOSHUA CHRISTOPHER PARKER AN UNMARRIED MAN ("Grantee"), the real property (the "Property") in the City of San Diego, County of SAN DIEGO, State of CA, described in "Exhibit A" attached hereto and made a part hereof by this reference.

It is the intention of the Grantor to relinquish, remit and terminate all its rights, title and interest in and to the Property arising under the following agreements, made by and among Grantee and Unison Agreement Corp., a Delaware corporation ("Unison"), and each dated as of February 19, 2019: (i) the Unison HomeOwner Covenant Agreement, (ii) the Unison HomeOwner Option Agreement, and (iii) the Unison HomeOwner Recorded Memorandum, which Memorandum was recorded in the Official Records of SAN DIEGO County, State of CA, on March 18, 2019 as Instrument Number 2019-0095255 as the three aforesaid agreements were assigned by Unison to Grantor under that certain Memorandum of Assignment made as of February 19, 2019 and recorded in the Official Records of SAN DIEGO County, State of CA, on March 18, 2019 as Instrument Number 2019-0095255.

This is a conveyance/termination of a Memorandum of Agreement and the consideration and value is less than $100.00. R&T 11911.

[*Signatures appear on the following page*]

Dated: as of November 15, 2024

**Odin New Horizon Real Estate Fund LP, a Delaware limited partnership**

By: Odin New Horizon Real Estate General Partner LLC, a Delaware limited liability company, its General Partner

_______________________________
Name: Robert Carbone
Title: Authorized Signatory
Date: ___________________________

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF California )
) ss.
COUNTY OF San Francisco )

On ________________________, before me Melissa Leung, a Notary Public, personally appeared Robert Carbone who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_________________________________________(seal)

**EXHIBIT A**

**LEGAL DESCRIPTION**

A.P.N.: 305-161-27-00

see legal description attached

[end of legal description]

© 2021, Unison Internal

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
Joshua Christopher Parker
6081 Roselle Meadows Trl
San Diego, CA
92130

File Number: FRX-128092
ESCROW NO:
APN: 305-161-27-00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# Substitution of Trustee and Full Reconveyance

WHEREAS, JOSHUA CHRISTOPHER PARKER AN UNMARRIED MAN was the original Trustor, American Title Inc. was the original Trustee, and Unison Agreement Corp. ("Unison") was the original Beneficiary under that certain Deed of Trust and Security Agreement dated as of February 19, 2019 and recorded on March 18, 2019 as Instrument Number 2019-0095256 in the Official Records of the County of SAN DIEGO, State of CA (the "Deed of Trust"), and affecting the land described in said Deed of Trust;

WHEREAS, Unison assigned all its rights, title and interest in, to and under the Deed of Trust to Odin New Horizon Real Estate Fund, LP a Delaware limited partnership ("ODIN") under that certain Assignment of Unison Agreement made as of February 19, 2019 and recorded on March 18, 2019 as Instrument Number 2019-0095257 in the Official Records of the County of SAN DIEGO, State of CA; and

WHEREAS the undersigned, ODIN, is the present Beneficiary and holder of the Deed of Trust; and whereas the undersigned Beneficiary desires to substitute a new Trustee under the Deed of Trust in place and stead of, now therefore, the undersigned hereby substitutes itself as Trustee under the Deed of Trust and does hereby reconvey, without warranty, to the person or persons legally entitled thereto, the estate now held by it thereunder.

[*Signatures appear on the following page*]

Dated: as of November 15, 2024

**Odin New Horizon Real Estate Fund LP, a Delaware limited partnership**

By: Odin New Horizon Real Estate General Partner LLC,
a Delaware limited liability company, its General Partner

________________________________
Name: Robert Carbone
Title: Authorized Signatory
Date: ____________________________

## ACKNOWLEDGMENT

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

STATE OF California )
) ss.
COUNTY OF San Francisco )

On ________________________, before me Melissa Leung, a Notary Public, personally appeared Robert Carbone who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_________________________________________(seal)

# Exhibit K

Gmail

Josh Parker <joshcparker@gmail.com>

## Re: Loss of Insurance, Home vacated, failure to exercise option

**Laszlo Ladi** <laszlo.ladi@unison.com> Tue, Jan 28, 2025 at 10:18 AM
To: Josh Parker <joshcparker@gmail.com>
Cc: Home Partners <homepartners@unison.com>, Home Partnership Team <homepartners@unisonim.com>

Mr. Parker:

We do not agree to any admissions by email, and we do not agree to your demand.
--
**Laszlo Ladi**
Corporate Counsel

On Mon, Jan 27, 2025 at 6:43 PM Josh Parker <joshcparker@gmail.com> wrote:

Dear Mr. Ladi,

Notwithstanding that you failed to exercise your option during a permitted sale of 6081 Roselle Meadows Trail therefore giving additional good cause for the contracts to be terminated in their entirety - I am making the following notice prior to the process of a final court order for termination:

1) The home was vacated in anticipation of being sold. Final walk through by new buyers and their agent was complete. Escrow was complete with exception of your option. I had made other permanent arrangements for my residence as required. Escrow was extended for over two weeks and 3 attempts without success.

2) The home may need to be rented to cover costs since it can't be sold.

3) I received notice of insurance cancellation effective March 2025 which is common for any residence in Southern California due to fires and economic factors. I am working on alternatives but the state of California will probably be the only option but I have no idea at this time.

***If you do not reply or inquire further to these statements above numbered (1,2,3), I will assume you are not objecting.***

Notwithstanding prior rescission of the contracts your recent actions require further notice and I ***hereby demand you release all claims on your deed of trust and walk away.***

Whereas "Unison" approved the sale of my home

Whereas "Unison" engaged escrow

Whereas "Unison" provided wire receipts but claimed a different value in a demand disrupting escrow

Whereas "Unison" pushed a calculating that was not a part of section 3.3(c)

Whereas "Unison" provided fraudulent deed of trust release documents that could not be filed on title disrupting title.

Whereas "Unison" called parties on the phone other than escrow and forced them out of the transaction

Whereas "Unison" withheld critical communications from myself and ignored critical communications to and from escrow thereby disrupting escrow.

Whereas "Unison" held inappropriate verbal conversations on the phone to myself disrupting the entire process

Whereas "Unison" ignored requests from escrow to exercise its option and deposit money into escrow.

Whereas "Unison" would not move forward or cooperate

Whereas 3rd Escrow refused to talk to "Unison" per multiple notices to me requiring notice of representation. "Unison" never provided notice of representation to me ignoring my repeated requests.

**Unison has violated the contract pursuant to: "Owner and investor shall do or cause to be done, any and all acts and things as shall be reasonably necessary for Escrow to close the transactions contemplated in the Unison HomeOwner Agreement."**

**(c) Escrow and Closing.**

**(i)** A Permitted Sale must be consummated through an appropriate real property **Escrow** using the services of an **Escrow Holder**. Owner and Investor shall do or cause to be done, any

Page 4 of 45

© 2017, Unison Form 250 HO-All (rev. 10/10/2017)

and all acts and things as shall be reasonably necessary for Escrow to close the transactions contemplated in the Unison HomeOwner Agreement.

Whereas "Unison" acknowledged repeatedly they must proceed under section 3.3(c) but did not

Whereas "Unison" Failed to exercise its option through 3 escrow attempts and 16 days past closing date

Whereas "Unison" admitted, but did not prepare deeds

Whereas "Unison" admitted but did not deposit money into escrow.

Whereas "Unison" failed to notice that it was going to exercise its option for 16 days past closing until buyers cancelled

Whereas the title insurance was denied

Whereas "Unison" caused the cancellation of the sale per buyers and buyers agent written communications and CAR form.

**The contracts are hereby terminated pursuant to the contract: "(a) Investor in its permitted discretion elects not to exercise the Option"**

**ARTICLE SIX**
**NON-EXERCISE TERMINATIONS OF OPTION**

6.1 Subject to Investor's Rights hereunder and to those representations and warranties, and duties and covenants of Owner which by their nature survive the Expiration Date; and to the Investor remedies set forth in **Article Seven** below, the Option shall terminate if:

**(a)** Investor in its Permitted Discretion elects not to exercise the Option, and voluntarily allows it to lapse as of any Exercise Event, the Term, or the Expiration Date;

This is my final demand for you to ***release all claims on your deed of trust and walk away.***

--
Josh Parker
858-775-0103

CONFIDENTIALITY NOTICE: The content of this email is intended for the person or entity to which it is addressed only. This email may contain confidential information. If you are not the person to whom this message is addressed, be aware that any use, reproduction, or distribution of this message is strictly prohibited. If you received this in error, please contact the sender and immediately delete this email and any attachments.

# Exhibit L

| | |
|---|---|
| Pest inspection | $150.00 |
| Cleaning | $240.00 |
| Listing setup | $149.00 |
| Docs & scanning | $63.30 |
| Carpet Replace | $953.80 |
| Uhaul | $2,786.36 |
| Avalon Mgmt CC&R's | $390.00 |
| Miramar Land Fill | $423.00 |
| Moving help | $305.95 |
| Total: | **$5,461.41** |

# Exhibit M

DOC # 2011-0169408

APR 01, 2011 9:44 AM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
Ernest J. Dronenburg, Jr., COUNTY RECORDER
FEES: 733.00
OC: OC

20515 PAGES: 2

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:
AND MAIL TAX STATEMENT TO:
**Joshua Christopher Parker**
**6081 Roselle Meadows Trail**
**San Diego, CA 92130**

Escrow No. 104-11509-CAM
Parcel No. 305-161-27-00

SP

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS **$715.00**
__X__ computed on full value of property conveyed, or
_____ computed on full value less liens or encumbrances remaining at the time of sale.
_____ unincorporated area: __X__ City of San Diego

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**Duvan Forero and Deborah Forero, Husband and Wife as Joint Tenants**

hereby GRANTS to **Joshua Christopher Parker, an unmarried man**

the following described real property in the County of **San Diego**, State of California:

**Lot 103 of Pacific Highlands Ranch Unit No. 5, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 14754, filed in the Office of the County Recorder of San Diego County, California on March 19, 2004 and more particularly described in the Exhibit "A" attached hereto and made a part hereof.**

Date March 28, 2011

✓ [signature] ✓ [signature]
Duvan Forero Deborah Forero

STATE OF ~~CALIFORNIA~~ Texas }
} S.S.
COUNTY OF Harris }

On March 29, 2011, before me, Mariaelena Barron, a Notary Public, personally appeared Deborah Forero and Duvan Forero who proved to me on the basis of satisfactory evidence* to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. *Texas drivers licence

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ Texas that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature [signature]

MARIAELENA BARRON
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
08-20-2013

20516

# EXHIBIT "A"

## LEGAL DESCRIPTION

Real property in the City of San Diego, County of San Diego, State of California, described as follows:

PARCEL 1:

LOT 103 OF PACIFIC HIGHLANDS RANCH UNIT NO. 5.

THE FEE SIMPLE TITLE TO LOT 103 OF PACIFIC HIGHLANDS RANCH UNIT NO. 5 LOCATED IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 14754, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, CALIFORNIA ON MARCH 19, 2004.

PARCEL 2:

A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OVER THE PRIVATE DRIVES, STREETS, ALLEYS AND COMMON AREA OF THE ABOVE-REFERENCED TRACT MAP, AS PROVIDED FOR IN AND SUBJECT TO THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS, AND RESTRICTIONS FOR WEST PORTICO COMMUNITY ASSOCIATION RECORDED AUGUST 2, 2005 AS INSTRUMENT NO. 2005-0657428, IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, CALIFORNIA.

EXCEPT ALL OIL, ASPHALTUM, PETROLEUM, NATURAL GAS AND OTHER HYDROCARBONS AND ANY OTHER VALUABLE MINERAL SUBSTANCES AND PRODUCTS, AND ALL OTHER MINERALS, WHETHER OR NOT OF THE SAME CHARACTER HEREINBEFORE GENERALLY DESCRIBED, IN OR UNDER SAID LAND AND LYING AND BEING AT A VERTICAL DEPTH OF 500 OR MORE FEET BELOW THE PRESENT NATURAL SURFACE OF THE GROUND, BUT WITHOUT RIGHT OF ENTRY ON THE SURFACE OR WITHIN A VERTICAL DEPTH OF 500 FEET BELOW THE PRESENT SURFACE OF THE GROUND.

PARCEL 3:

AN EXCLUSIVE EASEMENT OVER AND UPON THAT PORTION OF LOT 104 OF SAID MAP, AS DEPICTED AND SHOWN ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART THEREOF, FOR THE PURPOSES DEFINED IN ARTICLE IX OF THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS HEREIN REFERRED TO. THIS EASEMENT IS APPURTENANT TO AND FOR THE USE AND BENEFIT OF THE OWNER(S) OF LOT 103 AND THEIR SUCCESSORS. THE OWNER OF PARCEL 1 SHALL BE RESPONSIBLE FOR ALL MAINTENANCE, REPAIR AND COSTS OF THE SIDE YARD EASEMENT CONVEYED IN THIS PARCEL 3.

APN: 305-161-27-00